# BROWN & CONNERY, LLP

ATTORNEYS AT LAW
360 HADDON AVENUE
WESTMONT, NEW JERSEY 08108
(856) 854-8900
FAX (856) 858-4967

Susan M. Leming, Esq.
sleming@brownconnery.com

February 9, 2021

**VIA CM/ECF ONLY**
Honorable Madeline Cox Arleo, U.S.D.J.
United States District Court of New Jersey
Martin Luther King U.S. Courthouse
50 Walnut Street, Courtroom 4A
Newark, NJ 07102

> Re:   **Angel Leston Corporation d/b/a Casa D'Paco v.**
> **Berkshire Hathaway Guard Insurance Companies**
> **Civil Action No.:  2:20-cv-12102-MCA-MAH**

Dear Judge Arleo:

AmGUARD respectfully submits this notice of supplemental authority in connection with its fully briefed motion to dismiss.  (Dkt. No. 2).

On February 8, 2021, in *Eye Care Center of New Jersey, PA v Twin City Fire Insurance Co.*, No. 2:20-cv-05743-KM-ESK (D.N.J. Feb. 8, 2021) (McNulty, J.), this Court dismissed with prejudice an opthalmologic practice's claims seeking coverage under its property insurance policy for business income allegedly lost due to COVID-19 social-distancing orders.  Applying New Jersey law, Judge McNulty held that the virus exclusion "dispose[s] of this case" because "[b]ut for the 'spread' of COVID-19, governments would not have issued closure orders" and plaintiff's business would not have suffered any loss.  Judge McNulty noted the other decisions from this Court reaching the same conclusion, as well as the New Jersey Superior Court's holding "that it was a 'clear and unmistakable conclusion' that a similar virus exclusion applied to business losses due to COVID-19," and added that "nearly every court to address the issue has barred coverage based on similarly worded virus exclusions."

On January 27, 2021, in *Michael J. Redenburg, Esq. PC v. Midvale Indemnity Co.*, No. 20-cv-5818 (S.D.N.Y. Jan. 27, 2021), the U.S. District Court for the Southern District of New York dismissed with prejudice a business' claims seeking coverage under its property insurance policy for business income allegedly lost due to COVID-19 social-distancing orders.  The court held that plaintiff's "claimed loss falls squarely within the Policy's virus exclusion."  The court rejected plaintiff's argument that its loss "most immediately result[ed]" from the social-distancing orders issued by the State of New York, not the COVID-19 virus, noting that the "Complaint itself repeatedly recognizes [that] these emergency orders were prompted *by the*

Hon. Madeline Cox Arleo, U.S.D.J.
February 9, 2021
Page 2

*virus*."   The court rejected plaintiff's argument that losses caused by a pandemic were not covered by the policy's virus exclusion, noting that "the COVID-19 pandemic is simply a large-scale outbreak of a virus."   The court further noted that its holding "aligns with those of other courts around the nation that, in recent months, have held insurance claims for business income excluded under similarly worded virus-related exclusions."

In addition, attached hereto as Exhibit A is a list of the 35 decisions dismissing similar cases that have become available since Defendant's prior notice of supplemental authority, filed on January 22, 2021.   (Dkt. No. 14).   Exhibits B through N are those listed decisions not otherwise available on Westlaw, copies of which are filed herewith.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

**BROWN & CONNERY, LLP**

*s/ Susan M. Leming*

Susan M. Leming

Enclosures
cc: All Counsel of Record (via CM/ECF)

7C63912

# EXHIBIT A

## Exhibit A

1. *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, No. 2:20-cv-862, 2021 WL 147139 (W.D. Pa. Jan. 15, 2021) (granting motion to dismiss because the words "direct" and "physical" show "there is no reasonable question that the Policy language presupposes that the request for coverage stems from an *actual impact* to the property's structure, rather than the diminution of its economic value because of governmental actions that do not affect the structure").

2. *Atma Beauty, Inc. v. HDI Global Specialty SE*, No. 1:20-cv-21745, 2020 WL 7770398 (S.D. Fla. Dec. 30, 2020) (dismissing salon and spa's claims for coverage because "a loss of functionality of, access to, or intended use of the salon" does not constitute "direct physical loss or damage to the insured property").

3. *Ballas Nails & Spa, LLC v. Travelers Casualty Insurance Co. of America*, No. 4:20-cv-1155, 2021 WL 37984 (E.D. Mo. Jan. 5, 2021) (dismissing nail salon's claim because losses "caused by the government closure orders themselves—without any claim that its property was physically affected—is not enough to show 'direct physical loss'", accepting such interpretation "would negate the 'loss of use' exclusion", and "Covid-19 is the reason for the closure orders" because "the orders came about only because of the Covid-19 virus" and plaintiff's claims are therefore barred by the virus exclusion).

4. *Baker v. Oregon Mutual Insurance Co.*, No. 20-cv-05467, 2021 WL 24841 (N.D. Cal. Jan. 4, 2021) (granting motion to dismiss because "'direct physical loss' provisions . . . do not cover lost business income or expenses resulting from closure orders" and "temporary dispossession" which was "the result of government closure orders" is not "direct physical loss of or damage to property").

5. *Bend Hotel Development Co., LLC v. Cincinnati Ins. Co.*, No. 20 C 4636, 2021 WL 271294 (N.D. Ill. Jan. 27, 2021) (granting motion to dismiss because "plaintiff has not alleged any physical alteration or structural degradation to the premises," and "even if plaintiff had alleged the presence of the coronavirus on the premises . . . the virus does not cause 'direct physical loss or damage' to property").

6. *Bluegrass, LLC. v. State Auto. Mut. Ins. Co.*, No. 2:20-CV-00414, 2021 WL 42050 (S.D. W. Va. Jan. 5, 2021) (granting motion to dismiss because plaintiff's "pleadings are devoid of any allegation that there has been a damage or alteration to the covered properties," and further holding that civil authority coverage was not triggered because plaintiff's "properties were able to operate on a modified . . . basis and the executive orders contemplated access to the property for administerial functions in the early days of the pandemic").

7. Ex. B, *Colgan v. Sentinel Insurance Co.*, No. 20-cv-4780 (N.D. Cal. Jan. 26, 2021) (holding that "Plaintiff's allegations of temporary loss of access and use, which claim no loss requiring repair, rebuilding, or replacement, are plainly insufficient" to trigger coverage under the policy, and the policy's unambiguous virus exclusion further precluded plaintiff's claim because the social-distancing orders that allegedly caused plaintiff's losses "were issued . . . as a result of . . . COVID-19").

8. *Digital Age Mktg. Grp., Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-61577-CIV, 2021 WL 80535 (S.D. Fla. Jan. 8, 2021) (granting motion to dismiss because the policy's unambiguous virus exclusion precluded plaintiff's claims; plaintiff's allegations of "[m]ere economic losses . . . do not suffice to demonstrate direct physical loss," and civil authority coverage did not apply because plaintiff had not alleged that access to its premises was prohibited by an order of civil authority "as the direct result of a Covered Cause of Loss to the property").

9. *Drama Camp Prods., Inc. v. Mt. Hawley Ins. Co.*, No. 1:20-CV-266-JB-MU, 2020 WL 8018579 (S.D. Ala. Dec. 30, 2020) (granting motion to dismiss "[b]ecause Plaintiffs have failed to allege a direct physical loss of or damage to their respective properties," and "Plaintiffs' loss of usability did not result from an immediate occurrence which tangibly altered or disturbed their property in some perceptible way").

10. *Emerald Coast Restaurants, Inc. v. Aspen Specialty Insurance Co.*, No. 3:20-cv-05898, 2020 WL 7889061 (N.D. Fla. Dec. 18, 2020) (granting motion to dismiss because "economic losses resulting from state and local government orders closing businesses to slow the spread of COVID-19 are not covered . . . because such losses were not caused by direct physical loss of or damage to the insured property").

11. Ex. C, *Eye Care Center of New Jersey, PA v. Twin City Fire Insurance Co.*, No. 2:20-cv-05743-KM-ESK (Feb. 8, 2021) (granting motion to dismiss with prejudice pursuant to the virus exclusion because "[b]ut for the 'spread' of COVID-19, governments would not have issued closure orders" and plaintiff would not have suffered any loss).

12. Ex. D, *Eye Specialists of Delaware v. Harleysville Worchester Insurance Co.*, No. 20 CV 6386 (Ohio Ct. C.P. Feb. 1, 2021) (granting motion to dismiss because the government order "was issued solely because of the serious public health threat caused by COVID19," a virus, and therefore plaintiff's alleged loss was "caused by or resulted from" a virus and coverage was barred by the virus exclusion).

13. Ex. E, *Fink v. Hanover Insurance Grp.*, No. 20-cv-3907 (N.D. Cal. Jan. 25, 2021) (granting motion to dismiss because plaintiff did not allege that "the presence of COVID-19 in [his business] created a physical loss," and civil authority coverage did not apply because "the complaint does not establish the requisite causal link between prior property damage and the government's closure order").

14. *First Watch Restaurants, Inc. v. Zurich American Insurance Co.*, No. 8:20-cv-2374, 2021 WL 390945 (M.D. Fla. Feb. 4, 2021) (granting motion to dismiss because "to be covered, an interruption in business must be caused by some *physical problem* with the covered property").

15. *Frank Van's Auto Tag, LLC v. Selective Insurance Co. of the Southeast*, No. 20-cv-2740, 2021 WL 289547 (E.D. Pa. Jan. 28, 2021) (granting motion to dismiss because, to show "direct physical loss of or damage" to property, "there must be some issue with the *physical* premises which precludes or impedes the business operations, thereby causing the losses complained-of" and the government orders "were issued with the plan to stem the spread of COVID-19" and therefore barred by the virus exclusion).

16. Ex. F, *Gym Management Services, Inc. v. Vantapro Specialty Insurance Co.*, No. 2:20-cv-09541 (C.D. Cal. Feb. 1, 2021) (granting motion for judgment on the pleadings because "COVID-related restrictions on commercial activity and individuals' activities did not constitute 'direct physical loss' or 'physical damage' to property").

17. *Jonathan Oheb MD, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-cv-08478, 2020 WL 7769880 (C.D. Cal. Dec. 30, 2020) (granting motion to dismiss because plaintiff failed to allege "direct physical loss of or damage to property," and noting that "a compensable 'direct physical loss' requires 'some external force' to 'have acted upon the insured property to cause a physical change in the condition of the property, *i.e.*, it must have been "damaged" within the common understanding of that term'").

18. *K D Unlimited Inc. v. Owners Ins. Co.*, No. 1:20-CV-2163-TWT, 2021 WL 81660 (N.D. Ga. Jan. 5, 2021) (granting motion to dismiss because "losses from inability to use property do not amount to 'direct physical loss of or damage to' the property within the ordinary and popular meaning of the phrase," and "[t]he mere threat of exposure is insufficient to trigger coverage").

19. Ex. G, *Karmel Davis & Assocs., Attorneys-At-Law, LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 20-cv-2181 (N.D. Ga. Jan. 26, 2021) (dismissing claim for loss of business income because "the 'likely' presence of COVID-19 cannot be regarded as a physical change, as it does not and has not physically altered the insurance property," and holding that civil authority coverage did not apply because "the . . . Order that Plaintiff says triggers coverage under the Civil Authority provision did not specifically 'prohibit' Plaintiff from continuing in-person operations at its . . . office").

20. *Michael J. Redenburg, Esq. PC v. Midvale Indemnity Co.*, No. 20-cv-5818, 2021 WL 276655 (S.D.N.Y. Jan. 27, 2021) (granting motion to dismiss because plaintiff's "claimed loss falls squarely within the Policy's virus exclusion").

21. *Part Two LLC v. Owners Insurance Co.*, No. 7:20-cv-01047, 2021 WL 135319 (N.D. Ala. Jan. 14, 2021) (granting motion to dismiss because the virus exclusion barred plaintiff's claims for damage caused by "COVID-19 related orders" was caused by a virus).

22. *Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, No. CV204699DMGGJSX, 2021 WL 234355 (C.D. Cal. Jan. 20, 2021) (granting motion to dismiss because plaintiff "does not allege that COVID-19 has entered or attached to the insured property," and therefore "it has not alleged a 'direct physical loss or damage to property'").

23. Ex. H, *Phan v. Nationwide General Insurance Co.*, No. 2:20-cv-07616 (C.D. Cal. Feb. 1, 2021) (holding that "[b]ecause Plaintiff's loss arises from the coronavirus pandemic and resulting Public Orders, the Virus Exclusion applies on its face").

24. Ex. I, *Protégé Restaurant Partners LLC v. Sentinel Insurance Co.*, No. 5:20-cv-03674 (N.D. Cal. Feb. 8, 2021) (granting motion to dismiss because the policy's requirement of "direct physical loss of or physical damage to property" requires "a distinct, demonstrable,

physical alteration of the property or a physical change in the condition of the property" and is not satisfied by a shutdown prompted by government orders).

25. Ex. J, *R.T.G. Furniture Corp. v. Hallmark Specialty Insurance Co.*, No. 8:20-cv-2323 (M.D. Fla. Jan. 22, 2021) (granting motion to dismiss because "COVID-19 does not impact physical structures" and therefore plaintiff cannot show "direct physical loss").

26. *Riverwalk Seafood Grill Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20 C 3768, 2021 WL 81659 (N.D. Ill. Jan. 7, 2021) (granting motion to dismiss because "COVID-19 is plainly 'any virus' that . . . caused [plaintiff's] damages," thereby falling squarely within the policy's "dispositive" virus exclusion, and further noting that plaintiff's coverage claim would have failed "with or without the anti-concurrent causation" language contained in the virus exclusion).

27. *Rococo Steak, LLC v. Aspen Specialty Ins. Co.*, No. 20-cv-2481, 2021 WL 268478 (M.D. Fla. Jan. 27, 2021) (holding that "a decrease in business due to COVID-19 is a purely economic loss, not the kind of physical loss contemplated by insurance policies," and plaintiff's claim for civil authority coverage failed because plaintiff "fail[ed] to allege either damage to surrounding property or that the actions of civil authority prohibited access to the restaurant")

28. Ex. K, *Selane Products, Inc. v. Continental Casualty Co.*, No. 2;20-cv-07834 (C.D. Cal. Feb. 8, 2021) (dismissing amended complaint with prejudice because "the economic nature of [plaintiff's] loss" does not constitute direct physical loss of or damage to property).

29. Ex. L, *Steiner Steakhouse, LLC v. AMCO Insurance Co.*, No. 1:20-cv-00858 (W.D. Tex. Dec. 30, 2020) ("Although [plaintiff] may have suffered monetary losses, consumers may have avoided [plaintiff] out of fear, and levers of government may have suspended [plaintiff's] indoor dining business, none of these theories of recovery articulate a physical loss[.]").

30. *Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*, No. 1:20-cv-21827, 2020 WL 7699672 (S.D. Fla. Dec. 28, 2020) (noting "the prevailing consensus" that "suspension of [plaintiff's] operations, restricted access to its property, and business income loss" "do not plausibly show direct physical loss or damage to the insured property or any nearby property to trigger coverage under the Policy").

31. *TJBC, Inc. v. Cincinnati Insurance Co.*, No. 20-cv-815, 2021 WL 243583 (S.D. Ill. Jan 25, 2021) (holding that plaintiff had failed to allege a "direct physical loss" as required under the policy "because Covid-19 does not cause 'tangible' loss or damage to the physical dimension of Plaintiff's property," and civil authority coverage did not apply because plaintiff "did not allege that Covid-19 caused direct physical loss to other property").

32. *Unmasked Management, Inc. v. Century-National Insurance Co.*, No. 3:20-cv-01129, 2021 WL 242979 (S.D. Cal. Jan. 22, 2021) (granting motion to dismiss because allegations an employee tested positive for COVID-19 do not "demonstrate a physical alteration to Plaintiffs' property, as is required by the Policy").

33. Ex. M, *Verveine Corp. v. Strathmore Ins. Co.*, No. 2084CV01378 (Mass. Sup. Ct. Dec. 21, 2020) (granting motion for judgment on the pleadings because "there is no allegation that the properties where [plaintiff's] restaurants are located were physically damaged," and "a risk that a dangerous condition might result cannot itself constitute a 'direct physical loss'").

34. Ex. N, *VStyles Inc. v. Continental Casualty Co.*, No. RIC2003415 (Cal. Sup. Ct. Dec. 23, 2020) (granting demurrer to complaint because "losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase," and civil authority coverage did not apply because the social distancing orders "arose not out of any physical loss or damage of property but out of a state-wide effort to slow the spread of the COVID-19 virus").

35. *Wellness Eatery La Jolla LLC v. Hanover Insurance Grp.*, No. 20-cv-1277, 2021 WL 389215 (S.D. Cal. Feb. 3, 2021) (granting motion to dismiss because "Plaintiffs' loss of its on-site dining use, with its consequent economic loss, but with no loss of or damage to tangible property, is not a direct physical loss of or damage to covered property") (internal quotations and alterations omitted).

# Exhibit B

1

2

3

4                          UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    JAMES COLGAN,                             Case No. 20-cv-04780-HSG

8                   Plaintiff,                 **ORDER GRANTING MOTION FOR**
                                               **JUDGMENT ON THE PLEADINGS**
9           v.
                                               Re: Dkt. No. 27
10   SENTINEL INSURANCE COMPANY,
     LTD.,
11
                    Defendant.
12

13          Pending before the Court is Defendant Sentinel Insurance Company's motion for judgment

14   on the pleadings.  Dkt. No. 27.  The Court finds this matter appropriate for disposition without

15   oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons detailed

16   below, the Court **GRANTS** the motion.[1]

17   **I.    BACKGROUND**

18          **A.    Plaintiff's Allegations**

19          Plaintiff James Colgan brings this insurance action against Defendant based on the denial

20   of Plaintiff's claim for business income loss coverage under the Sentinel business owner's policy,

21   No. 57 SBA BD4683 (the "Policy").  *See* Dkt. No. 1-1 ("Compl.") ¶¶ 2, 6–20.  Plaintiff alleges

22   that he incurred losses when his salons closed due to two governmental orders, which "were

23   issued for public health reasons as a result of a pandemic of a disease called coronavirus 2019, or

24

25   _____

26   [1] Defendant requests judicial notice of several public documents, including court rulings, hearing
     transcripts, and minute orders.  Dkt. Nos. 28, 31.  Plaintiff did not oppose the requests.  Because
27   the requested documents are matters of public record and their factual contents are not disputed,
     the Court **GRANTS** the requests for judicial notice.  *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
     499 F.3d 1048, 1052 (9th Cir. 2007) (internal quotation marks omitted) ("[A] court may take
28   judicial notice of matters of public record . . . as long as the facts noticed are not subject to
     reasonable dispute.").

COVID-19." *See id.* ¶¶ 2, 6–10. First, the City and County of San Francisco issued an order "[e]ffective March 17, 2020, and amended March 31, 2020," requiring "all people in San Francisco to shelter in place at their residences and, further, for all businesses in San Francisco to cease all but specific limited operations at facilities located within" San Francisco County. *Id.* ¶ 7. Second, "[e]ffective March 19, 2020, the Public Health Officer of the State of California issued Executive Order N-33-20, generally mandating that all individuals living in the State of California stay home or at their place of residence but for limited essential outings." *Id.* ¶ 8. Plaintiff alleges that he "did not suffer from this virus nor was their evidence that it existed or even threatened his business establishment." *Id.* ¶ 9. Plaintiff instead contends that he "was physically unable to utilize his business premises and thus lost the physical use thereof" as a result of "these governmental orders." *Id.* ¶ 10. Plaintiff alleges that Sentinel denied Plaintiff's claim for loss of business income in March 2020. *Id.* ¶ 12. On the basis of these facts, Plaintiff asserts causes of action for breach of contract and for declaratory relief. *See id.* ¶¶ 13–20.

## B. The Policy

The Policy's Special Property Coverage Form provides that the insurer "will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." Dkt. No. 13-1 at 34.[2] "Covered Causes of Loss" is defined as a "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is specifically excluded or limited in other provisions. *Id.* at 35.

> With respect to "Business Income" coverage, the Policy provides that the insurer will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises". . . caused by or resulting from a Covered Cause of Loss.

*Id.* at 43. The Policy provides for "Extra Expense" coverage, detailing that the insurer "will pay reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property . .

---

[2] The Policy is incorporated by reference. *See Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 (9th Cir. 2009) ("A court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint.").

. caused by or resulting from a Covered Cause of Loss." *Id.*

With respect to "Civil Authority" coverage, the Policy provides that "insurance is extended to apply to the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'" *Id.* at 44.

The Policy includes a Virus Exclusion provision, which details that the Special Property Coverage Form exclusions include:

> "Fungi", Wet Rot, Dry Rot, Bacteria And Virus
>
> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

*Id.* at 132. The Policy states that the Virus Exclusion provision does not apply in two instances: (1) when the "virus results from fire or lightning," or (2) when the Policy's Additional Limited Virus Coverage applies. *Id.* And the Additional Limited Virus Coverage "only applies" when the "virus is the result of" a " 'specified cause of loss' other than fire or lightning" or from an equipment breakdown.[3] *Id.* at 133.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(c) a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006). "Rule 12(c) is functionally identical to Rule 12(b)(6) and . . . the same standard of review applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quotation omitted). The Court

United States District Court
Northern District of California

---

[3] The policy defines a "Specified Cause of Loss" as "[f]ire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment, sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet, water damage." Dkt. No. 13-1 at 58.

1    will "accept factual allegations in the complaint as true and construe the pleadings in the light

2    most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

3    1025, 1031 (9th Cir. 2008).

4    **III.    DISCUSSION**

5        **A.    Policy Coverage**

6        The Court finds that Plaintiff has not plausibly alleged a claim for coverage under the

7    Policy.  Defendant argues that Plaintiff's allegations do not establish "direct physical loss of or

8    damage to" property, as required by the Business Income and Extra Expense provisions.  Mot. at

9    14.  Plaintiff argues that he has sufficiently alleged "direct physical loss of," pointing to a

10   "temporar[y]" loss "of access and use" to his salons.  Dkt. No. 29 ("Opp.") at 5.  California courts

11   have required a "distinct, demonstrable, physical alteration of the property" or a "physical change

12   in the condition of the property" to demonstrate direct physical loss.  *MRI Healthcare Ctr. of*

13   *Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 771, 779-80, 115 Cal.Rptr.3d

14   27 (2010); *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556, 7

15   Cal. Rptr. 3d 844, 851 (2003), *as modified on denial of reh'g* (Jan. 7, 2004) (concluding "loss of

16   the database, with its consequent economic loss, but with no loss of or damage to tangible

17   property, was not a 'direct physical loss of or damage to' covered property"); *see also Mortar &*

18   *Pestle Corp. v. Atain Specialty Ins. Co.*, No. 20-CV-03461-MMC, 2020 WL 7495180, at *3 (N.D.

19   Cal. Dec. 21, 2020) (same).

20       When read in context, this interpretation also comports with the "period of restoration"

21   language included in both the Business Income and Extra Expense provisions.  These provisions

22   provide coverage for certain losses and expenses incurred during the "period of restoration,"

23   which is elsewhere defined as the period that "[b]egins with the date of direct physical loss or

24   physical damage" and ends when the property "should be *repaired, rebuilt or replaced with*

25   reasonable speed and similar quality."  *See* Dkt. No. 13-1 at 57 (emphasis added).  Plaintiff's

26   allegations of temporary loss of access and use, which claim no loss requiring repair, rebuilding,

27

28

4

1    or replacement, are plainly insufficient.[4]  The Court thus finds that Plaintiff has not plausibly

2    alleged "direct physical loss of or damage to" property, as required by the Policy.[5]

3        **B.    Virus Exclusion**

4            Additionally, Plaintiff's losses are not covered because Defendant has met its burden of

5    showing that the Virus Exclusion applies.  As noted, the Virus Exclusion expressly excludes "loss

6    or damage caused directly or indirectly by" a virus.  *See* Dkt. No. 13-1 at 132.  Plaintiff alleges

7    that he incurred losses when his salons closed due to the governmental orders, which were issued

8    because of COVID-19.  *See* Compl. ¶ 9-10.  It is undisputed that COVID-19 is a virus.  *See id.* ¶ 9

9    (alleging Plaintiff "did not suffer from this virus").  Because the alleged losses were "caused

10   directly or indirectly by" a virus, the Virus Exclusion applies under the unambiguous language of

11   the Policy.  Plaintiff seeks to sidestep the Virus Exclusion, arguing that the claimed losses were

12   the result of governmental orders, rather than the virus.  Opp. at 7-8.  Specifically, Plaintiff

13   contends that the "complaint clearly alleges around this exclusion by" stating that he "did not

14   suffer from the virus" and that there was no evidence the virus "even threatened his property."  *Id.*

15

16   [4] Plaintiff seems to suggest that mere loss of use or access to property constitutes "direct physical
     loss of or damage" to property.  The Court is unpersuaded by Plaintiff's citations to several out-of-
17   state decisions, the majority of which involved some physical contamination that rendered a
     property uninhabitable.  *See e.g.*, *Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-CV-
18   01932-CL, 2016 WL 3267247, at *9 (D. Or. June 7, 2016), vacated, No. 1:15-CV-01932-CL,
     2017 WL 1034203 (D. Or. Mar. 6, 2017) (finding property sustained "physical loss or damage"
19   where wildfire smoke made theatre "uninhabitable and unusable"); *Gregory Packaging, Inc. v.
     Travelers Prop. Cas. Co. of Am.*, No. 2:12-CV-04418 WHW, 2014 WL 6675934, at *6 (D.N.J.
20   Nov. 25, 2014) (finding that "ammonia discharge inflicted 'direct physical loss of or damage to'
     property, where "ammonia physically rendered the facility unusable"); *Port Auth. of New York &
21   New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (noting standard for
     "physical loss or damage" to structure caused by asbestos contamination  met where "structure is
22   made useless or uninhabitable" from certain level of asbestos release).  A court in this district
     rejected a similar argument that loss of use or access constitutes direct physical loss, noting that
23   the cases plaintiff cited "involved an intervening physical force which made the premises
     uninhabitable or entirely unusable."  *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-
24   03213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) (internal quotations omitted).
     The court reasoned that for loss of use to establish a "direct physical loss of property," there must
25   be "allegations of a physical force which induced a determinantal change in the property's
     capabilities."  *Id.* at *5 (internal quotations omitted).
26   [5] The Court agrees that Plaintiff has also failed to state a claim for Civil Authority Coverage,
     which requires Plaintiff to show "a Covered cause of Loss to property in the immediate area of
27   your 'scheduled premise.' "  *See* Dkt. No. 13-1 at 44.  For the same reasons as previously
     discussed in Section III(A), the Court finds that Plaintiff has not made any plausible allegations of
28   any risks of direct physical loss to his salon, or any property in its immediate area.

United States District Court
Northern District of California

at 1.  But Plaintiff's proffered distinction defies common sense and Plaintiff's own allegations detailing that these governmental orders "were issued . . . as a result of . . .COVID-19."  *See id.* ¶ 9.

Consistent with the analysis adopted by courts throughout the Ninth Circuit, the Court rejects Plaintiff's attempt to avoid the exclusion based on this purported distinction.  *See, e.g.*, *Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*, No. 20-CV-05441-CRB, 2020 WL 7247207, at *4 (N.D. Cal. Dec. 9, 2020) (noting the plaintiff could not "convincingly argue that its losses were caused by the March 2020 governmental orders while ignoring that those governmental orders were themselves caused by a virus"); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (rejecting theory that virus exclusion was inapplicable because the loss was purportedly caused by "[c]losure orders rather than the virus"); *Palmdale Estates, Inc. v. Blackboard Ins. Co.*, No. 20-CV-06158-LB, 2021 WL 25048, at *3 (N.D. Cal. Jan. 4, 2021) ("The closure orders were in response to the COVID-19 pandemic, a 'cause of loss' that falls within the Virus Exclusion.").

Plaintiff's invocation of the efficient proximate cause doctrine is unavailing, *see* Opp. at 8, because the virus is the efficient proximate cause of Plaintiff's losses.  An efficient proximate cause is "a cause of loss that predominates and sets the other cause of loss in motion." *Boxed Foods Co., LLC v. California Capital Ins. Co.*, No. 20-CV-04571-CRB, 2020 WL 6271021, at *4 (N.D. Cal. Oct. 26, 2020), *as amended* (Oct. 27, 2020) (citing *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 402-03 (1989)).  When loss is attributable to a covered cause and an excluded cause, "coverage only exists if the efficient proximate cause of the damage is covered." *Boxed Foods*, 2020 WL 6271021, at *4 (citing *Garvey*, 48 Cal. 3d at 403).  In *Boxed Foods*, the court addressed an argument that the governmental orders, and "not solely COVID-19," caused their business losses.  2020 WL 6271021 at *4 (internal quotation marks omitted).  But the court explained that "under California law, COVID-19 is the efficient proximate cause of Plaintiffs' losses." *Id.* (citing *Garvey*, 48 Cal. 3d at 402-03).  Another court rejected a similar invocation of the efficient proximate cause doctrine, reasoning that "but-for COVID-19, the civil authority orders would not exist, and Plaintiff would not have lost business revenue, making the virus—an

6

exclusion under the Policy—the efficient proximate cause of Plaintiff's losses." *Karen Trinh, DDS, Inc. v. State Farm Gen. Ins. Co.*, No. 5:20-CV-04265-BLF, 2020 WL 7696080, at *4 (N.D. Cal. Dec. 28, 2020) (adopting reasoning of *Boxed Foods*); *see also Robert W. Fountain*, 2020 WL 7247207 at *5 (same). The Court agrees with this reasoning, and concludes that "California's efficient proximate cause doctrine does not save Plaintiff's claim." *See Karen Trinh*, 2020 WL 7696080 at *4 (N.D. Cal. Dec. 28, 2020).

Finally, Plaintiff argues that he is entitled to coverage under one of the two exceptions to the Virus Exclusion. *See* Opp. at 8. As noted, the Virus Exclusion does not apply when there is coverage under the Policy's Additional Limited Virus Coverage. *See* Dkt. No. 13-1 at 132. But Plaintiff has not adequately alleged that this exception applies. The Additional Limited Virus Coverage is detailed in Section B.1, which has six subparts ((a) through (f)). *See id.* at 133-34. With respect to Limited Virus Coverage, subpart (b) indicates that the insurer "will pay for loss or damage by . . . virus." *See id.* at 133. It further specifies that "[a]s used in this Limited Coverage, the term loss or damage means" "direct physical loss or direct physical damage . . . caused by . . . virus," "[t]he cost to tear out and replace any part of the building or other property as needed to gain access to the . . . virus," and potentially "[t]he cost of testing performed after removal, repair, replacement or restoration of the damaged property." *See id.* Importantly, subpart (a) specifies that the Limited Virus coverage "only applies" when the "virus is the result of" an equipment breakdown, or a "specified cause of loss," defined as including "[f]ire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment, sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet, water damage." *See id.* at 58, 133.

Plaintiff has not alleged that the virus was caused by any equipment breakdown or any of the specified causes of loss, and thus has failed to show the exception applies. *See id.* at 133; *see also Franklin EWC*, 2020 WL 5642483 at *4 (concluding that plaintiffs did not show limited virus provision applied because they did not allege that "the virus was caused by any of the specified causes of loss"). Instead, Plaintiff relies on subpart (f), arguing that subpart (f) is not limited "to certain contributing causes," and that virus-related allegations do not preclude coverage because

1 government orders caused his losses.  *See* Opp. at 8.  "The terms in an insurance policy must be

2 read in context and in reference to the policy as a whole, with each clause helping to interpret the

3 other."  *Sony Comput. Entm't Am. Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012 (9th Cir.

4 2008).  Accordingly, the Court reads the Limited Virus provision in context, with reference to its

5 subparts, and as an exception to the Virus Exclusion.  And the Court agrees that the "Time

6 Element Coverage" provided in subpart (f) does not provide standalone coverage, but instead is

7 triggered when the other requirements of the Limited Virus provision are met.  As noted, Plaintiff

8 has not alleged that the virus was caused by the particular specified causes of loss or from an

9 equipment breakdown.  Further, subpart (f) requires a "loss which resulted in . . . virus," and

10 Plaintiff specifically alleges that there was no evidence that his salons were contaminated by the

11 virus.

12     In sum, the Court finds the Defendant has met its burden of showing that the Virus

13 Exclusion applies, and Plaintiff's alleged losses are not covered as a matter of law.

### IV.    CONCLUSION

15     Accordingly, the Court **GRANTS** the motion for judgment on the pleadings.  The Court is

16 skeptical that, given the nature of the dispute and the Court's legal findings, it is possible for

17 Plaintiff to amend the complaint to address these deficiencies.  Nonetheless, the Court will grant

18 Plaintiff an opportunity to amend if it may do so consistent with its Rule 11 obligations.  Any

19 amended complaint must be filed within 21 days of this order.

21     **IT IS SO ORDERED.**

22 Dated: January 26, 2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

8

# Exhibit C

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THE EYE CARE CENTER OF NEW
JERSEY, PA, on behalf of itself and
all others similarly situated,

     **Plaintiff,**

     **v.**

TWIN CITY FIRE INSURANCE
COMPANY,

     **Defendant.**

Civ. No. 20-05743 (KM) (ESK)

**OPINION**

## KEVIN MCNULTY, U.S.D.J.:

As COVID-19 and responsive measures pause normal business operations, businesses have turned to their commercial insurers, seeking coverage for business interruption losses. Plaintiff here, the Eye Care Center of New Jersey, an ophthalmologic practice, sought coverage from Twin City Fire Insurance Co., its insurer. Twin City denied coverage. Eye Care now sues to recover its own allegedly covered losses, and also seeks to represent a nationwide class of insureds with the same policy. Twin City moves to dismiss the individual and class claims. (DE 28, 27.)[1] For the following reasons, the motions to dismiss are **GRANTED**.

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Am. Compl. = Amended Complaint (DE 22)

    Policy = Insurance Policy No. 13 SBA IO1188 (DE 28-2)

    Mot. = Twin City's Brief in Support of its Motion to Dismiss the Individual Claims (DE 28-1)

    Opp. = Eye Care's Opposition to Twin City's Motion to Dismiss (DE 35)

## I.  BACKGROUND

Following its emergence in December 2019, the novel coronavirus COVID-19 spread throughout the world. (Am. Compl. ¶¶ 19, 21.) In response, governments ordered businesses to close or restrict their operations. (*Id.* ¶¶ 30–31.) For medical practices, government orders prohibited non-urgent procedures. (*Id.* ¶ 30.) Complying, Eye Care ceased performing such procedures. (*Id.* ¶ 15.)

To recoup its losses, Eye Care sought to recover on a commercial insurance policy it had with Twin City. (*Id.* ¶ 32.) That policy is standard and used with businesses nationwide. (*Id.* ¶¶ 33–34.) The policy generally provides that Twin City "will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." (Policy at 34.) "Covered Cause of Loss" is defined to include "risks of direct physical loss" unless the loss is otherwise excluded. (*Id.* at 35 (capitalization altered).)

Then, in a section called "Additional Coverages," the policy explains what exactly Twin City will pay for. (*Id.* at 36.) The policy will pay for lost "Business Income" during suspension of operations, as well as "Extra Expenses" that a business would not have otherwise incurred. (*Id.* at 43.) The policy also makes explicit that "[t]his insurance is extended to apply to the actual loss of Business Income you sustain when access to your [property] is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss." (*Id.* at 44.)

In addition, however, the policy excludes several occurrences from coverage. One exclusion relates specifically to viruses:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> > (1) Presence, growth, proliferation, spread or any activity of . . . virus.

(*Id.* at 144.) Relying on this exclusion, Twin City denied Eye Care's claim for losses sustained as a result of COVID-19 restrictions. (Am. Compl. ¶ 45.)

In response, Eye Care sued Twin City. Eye Care brings three breach of contract claims, asserting that Twin City breached its obligations to provide coverage under the (a) business income, (b) civil authority, and (c) extra expense provisions. (*Id.*, Counts 2, 4, 6.) Eye Care also seeks declaratory judgments that Twin City must cover claims under those three provisions for businesses closed due to COVID-19 measures. (*Id.*, Counts 1, 3, 5.) Eye Care brings all its claims individually and behalf of a proposed class of businesses with the same policy that have suffered losses due to COVID-19-related closures. (*Id.* ¶¶ 50–51.) Twin City moves to dismiss both the individual claims (DE 28) and the class claims (DE 27).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III.   DISCUSSION

Whether Eye Care's losses are covered under the policy is a question of contract interpretation. *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, LLC,*

143 A.3d 273, 280 (N.J. 2016).[2] I apply the plain language of the policy. *Id.* Although "exclusions are ordinarily strictly construed against the insurer," that interpretive principle does not permit a court to disregard an exclusion's plain meaning. *Flomerfelt v. Cardiello*, 997 A.2d 991, 997 (N.J. 2010). When an exclusion clearly applies to a complaint's allegations, a court may dismiss the complaint. *E.g.*, *Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011).

### A. The Virus Exclusion

The virus exclusion applies in blanket fashion to all forms of coverage in the policy. If applicable, then, it will dispose of this case. The exclusion bars coverage for losses "caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of . . . virus." (Policy at 144.) Eye Care's losses were "caused directly or indirectly" by COVID-19; Eye Care curtailed its operations in compliance with governmental COVID-based restrictions. But for the "spread" of COVID-19, governments would not have issued closure orders, and Eye Care would not have stopped performing non-emergency procedures.

Other courts in New Jersey have adopted that straightforward reading. In one case interpreting a near-identical virus exclusion, Judge Kugler explained that "[t]here is no doubt that COVID-19, a virus, caused Governor Murphy to issue the Executive Order mandating closure of Plaintiff's restaurant." *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, --- F. Supp. 3d ----, ----, Civ. No. 20-05289, 2020 WL 6501722, at *3 (D.N.J. Nov. 5, 2020). In two other cases, Judge Wigenton held likewise. *Boulevard Carroll Ent. Grp., Inc. v. Fireman's Fund Ins. Co.*, Civ. No. 20-11771, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020), *appeal docketed*, No. 21-1061 (3d Cir. Jan. 12, 2021); *7th Inning Stretch LLC v. Arch Ins. Co.*, Civ. No. 20-08161, slip op. at *4 (D.N.J. Jan. 19, 2021), DE 54. Finally, the New Jersey Superior Court held that it was a "clear and

---

[2]    The parties agree that New Jersey law applies. (Mot. at 8 n.2; Opp. at 3.) *See Pre-Settlement Fin., LLC v. Ellis*, Civ. No. 18-06339, 2020 WL 5743036, at *4 n.3 (D.N.J. Sept. 24, 2020) (reliance on a particular state's law in the parties' briefs is sufficient to establish choice of law (citation omitted)).

unmistakable conclusion" that a similar virus exclusion applied to business losses due to COVID-19. *Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, No. L-02629, slip op. at *16 (N.J. Super. Ct. Law Div. Nov. 5, 2020) (provided at DE 47-2). The Third Circuit, New Jersey Supreme Court, and the Appellate Division have not spoken on this issue. In the meantime, opinions of this Court and one trial-level New Jersey court provide strong persuasive authority.

Looking farther afield, I see that cases like Eye Care's have proliferated across the country, and that nearly every court to address the issue has barred coverage based on similarly worded virus exclusions. *E.g., N&S,* 2020 WL 6501722, at *4 (collecting cases).[3] "Lacking more specific guidance, a federal court may identify a majority view and predict that a state supreme court would adopt it." *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, Civ. No. 18-10675, 2021 WL 303030, at *4 (D.N.J. Jan. 29, 2021) (citation omitted).

The weight of authority supports my plain-text reading, and I predict that the New Jersey Supreme Court would adopt it.

## B. Eye Care's Counterarguments

Eye Care offers two arguments in support of its positions that the virus exclusion nevertheless does not apply. Neither is persuasive.

First, Eye Care argues that the exclusion's language connotes that the virus must be physically present at the business premises. Eye Care points to terms like "presence" and "growth" as well as the fact that the other excluded occurrences in this section (fungi, wet rot, dry rot, and bacteria) "could only harm the insured's property if they were physically present." (Opp. at 5.)

But there is no textual limitation indicating that the virus must be present at the property. Rather, the clause excludes coverage for losses caused by the spread of viruses generally, and adds that it extends to both direct and indirect causation. Eye Care's resort to general canons of interpretation is a diversion from the task at hand; "[w]e need not call upon canons of

---

[3]    I have reviewed the parties' notices of supplemental authority. (DE 38, 39, 40, 47, 48, 50, 51, 52, 55, 56.)

interpretation for guidance, however, because the [] exclusion is unambiguous as applied here." *Certain Underwriters at Lloyds of London v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014); *see also Flomerfelt*, 997 A.2d at 997 ("[W]e do not suggest that any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage . . . . Rather, courts must evaluate whether, utilizing a fair interpretation of the language, it is ambiguous." (quotation marks and citation omitted)). There is not a sufficient textual basis for Eye Care's argument that the virus must be physically present. *N&S*, 2020 WL 6501722, at *3 (rejecting similar argument).

Second, Eye Care argues that the government orders, not the virus itself, should be considered the proximate cause of its losses. For support, Eye Care invokes the "Appleman Rule," a doctrine in insurance law providing that "if an exclusion 'bars coverage for losses *caused by* a particular peril, the exclusion applies *only if* the excluded peril was the efficient proximate cause of the loss." *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1192 (N.J. Super. Ct. App. Div. 2019) (quoting *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007)), *aff'd on other grounds*, --- A.3d ---, 2021 WL 261989 (N.J. Jan. 27, 2021) (per curiam). In other words, even though a virus was the first link in the causal chain, the last link before Eye Care suffered losses was the closure orders, so Eye Care can still recover. *See Auto Lenders Acceptance Corp. v. Genteli Ford, Inc.*, 854 A.2d 378, 385 (N.J. 2004) ("[R]ecovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril . . . ." (citation omitted)).

But parties may contract around the Appleman Rule. *Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 669–700 (N.J. Super. Ct. App. Div. 2004); *Assur. Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 352–54 (D.N.J. 1999). Eye Care and Twin City did so here because the virus exclusion says that (1) coverage does not apply if losses are caused "directly or *indirectly* by" a virus, and (2) the exclusion applies "regardless of any other cause or event that

contributes concurrently or in any sequence to the loss." (Policy at 144 (emphasis added).) Courts have read such language to mean that losses from COVID-19 closures are covered by the virus exclusion because COVID-19 could still be considered an indirect or sequential cause. *N&S*, 2020 WL 6501722, at *4 (collecting cases). I am persuaded by that reasoning, and see no reason to depart from the case-law consensus.[4]

\* \* \*

I conclude that the virus exclusion applies to bar Eye Care's recovery, and Eye Care's arguments to the contrary are unpersuasive. So I will grant Twin City's motion to dismiss the individuals claims for failure to state a claim. Because Eye Care fails to state an individual claim, its claims on behalf of a class fail too. *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987) ("[T]o be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim."); *see Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) ("[W]hen claims of the named plaintiffs become moot before class certification, dismissal of the action is required."). So I will also grant Twin City's motion to dismiss the class-based claims.

---

[4]    Eye Care relies on *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Co.*, which, in my view, is the only case that analyzed the virus exclusion and came to a different conclusion. --- F. Supp. 3d ----, ----, No. 2:20-cv-265, 2020 WL 7249624, at *12 (E.D. Va. Dec. 9, 2020). I find *Elegant Massage* distinguishable. Most prominently, that court found that Virginia law was unclear as to whether an exclusion with a broad causation clause is enforceable; New Jersey law, in contrast, is clear that such clauses are valid. Moreover, other federal courts have tagged *Elegant Massage* as a "notable outlier" and have found it unpersuasive. *Bluegrass, LLC v. State Auto. Mut. Ins. Co.*, No. 2:20-cv-00414, 2021 WL 42050, at *4 (S.D. W. Va. Jan. 5, 2021); *LJ New Haven LLC v. AmGUARD Ins. Co.*, --- F. Supp. 3d ----, ----, No. 3:20-cv-00751, 2020 WL 7495622, at *7 n.7 (D. Conn. Dec. 21, 2020).

## IV.    CONCLUSION

For the reasons set forth above, the motions to dismiss are granted. This is an initial dismissal. Nevertheless, because the dismissal is based on the court's reading of the plain language of the policy, amendment would be futile. I will therefore take the less usual course of dismissing with prejudice, rendering this a final and appealable decision. Any party that believes the Court has overlooked a substantial issue of fact of law, of course, may move for reconsideration.

A separate order will issue.

Dated: February 8, 2021


                                        /s/ Kevin McNulty
                                        _____
                                        **Hon. Kevin McNulty**
                                        **United States District Judge**

# Exhibit D

# IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY, OHIO

EYE SPECIALISTS OF DELAWARE,  :
                              :
    Plaintiff,              :
                              :    Case No. 20 CV 6386
    -vs-                    :    Judge Page
                              :
HARLEYSVILLE WORCHESTER        :
INSURANCE COMPANY, *et al.*,   :
                              :
    Defendants,             :

## DECISION AND ENTRY ON DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE, AND PLAINTIFF'S MOTION FOR LEAVE

    This case is before the Court on Defendants' Harleysville Worchester Insurance Company (Harleysville) and Nationwide Mutual Insurance Company's (Nationwide) motion to dismiss and motion to strike, and on Plaintiff's motion for leave to file a memorandum contra that exceeds the page limitations. The issues before the Court are: (1) whether Plaintiff's complaint should be dismissed for failure to state a claim upon which relief may be granted under Civ. R. 12(B)(6); and (2) whether Plaintiff's thirty-four (34) page November 20, 2020 memorandum contra to Defendants' motion to dismiss should be partially struck for violating the page limitations set forth in Loc.R. 12.01 and 12.03. For the reasons set forth in this opinion, Defendants' motion to strike is granted, Plaintiff's motion for leave is denied, and Defendants' motion to dismiss is granted.

## I. FACTS

    Plaintiff is a business located in Dover, Delaware, that provides ophthalmologic surgery and other services. Defendant Harleysville is an insurance company domesticated in the State of Ohio, and is in the business of drafting and selling insurance policies in Ohio and Delaware. Harleysville is wholly owned by Nationwide, which has its principal place of business in Columbus, OH.

1

Plaintiff's complaint alleges that Defendants sold it Premier Business Owner's Policy No. BOP00000061201M (the "insurance policy"). The insurance policy was effective from April 2, 2019, until April 2, 2020, and was a renewal of a previous policy. The policy includes civil authority coverage and virus exclusion sections.

In March of 2020, COVID19 became a global pandemic. As a result, the State of Delaware declared a state of emergency due to the public health threat. Plaintiff asserts that the insurance policy premiums have been paid, but that Defendants have refused to provide coverage to which it is entitled.

The issues before the Court revolve around Defendants' October 23, 2020 motion to dismiss. Defendants' motion is fifteen pages long and attached thereto is a series of exhibits that contain portions of the insurance contract at issue and legal authority related to insurance coverage and government orders issued during the COVID19 pandemic. Defendants' motion mainly argues that an endorsement containing an exclusion for losses resulting from any virus (the "virus exclusion") bars Plaintiff's claims. (Defendants' Ex. 5, pg. 72). Secondarily, Defendants argue that no physical loss occurred, and that the civil authority coverage contained in the insurance contract is not applicable.

Plaintiff filed its opposition to Defendants' motion on November 20, 2020 in a thirty-six (36) page document and attached over 200 pages in exhibits that include a plethora of legal decisions on the same subject matter. Plaintiff argues that the virus exclusion is not enforceable because it is ambiguous, there was physical damage, and coverage is required for Plaintiff's damages under the civil authority portion of the insurance contract.

After Plaintiff's opposition was filed, Defendants filed a motion to strike pages 16-36 of the filing and all of Plaintiff's exhibits. On December 14, 2020, Plaintiff filed its combined motion

for leave to exceed the page limitations of Loc.R. 12.01 *instanter*, and in opposition to Defendants' motion to strike.

## II. MOTION TO STRIKE

Defendants' motion seeks to strike a portion of Plaintiff's memorandum in opposition to its motion to dismiss that exceeds the page limitations of Loc.R. 12.01, and a series of exhibits attached to Plaintiff's memorandum.

### A. PAGE LIMITATIONS

Page limitations are limited by Loc.R. 12.01, which states that supporting or opposing briefs shall not exceed fifteen (15) pages, and shall not be considered without prior leave of the Court. Loc.R. 12.03 requires a motion for leave to file a memorandum in excess of fifteen (15) pages to be made no later than seven days prior to the time for filing the brief, and shall set forth unusual and extraordinary circumstances which necessitate exceeding the page limitations. "The enforcement of local court rules is well within the sound discretion of the court, including the power to strike a brief that does not comply with such rules." *Hetrick v. Ohio Dep't of Agric.*, 2017-Ohio-303, 81 N.E.3d 980, ¶ 67 (10th Dist.) (Finding no abuse of discretion where a court refused to strike a brief because it did not count the cover page towards the fifteen page limitation in Loc.R. 12.01.), *quoting Boggs v. Ohio Real Estate Comm'n*, 186 Ohio App. 3d 96, 2009-Ohio-6325, ¶ 42 (Holding that no error occurred where a court addressed only the first fifteen pages of appellant's brief and the first seven pages of her reply where leave was neither sought, nor granted to exceed the page limitation of Loc.R. 12.01.). In *State v. G.F.*, the court held that when an opposing party has filed its brief within the page limitations of Loc.R. 12.01, a party seeking leave to exceed these page limitations in its response, "face[s] a significant hurdle in setting forth any unusual or extraordinary circumstances," to justify their request. *State v. G.F.*, 10th Dist. Franklin

No. 18AP-201, 2019-Ohio-3673, ¶ 14.

Here, Plaintiff's memorandum contra Defendants' motion to dismiss exceeds the page limitations of Loc.R. 12.01 by approximately nineteen pages. No leave was sought by Plaintiff prior to filing its memorandum contra on November 20, 2020. Plaintiff filed its motion for leave to exceed the page limitations on December 14, 2020, outside the time requirements of Loc.R. 12.03. Additionally, Defendants' motion to dismiss was fifteen pages in length, elevating Plaintiff's burden in showing unusual or extraordinary circumstances to justify extending its page limit to respond. In support of leave to exceed the page limits, Plaintiff argues that Defendants' motion involves, "[N]umerous legal issues which are not only complex, but are novel." (Plaintiff Mot. for Leave, pg. 1). Plaintiff has not explained how the test for such an interpretation is different or more complex than any other insurance exclusion such that it would constitute extraordinary circumstances warranting an expansion of the page limitations of Loc.R. 12.01. Since Plaintiff did not comply with the procedural requirements of Loc.R. 12.03, and has not convinced the Court that unusual or extraordinary circumstances exist, pages 16-36 of Plaintiff's oppositional memorandum shall be struck, and will not be considered by the Court.

**B. EXHIBITS**

Attached to its memorandum in opposition to Defendants' motion to dismiss, Plaintiffs included a series of exhibits totaling over 200 pages, which include: (1) an affidavit from Plaintiff's counsel (Plaintiff Ex. A); (2) subpoenas and discovery requests from other cases (Plaintiff Ex. 1-2, Appendix A; (3) an unsworn declaration that was filed in another case (Plaintiff Ex. 3A); (4) a 166 page judgment entry from a court in London, England (Plaintiff Ex. B); (5) an entry denying a motion to dismiss from Cuyahoga County case CV-20-932117 (Plaintiff Ex. C); (6) an entry denying a motion to dismiss from the Western District of Missouri Southern Division in case 20-

cv-03127-SRB (Plaintiff Ex. DB); and (7) an entry denying summary judgment from a case from Louisiana number 2020-02558 (Plaintiff Ex. E). Defendants request that each of these exhibits be stricken as improperly filed.

"In considering a Civ.R. 12(B)(6) motion to dismiss, a trial court may not rely on allegations or evidence outside the complaint." *Cramer v. Javid*, 10th Dist. Franklin No. 10AP-199 (C.P.C. No. 09CVH-11-17235), 2010-Ohio-5967, ¶ 7. Documents and evidence outside the complaint are irrelevant unless they have been incorporated into the complaint. *Id*. at 8; Civ.R. 10(C); *Columbus Green Bldg. Forum v. State*, 2012-Ohio-4244, 980 N.E.2d 1, ¶ 23 (10th Dist.).

Here, Plaintiff's Exhibits A, 1-2 (including Appendix A), and 3A all contain evidentiary materials. None of these documents is either attached to, or incorporated by Plaintiff's complaint. Therefore, the Court may not consider them in deciding Defendants' motion to dismiss. The remainder of Plaintiff's Exhibits contain legal decisions from other jurisdictions. The Court will consider these decisions to the extent that they contain relevant persuasive legal authority in deciding Defendants' motion to dismiss. The Court notes that Defendants have also provided summaries and the full text of many legal decisions, which will also receive consideration by the Court.

After considering Defendants' motion to strike and Plaintiff's motion for leave, the Court grants in part the motion to strike as described above, and denies Plaintiff's motion for leave.

## III. MOTION TO DISMISS

### A. LEGAL STANDARD

"A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6) tests the sufficiency of the complaint." *Brown v. Levin*, 10th Dist. Franklin No.11AP-349, 2012-Ohio-5768, ¶ 15. In reviewing whether a motion to dismiss should be

granted, the court must accept all factual allegations in the complaint as true, and it must appear

beyond doubt that the plaintiff can prove no set of facts entitling him/her to relief. *Id.*

### B. THE VIRUS EXCLUSION

Defendants' argument for dismissal relies on the virus exclusion, which is an endorsement

that modifies the insurance provided by Defendants' in the businessowners coverage form and

policy, and states:

> A. The exclusion set forth in Paragraph B. applies to all coverage under Section I – Property in all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph C. This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

> B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

(Defendants' Ex. 5, pg. 72).

Plaintiff responds by arguing that if the Court presumes all factual allegations within its

complaint true as required when analyzing a motion to dismiss pursuant to Civ.R. 12(B)(6),

Defendants' motion to dismiss must fail. Plaintiff also argues that Defendants' motion cannot be

granted because: (1) the virus exclusion contains ambiguous language that renders it

unenforceable; (2) Defendants' motion is a summary judgment motion masquerading as a motion

to dismiss; (3) the closure of Plaintiff's business was a result of a government order, not a virus;

and (4) the virus exclusion is not applicable to a pandemic. Though the substance and specifics of

some of these arguments is contained in the portion of Plaintiff's memorandum contra that will

not be considered by the Court, the arguments are at least facially stated on page nine and earlier,

warranting the Court's consideration. (Plaintiff Memo. Contra, pg. 9).

6

## 1. CIV.R. 12(B)(6) SUFFICIENCY

Plaintiff first argues that Defendants, in their motion to dismiss, ignored the bulk of Plaintiff's complaint. Plaintiff believes that if the Court considers the entirety of its complaint, it must find that Plaintiff has sufficiently alleged its claims to survive a Civ.R. 12(B)(6) motion.

The allegations that Plaintiff highlights in its memorandum contra to support this argument assert that as a result of the Delaware State Declaration of a State of Emergency (the "Delaware Order"), "Plaintiff has been forced to halt ordinary operations, resulting in substantial lost revenues and forcing the Plaintiff to shut down and/or limit operations, resulting in a loss of business income." (Complaint, ¶ 10). Plaintiff also alleges that the Delaware Order states that the pandemic is causing direct physical property damage, which includes the damages it alleges occurred to Plaintiff, requiring coverage from Defendants. (Complaint, ¶ 37-39).

Plaintiff goes to great lengths in its arguments and in the complaint to avoid using the term virus when describing the COVID19 pandemic. It also argues both that the Delaware Order, not COVID19, is the cause for its damages, and that, "[T]here is a dispute as to whether the Virus or Bacteria Exclusion even pertains to a pandemic," making the virus exclusion inapplicable. (Plaintiff Memo. Contra, pg. 9). The Court disagrees with both suppositions.

First, Plaintiff's argument that a virus does not pertain to a pandemic is immaterial because the Delaware Order does not describe COVID19 as a pandemic, but as a, "[S]erious public health threat." (Defendants' Ex. 2, pg. 2). The fact that COVID19 is a virus is inherent in the language of the Delaware order, which refers to COVID19 as the "coronavirus" or "novel coronavirus". (Defendant, Ex. 2, pg. 2); *See Draughon v. Jenkins,* 4th Dist. Ross No. 16CA3528, 2016-Ohio-5364, ¶ 26, *citing State ex rel. Everhart v. McIntosh*, 115 Ohio St. 3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 8 (Holding that a court can take judicial notice of public records from the internet

7

without converting a Civ.R. 12(B)(6) motion to dismiss to a motion for summary judgment.).

Second, despite Plaintiff's characterization of the Delaware Order, not COVID19, as being the cause for its interruption of business, and thereby triggering its claim for insurance coverage, the Delaware Order was issued solely because of the serious public health threat posed by COVID19. (Defendants Ex. 2, pg. 1). The Court therefore finds that the COVID19 virus is an actual cause of Plaintiff's claim for coverage, and the Court must review the virus exclusion to determine whether it bars coverage for Plaintiff's claims.

### 2. AMBIGUITY

Plaintiff asserts that the language contained in the virus exclusion is ambiguous, and therefore unenforceable. (Memo. Contra, pg. 9). Defendants respond by arguing that the plain meaning of the virus exclusion bars coverage. The Court agrees.

"Courts generally interpret insurance policies in accordance with the same rules as other types of contracts." *Royal Paper Stock Co. v. Robinson*, 10th Dist. Franklin No. 12AP-455, 2013-Ohio-1206, ¶ 29. To do this, the contract is read as a whole, with any endorsements included as part of the contract policy, and the intent of the parties is presumed to lie in the language used by the parties in the policy unless the language is ambiguous. *Goodell v. Motorist Mut. Ins. Co.*, 2017-Ohio-8425, 99 N.E.3d 1158, ¶ 32 (6th Dist.).

In determining whether an ambiguity exists, the court must give words and phrases their plain and ordinary meaning unless a word or phrase is given a specific definition within the contract. *State Farm Mut. Auto. Ins. Co. v. Gourley*, 10th Dist. Franklin No. 12AP-200, 2012-Ohio-4909, ¶ 15; *Robinson* at 30. When provisions of an insurance policy are susceptible to more than one interpretation, they must be construed strictly against the insurer, and the court must adopt any reasonable construction that results in coverage for the insured. *Id.* at 12.

Here, the language contained in the virus exclusion in §B is not ambiguous. It clearly states that there will be no coverage, "[F]or loss or damage caused by or resulting from any virus * * * that induces or is capable of inducing physical distress, illness or disease." (Defendants' Ex. 5, pg. 72). COVID19 is capable of inducing physical distress, illness or disease, as evidenced by the language of the Delaware Order contained in Defendant's exhibits 2-4, ordering persons within Delaware to shelter in place to avoid transmission of the virus, and acknowledging that COVID19 represents a serious public health threat.

Since the virus exclusion is not ambiguous, the Court must apply its plain meaning to determine whether it bars the coverage that Plaintiff seeks for interruption to its business as a result of COVID19. The Court has reviewed the businessowners policy, which only includes coverage for covered causes of loss. (Defendants' Ex. 5, Part 2, pg. 2). Covered causes of loss are risks of direct physical loss not excluded or otherwise limited under Section I- Property (A)(4) or (B). Defendants' Ex. 5, Part 2, pg. 3). Losses resulting from COVID19, a virus, are not covered because they are excluded by the virus exclusion. (Defendants' Ex. 5, Part 2, pg. 3, Section I- Property (A)(3)). Applying the virus exclusion to Section I-Property (B)(1) excludes coverage related to COVID19. (Defendants' Ex. 5, pg. 72). Therefore, any direct physical loss or damage to Plaintiff's property caused by COVID19 is not a covered cause of loss as described above and provided for in Section I- Property (A)(5)(f), which covers losses for a suspension in business, "[C]aused by direct physical loss of or damage to property at the described premises," because, "The loss or damage must be caused by or result from a Covered Cause of Loss." (Defendants' Ex. 5, Part 2, pg. 7, Section I- Property (A)(5)(f).

This analysis allows the Court to conclude that the virus exclusion bars coverage for the business interruption that Plaintiff alleges in its complaint was caused by COVID19. Having ruled

so, the Court declines to address Plaintiff's other arguments, most of which are laid out in the stricken portion of Plaintiff's memorandum contra.

### 3. EVIDENTIARY CONSIDERATIONS

Plaintiff argues that Defendants' motion to dismiss under Civ.R. 12(B)(6) is actually a Civ.R. 56 motion for summary judgment. Plaintiff submits that Defendants' motion requires the Court to decide a number of factual issues, including: (1) whether Plaintiff is an essential or non-essential business; (2) whether the government order closing businesses in the State of Delaware was issued in response to business property being damaged by COVID19; (3) the interpretation of the insurance policy. (Plaintiff Memo Contra, pg. 15).

Having decided that virus exclusion is a bar to coverage, the Court does not believe that it is necessary to decide these issues, nor does the Court view Defendants' motion to be a disguised motion for summary judgment.

## IV. CONCLUSION

After reviewing the pleadings, motions, and arguments of counsel, the Court, having considered the allegations in Plaintiff's complaint as true, finds no set of facts that Plaintiff may prove that would entitle it to relief. Consequently, Defendants' Civ.R. 12(B)(6) motion to dismiss is well-taken, and is **GRANTED**. In coming to this conclusion, the Court also finds that Defendants' motion to strike is **GRANTED IN PART**, and Plaintiff's motion for leave is **DENIED**.

**IT IS SO ORDERED.**

**Copies to all parties**.

Franklin County Court of Common Pleas

**Date:**               02-01-2021

**Case Title:**          EYE SPECIALISTS OF DELAWARE -VS- HARLEYSVILLE
                         WORCHESTER INSURANCE COMPAN ET AL

**Case Number:**         20CV006386

**Type:**               ORDER

It Is So Ordered.

/s/ Judge Jaiza Page

Electronically signed on 2021-Feb-01     page 11 of 11

Court Disposition

Case Number: 20CV006386

Case Style: EYE SPECIALISTS OF DELAWARE -VS-
HARLEYSVILLE WORCHESTER INSURANCE COMPAN ET AL

Case Terminated: 18 - Other Terminations

Motion Tie Off Information:

1. Motion CMS Document Id: 20CV0063862020-12-1499980000
   Document Title: 12-14-2020-MOTION FOR LEAVE TO FILE -
   PLAINTIFF: EYE SPECIALISTS OF DELAWARE
   Disposition: MOTION DENIED


2. Motion CMS Document Id: 20CV0063862020-10-2399980000
   Document Title: 10-23-2020-MOTION TO DISMISS -
   DEFENDANT: HARLEYSVILLE WORCHESTER INSURANCE
   COMPAN
   Disposition: MOTION GRANTED


3. Motion CMS Document Id: 20CV0063862020-12-1199970000
   Document Title: 12-11-2020-MOTION TO STRIKE - DEFENDANT:
   HARLEYSVILLE WORCHESTER INSURANCE COMPAN
   Disposition: MOTION GRANTED IN PART

# Exhibit E

1

2

3

4                          UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    JESSE FINK,                                Case No. 20-cv-03907-JST

8                    Plaintiff,

9          v.                                   **ORDER GRANTING MOTION TO
                                                DISMISS AND CONTINUING CASE
10   THE HANOVER INSURANCE GROUP,               MANAGEMENT CONFERENCE**
     INC., et al.,
11                                              Re: ECF No. 19, 21
                     Defendants.
12

13          Plaintiff Jesse Fink filed this lawsuit against Defendants The Hanover Insurance Group,

14   Inc. and Massachusetts Bay Insurance Company ("Defendants") bringing claims for breach of

15   contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment.

16   Complaint ("Compl."), ECF No. 1.  Fink alleges that Defendants have refused to provide business

17   interruption insurance under his Property Coverage, General Liability Premium, and Additional

18   Coverage Premium policy.  *Id.* ¶¶ 5, 9; *see also* Insurance Policy ("Policy"), ECF No. 20 at 6-

19   160.[1]  Fink claims that he is entitled to coverage based on the state and county orders mandating

20   the closure of his business due to the COVID-19 pandemic.  Compl. ¶ 50.  As set forth below, the

21   Court finds that Fink is not entitled to coverage and will grant Defendants' motion.[2]

22          "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

23   accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

24

25   ─────────────────
     [1] Pursuant to both parties' unopposed requests, the Court will take judicial notice of insurance
26   policy that is the subject of the dispute, ECF No. 20; public health orders issued by the State of
     California and City and County of San Francisco related to business operations during the
27   coronavirus pandemic, *id.*; and a number of orders and transcripts from other COVID-19
     insurance cases across the country, ECF Nos. 20, 22, 31, 34.
28
     [2] The parties do not dispute that the Court has jurisdiction under 28 U.S.C. §1332(d)(2).

United States District Court
Northern District of California

662, 678 (2009) (citation and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).

In a California insurance case, like the present matter, the interpretation of an insurance policy is question of law for the court in which the court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "If contractual language is clear and explicit, it governs." *Id.*

A necessary predicate to each of Fink's claims is a determination that he is entitled to insurance coverage under his policy. *See Cassio Place, Inc. v. Great Am. Ins. Co.*, No. C-95-3254 SI, 1996 WL 231034, at *2 (N.D. Cal. Apr. 30, 1996) (explaining that the success of the plaintiff's causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing depend entirely on a declaration of coverage). To answer this threshold question, the Court must examine Fink's unique policy and evaluate the terms of the agreement. *See Bank of the W.*, 2 Cal. 4th at 1264. Here, however, the relevant terms of Fink's policy are effectively identical to those analyzed by the Court in a recent decision raising largely the same claims. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-03213-JST, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020). The Court there granted the defendant's motion to dismiss, and the Court finds no reason to reach a contrary conclusion here.[3]

---

[3] The Court notes that several other courts, both inside and outside this district, have approved of its analysis. *See Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, No. 20-cv-03750-WHO, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020); *Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*, No. 20-cv-05441-CRB, 2020 WL 7247207 (N.D. Cal. Dec. 9, 2020); *Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, No. SACV 20-01713-CJC, 2020 WL 6865774 (C.D. Cal. Nov. 12, 2020); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 Civ. 4612 (JPC), 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    First, as in *Mudpie*, the Court concludes that Fink's policy does not provide for business

2  income coverage.  Fink's policy, like the policy in *Mudpie*, states that the insurer "will pay for the

3  actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations'

4  during the 'period of restoration.'  The 'suspension' must be caused by the direct physical loss of

5  or damage to a described premises . . . ."  Compl. ¶ 37; *see also Mudpie*, 2020 WL 5525171, at

6  *3.[4]  The language in both the Fink and Mudpie policy explain that the "period of restoration"

7  continues only until the property is "repaired, rebuilt, or replaced."  Policy, ECF No. 20 at 109;

8  *Mudpie*, 2020 WL 5525171, at *4.  Further, both the Fink and Mudpie policies define "Covered

9  Causes of Loss" as "[r]isks of direct physical loss," subject to exclusions and limitations.  Compl.

10  ¶ 42; *Mudpie*, 2020 WL 5525171, at *3.  Finally, both policies contain a separate provision stating

11  that the insurer "will not pay for loss or damage caused by or resulting from . . . loss of use or loss

12  of market."  Policy, ECF No. 20 at 94; *Mudpie*, 2020 WL 5525171, at *6.

13    In *Mudpie*, the Court held that the policyholder did not have a claim for business income

14  coverage, resting its holding on three separate grounds.  First, although it disagreed with the

15  defendant's argument that policy language requiring a "direct physical loss of" property required a

16  "physical alteration" of the property or a "physical change," the Court nonetheless found that the

17  definition for the "period of restoration," during which coverage is owed, suggested the "loss"

18  must at least include something "to fix, replace, or even disinfect for Mudpie to regain occupancy

19  of its property."  *Mudpie*, 2020 WL 5525171, at *4.  Second, the Court determined that "direct

20  physical loss of property" requires that "some outside physical force must have *induced* a

21  detrimental change in the property's capabilities."  *Id.* at *5.  Third, the Court considered the

22  separate "loss of use" provision and found that it "suggest[ed] that the 'direct physical loss of . . .

23  property' clause was not intended to encompass a loss where property was rendered unusable

24  without an intervening physical force."  *Id.* at *6.  Fink has alleged no loss at his property which

25  can be fixed, replaced, or disinfected.  Like Mudpie, he does not allege that "the presence of

26

27  ─────────────────
[4] Mudpie's policy was identical except that it said that "'suspension' must be caused by direct

28  physical loss of or damage to *property at* the described premises."  *Mudpie*, 2020 WL 5525171, at
*3 (emphasis added).

3

United States District Court
Northern District of California

1    COVID-19 virus in [his business] created a physical loss." *See id.*; ECF No. 30 at 7 ("Plaintiff has

2    not pleaded that the virus was present or caused any damage."); *cf. Studio 417, Inc. v. Cincinnati*

3    *Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385, at *4 (describing plaintiff's allegation that

4    "COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it 'unsafe and

5    unusable, resulting in direct physical loss to the premises and property'"). Nor has Fink pointed to

6    any other outside, intervening physical force responsible for the loss of use of his property. *Cf.*

7    *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251

8    (4th Cir. 2013) (finding direct physical loss where defendant's home was "rendered uninhabitable

9    by the toxic gases released by the Chinese Drywall"); *Essex Ins. Co. v. BloomSouth Flooring*

10   *Corp.*, 562 F.3d 399, 405 (1st Cir. 2009) (finding a colorable claim of physical injury to property

11   from an "unwanted odor" that "permeated the building"); *Motorists Mut. Ins. Co. v. Hardinger*,

12   131 F. App'x 823, 825-26 (3d Cir. 2005) (considering there to be a genuine issue of fact as to

13   whether the bacteria contamination was a "direct physical loss"). Therefore, like Mudpie, he is

14   not eligible for business income coverage.[5]

15            Next, as in *Mudpie*, the Court concludes that Fink's policy does not provide for civil

16   authority coverage. The Fink and Mudpie policies both provide that when a Covered Cause of

17   Loss damages a property other than the described premises, then civil authority coverage is

18   available for certain losses incurred "caused by action of civil authority that prohibits access to the

19   described premises due to direct physical loss or damage to property within one mile of the

20   described premises." Compl. ¶ 41; *see also Mudpie*, 2020 WL 5525171, at *6.[6] The Court in

21   *Mudpie* explained that this policy language required the plaintiff to "establish the 'requisite causal

22   link between damage to adjacent property and denial of access' to its store." 2020 WL 5525171,

23

24   [5] Fink's remaining argument is that because the policy "defines 'property damage' in an unrelated
     section to mean '[l]oss of use of tangible property that is not physically injured,'" the policy is
25   therefore ambiguous and should be construed in his favor. *See* ECF No. 30 at 18. As explained,
     the Court does not interpret "direct physical loss of" to require "property damage," so the potential
26   ambiguity of this term does not change the above analysis. *See also Mudpie*, 2020 WL 5525171,
     at *6 n.8.

27   [6] Mudpie's policy breaks these concepts into two clauses and provides for coverage when the
     direct physical loss of or damage to properties is within 100 miles of the described premises, but
28   the policy is the same in relevant part. *See Mudpie*, 2020 WL 5525171, at *6.

at *7 (quoting *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995)).  Here, as there, Fink alleges that the government closure orders were "intended to mitigate the COVID-19 pandemic," Compl. ¶ 96, and thus were "preventative."  In short, "the complaint does not establish the requisite causal link between prior property damage and the government's closure order."  *Mudpie*, 2020 WL 5525171, at *7.

Because the Court finds that Fink's policy does not provide coverage for the reasons set forth above, the Court declines to consider Defendants' remaining arguments.  Each of Fink's claims requires a finding that he is entitled to some form of coverage.  *See id.*  Because the Court has determined that he is not so entitled, Defendants' motion to dismiss is granted.

### CONCLUSION

Defendants' motion to dismiss the complaint is granted without prejudice.  Fink may file an amended complaint solely to correct the deficiencies identified in this order. An amended complaint is due 21 days from the date of this order. If no amended complaint is filed, the Court will dismiss the case with prejudice.

The case management conference scheduled for January 26, 2021 is continued to March 30, 2021 at 2:00 p.m.  An updated case management statement is due March 23, 2021.

**IT IS SO ORDERED.**

Dated:  January 25, 2021



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

# Exhibit F

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 20-9541-GW-KSx | Date | February 1, 2021 |
|---|---|---|---|
| Title | *Gym Management Services, Inc. v. Vantapro Specialty Insurance Company* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Charles A. Mayr | Lawrence Hecimovich |

**PROCEEDINGS:**  **TELEPHONIC HEARING ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' FIRST AMENDED COMPLAINT [17]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court GRANTS the Motion. Defendant will prepare and file a proposed judgment forthwith.

|  | : | 09 |
|---|---|---|
| Initials of Preparer | JG | |

***Gym Management Services, Inc. v. Vantapro Specialty Insurance Co.***; Case No. 2:20-cv-09541-GW
Tentative Ruling on Motion for Judgment on the Pleadings

## I.        Background[1]

This case is one of many that have been litigated across the country between insureds and their insurers over whether a property insurance policy covers losses due to government shutdown orders imposed to combat the ongoing COVID-19 pandemic.  For the following reasons, the Court **GRANTS** the defendant's motion for judgment on the pleadings.

### A.   Factual background

The plaintiffs are composed of various local Gold's Gym franchises located in the District and the company responsible for operating all of them, Gym Management Services, Inc. (collectively, "GMS").[2]

Several months before the COVID-19 pandemic first hit, GMS purchased a property insurance policy (the "Policy"[3]) from defendant Vantapro Specialty Insurance Company.  Compl. ¶ 40.  The Policy spanned one year, from October 17, 2019 through October 17, 2020.  It contained several coverage provisions that purported to cover losses attributable to "direct physical loss of or physical damage to" the covered property.  ECF No. 1 at Page ID #97.

GMS argues that its loss of business income caused by the various shutdown orders (which included directives specifically directing gyms to temporarily close) is covered by the Policy.  On March 18, 2020, GMS submitted a claim to Vantapro for reimbursement under the Policy.  Compl. ¶ 82.  After requesting some additional information from GMS, Vantapro denied the reimbursement request.  It found that none of the GMS plaintiffs had suffered a physical loss of or damage to its property.  *Id.* ¶ 84.

---

[1] The following abbreviations are used for the filings: (1) Notice of Removal ("NoR"), ECF No. 1; (2) Plaintiff's First Amended Complaint ("Compl."), ECF No. 1-2; (3) Defendant's Motion for Judgment on the Pleadings ("Mot."), ECF No. 17; (4) Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings ("Opp."), ECF No. 19; (5) Defendant's Reply in Support of its Motion for Judgment on the Pleadings ("Reply"), ECF No. 20.

[2] The GMS plaintiffs are: Gym Management Services, Inc.; Musclehead, Inc.; Musclebound, Inc.; Los Angeles Corporate Fitness, Inc.; Thousand Oaks Corporate Fitness, Inc.; Simi Valley Corporate Fitness, Inc.; Culver City Corporate Fitness, Inc.; Fullerton Corporate Fitness, Inc.; West Covina Corporate Fitness, Inc.; Valencia Corporate Fitness, Inc.; Santa Anita Corporate Fitness, Inc.; Montclair Corporate Fitness, Inc.; Santa Barbara Corporate Fitness, Inc.; Oxnard Corporate Fitness, Inc.; Anaheim Corporate Fitness, Inc.; Carson Corporate Fitness, Inc.; and Glendale Corporate Fitness, Inc.

[3] *See supra* note 1; ECF No. 22-1.

### B. Procedural history

GMS disputes Vanapatro's denial of its reimbursement claim and filed this lawsuit against Vantapro, asserting two claims: (1) breach of the implied duty of good faith and fair dealing; and (2) breach of contract. Vantapro removed the case to federal court based on diversity jurisdiction. NoR ¶¶ 3-4. Before the Court is Vantapro's motion for judgment on the pleadings.

## II. Legal Standard

Rule 12(c) allows for any party to move for judgment on the pleadings after the pleadings are closed but within such time as not to delay the trial. Besides being available to plaintiffs, the other major difference between a Rule 12(c) motion and Rule 12(b)(6) motion is the time of filing. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The standard applied on a Rule 12(c) motion is essentially the same as Rule 12(b)(6) motions, meaning a judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). A defendant is not entitled to judgment on the pleadings if the complaint raises issues of fact, which if proved would support recovery. Similarly, if a defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings. *General Conference Corp. Of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

## III. Discussion

The interpretation of the Policy is governed by California law. *See generally Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 718-21 (1993) (principal location of insured risk is most important consideration in determining which state's law applies to insurance policy); Restatement (Second) of Conflict of Laws § 193 (rights created by policy are determined by the local law of the state which the parties understood was to be the principal location of the insured risk).

"When determining whether a particular policy provides a potential for coverage," a court "[is] guided by the principle that interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). "[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates." *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982). The purpose is

"to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy." *Id.* at 808. "Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, exclusionary clauses are interpreted narrowly against the insurer." *Id.*

C. The terms of the insurance policy

The Policy is an all-risk property insurance policy, meaning that it covers all losses of the type described unless the loss is specifically excluded.[4] In the insuring agreement of the Policy – the section that specifies what losses are covered – Vantapro promised to "pay for direct *physical loss of or damage to* Covered Property . . . caused by or resulting from any Covered Cause of Loss." ECF No. 1 at Page ID #97 (emphasis added).

GMS argues that it is entitled to coverage under two coverage provisions in the Policy: (1) Business Income; and (2) Civil Authority.

The Business Income coverage provides that Vantapro:

> will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by *direct physical loss of or physical damage to* property at premises . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.

ECF No. 1 at Page ID #113 (emphasis added). The Civil Authority coverage provides that:

> When a *Covered Cause of Loss* causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at #114 (emphasis added).

D. Whether GMS has suffered from any "direct physical loss of or physical damage to" its property

The coverage provisions GMS argues apply to its situation require that GMS's property suffer from some "direct physical loss" or "physical damage." The importance of this requirement

---

[4] By contrast, a named-perils policy covers only losses attributable to expressly enumerated causes.

is highlighted by the fact that it is expressly set forth in the Policy's insuring agreement.  *See Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 627 (9th Cir. 1996) ("In interpreting an insurance contract, this court must first look to the insuring agreement and determine whether coverage exists.").

Several federal courts (including this Court) have found that under California law, COVID-related restrictions on commercial activity and individuals' activities did not constitute "direct physical loss" or "physical damage" to property in the insurance context involving nearly identically-worded provisions.  *See, e.g.*, *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-cv-04423, 2020 WL 5938689, at *1 (C.D. Cal. Oct. 2, 2020) (finding that plaintiff had not suffered any "direct physical loss of or damage to" property); *10E, LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-cv-04418, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) (same); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, No. 20-cv-06954, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020) (same); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 20-cv-03213, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) (same).

GMS has not offered a persuasive argument for why all those courts decided the issue wrongly.  It argues that Vantapro has "cherry-pick[ed]" COVID-19 insurance cases in support of its argument.  It is true that courts across the country, applying different bodies of state law, have not all arrived at the same result.  Given the volume of such litigation, it is not a surprise that some courts will have decided in favor of the insureds.  However, it is telling that the only cases GMS has identified in support of its position were out-of-state decisions applying other states' laws.  *See* Opp. at 10-11 (citing decisions applying Virginia, Washington, Pennsylvania, and North Carolina law); s*ee, e.g.*, *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-00265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020) (applying Virginia law).

GMS relies strongly on *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 17-cv-04908, 2018 WL 3829767 (C.D. Cal. July 11, 2018).  *See* Opp. at 7-8.  However, that very same district court judge also presided over the *Mark's Engine Co. No. 28 Rest.*, an action much more similar to this one.  The judge considered the exact same argument that GMS raises here and did not find it persuasive.  *See Mark's Engine Co. No. 28 Rest.*, 2020 WL 5938689, at *4 (observing that "to the extent Plaintiff relies on this Court's order in *Total Intermodal* for the proposition that 'direct physical loss of' encompasses deprivation of property without physical change in the condition of the property, the Court notes that such an interpretation of an insurance

4

policy would be without any manageable bounds").

In its motion, Vantapro also argues that "Plaintiffs cannot establish entitlement to Civil Authority coverage as a matter of law because Plaintiffs have not alleged and cannot allege facts that could show that the governmental orders were issued in response to 'direct physical loss of or damage to' property within one mile of Plaintiffs' facilities. The governmental orders were issued 'as a result of the threat of COVID-19,' not as a result of 'direct physical loss or damage' causing 'damage to property.'" *See* Mot. at 2-3. Nowhere in the Opposition filing do the Plaintiffs directly respond to that argument.[5]

Because the Court finds that GMS has not suffered any "direct physical loss of or physical damage to" its property, the Court also finds that GMS is not entitled to any reimbursement under the Policy. Because both of GMS's claims are based on Vantapro's allegedly wrongful denial of coverage under the Policy, the Court dismisses both claims.

## IV. Conclusion

Based on the foregoing discussion, the Court **GRANTS** the motion.

---

[5] Perhaps because the Civil Authority issue initially incorporates the "direct physical loss of or damage to property" element, Plaintiffs believed that their addressing the latter element was sufficient to deal with the former.

# Exhibit G

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| KARMEL DAVIS AND ASSOCIATES, ATTORNEYS-AT-LAW, LLC, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-02181-WMR |
| Plaintiff, | |
| v. | |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC. and HARTFORD CASUALTY INSURANCE COMPANY, | |
| Defendants. | |

## ORDER

This matter is before the Court on the Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 53] and the Motion to Dismiss the Amended Nationwide Class Action Claims [Doc. 54] filed by Defendant Hartford Casualty Insurance Company ("HCIC"). Having considered the contents of the First Amended Complaint, HCIC's opening and reply brief in support of the Motions, Plaintiff's opposition to the Motions, and the arguments of counsel at the November 30 hearing, the Court hereby **GRANTS** HCIC's Motions [Doc. 53, 54]. Accordingly, Plaintiff's First Amended Complaint is dismissed with prejudice, and the Class Action Claims are dismissed without prejudice.

1

## I.     BACKGROUND

### A. The Parties and the Insurance Policy

Plaintiff Karmel Davis and Associates, Attorneys-At-Law, LLC ("Plaintiff or "Karmel"), is a Georgia-based law firm that focuses primarily on bankruptcy litigation. [Doc. 50, ¶¶ 1-2]. Defendant HCIC is an Indiana insurance company with its principal place of business in Hartford, Connecticut. [Doc. 50, ¶ 9]. This action involves an insurance policy (the "Policy") that Plaintiff has maintained with HCIC since 2010. [Doc. 50, ¶ 14].

The Policy is a Spectrum Business Owner's Policy, a kind of "all-risk" policy that contains a Special Property Coverage Form. [Doc. 50, ¶¶ 14-16]. The Covered Property is 3379 Hwy 5, STE A-AA, Douglasville, GA 30135, the location of the Karmel firm. [Doc. 50, ¶ 14]. In the Special Coverage Property Form, Defendant agreed to pay "for direct physical loss of or physical damage to Covered Property…caused by or resulting from a Covered Cause of Loss." [Doc. 1-1 (Exhibit A- Special Property Coverage Form) at 26]. Specifically, a "Covered Cause of Loss" is defined as any "RISKS OF DIRECT PHYSICAL LOSS," unless already listed as one of the exclusions. [Doc. 1-1 at 27].

There are several relevant coverage provisions in the Policy at issue in this case: coverage for Business Income, Extended Business Income, Extra Expense,

Business Income from Dependent Properties, and Civil Authority. [Doc. 50, ¶¶ 20-27].

1. According to the **Business Income** coverage provision, HCIC agrees to "pay for the actual loss of Business Income" if business operations are necessarily suspended because of "direct physical loss of or physical damage to the property." [Doc. 1-1 at 35].

2. The **Extended Business Income** coverage provision provides that HCIC will pay for certain additional amounts of lost business income "caused by direct physical loss or physical damage" at Plaintiff's office, the covered property. [Doc. 1-1 at 36].

3. The **Extra Expense** coverage provision provides that HCIC will pay for "reasonable and necessary Extra Expense" incurred by Plaintiff during the "period of restoration" of Plaintiff's law office in the event of "direct physical loss or physical damage to" the law office. [Doc. 1-1 at 35].

4. The **Business Income from Dependent Properties** coverage provision provides that HCIC will pay for "the actual loss of Business Income [that Plaintiff] sustain[s] due to direct physical loss or physical damage at the premises of a dependent property." [Doc. 1-1 at 36]. The Policy defines a "Dependent Property" as a property owned, leased, or operated by others that Plaintiff depends on to (a) deliver materials to it or others for its

3

account, (b) accept its products or services, (c) manufacture its products, or (d) attract customers to its business premises. [Doc. 1-1 at 37].

5. The **Civil Authority** coverage provision provides that HCIC will pay for "the actual loss of Business Income" sustained by Plaintiff when access to Plaintiff's law office "is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of" the office. [Doc. 1-1 at 36].

## B. COVID-19 and the Shelter Order

On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a "Public Health Emergency of International Concern." [Doc. 50, ¶ 29]. The WHO later declared it a global health pandemic. [*Id.*]. On March 13, 2020, President Trump declared a state of national emergency, and several state governors followed, including Governor Brian Kemp. [Doc. 50, ¶¶ 29, 35]. His Executive Order was issued on March 14, 2020, declaring a public Health State of Emergency in Georgia. [Doc. 50, ¶ 35]. Then, on April 2, 2020, he issued a statewide Shelter in Place Executive Order. [Doc. 39-2 (the "Shelter Order")].

The Shelter Order was issued to help limit the spread of the virus throughout communities, "requiring the implementation of certain restrictions" to do so. [Doc. 39-2 at 2]. One of those measures required residents to shelter in place within their homes or places of residence. [Doc. 39-2 at 3]. There were, however, four exceptions

4

to the requirement: for conducting essential services, performing necessary travel, engaging in minimum basic operations for a business, or for being actively engaged in work for critical infrastructure. [Doc. 39-2 at 3-4]. Per the Shelter Order, the term "critical infrastructure" includes "entities that provide legal services." [Doc. 39-2 at 6]. All businesses engaged in critical infrastructure were permitted to continue in-person operations, but were required to "implement measures which mitigate the exposure and spread of COVID-19 among its workforce." [Doc. 39-2 at 5].

Because of COVID-19 and the Shelter Order, Plaintiff claims it was no longer able to meet with clients in person, thwarting its business and ultimate business purpose. [Doc. 50, ¶ 41]. For example, Plaintiff was still required to obtain original signatures for certain bankruptcy documents, but due to the threat of contracting the virus, Plaintiff did not bring clients into the office and instead paid postage to mail bankruptcy documents to and from its clients. [Doc. 50, ¶ 44]. And, because the threat of COVID-19 is ongoing and has not yet abated, Plaintiff alleges that its business continues to suffer. [Doc. 50, ¶ 45].

### C. The Lawsuit

Because of the losses allegedly suffered, Plaintiff submitted a claim to Defendant HCIC for coverage under the Policy. Yet, the claim was denied, primarily because HCIC found that there was no "physical loss or damage caused by or resulting from a Covered Cause of Loss." [Doc. 50, ¶ 52]. In other words, "since the

coronavirus did not cause property damage at [Plaintiff's] place of business or in the immediate area, this loss [was] not covered." [*Id.*]. Moreover, Defendant stated that there was no Civil Authority coverage because no civil authority issued an order prohibiting Plaintiff's business from operating or that contributed to a direct physical loss. [*Id.*].

Plaintiff subsequently filed its Complaint on May 21, 2020. [Doc. 1]. The Complaint was amended and refiled on September 18, 2020 (the "First Amended Complaint"). [Doc. 50]. Plaintiff seeks relief for six claims and brings the action individually and on behalf of five putative nationwide classes. [Doc. 50, ¶ 61].

In that Complaint, Plaintiff claims that "[t]he presence of COVID-19 and the Shelter Order constitute a Covered Cause of Loss," as they are "RISKS OF DIRECT PHYSICAL LOSS." [Doc. 50, ¶ 46]. Specifically, Plaintiff alleges that COVID-19, the Shelter Order, "and the actual damage in the form of the likely physical presence of COVID-19 on or within the property" are direct physical losses that caused the suspension of Plaintiff's legal business. [Doc. 50, ¶ 47]. This physical loss, Plaintiff argues, caused an actual loss of Business Income. [Doc. 50, ¶ 49]. It is also argued in the First Amended Complaint that the Shelter Order implicates the Civil Authority coverage provision because access to the Plaintiff's premises was prohibited by the Shelter Order. [Doc. 50, ¶ 48].

6

Defendant HCIC filed a Motion to Dismiss Plaintiff's First Amended Complaint and a Motion to Dismiss the Claims on behalf of the Nationwide Class Members. [Docs. 53, 54]. These Motions are presently before the Court.

## II.   LEGAL STANDARD

A complaint that "fail[s] to state a claim upon which relief can be granted" is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Yet, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

For purposes of a motion to dismiss, the Court may consider "documents incorporated into the [C]omplaint by reference" and "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007). In addition, the Court may consider materials that are cited and referred to in the Complaint, provided the materials are central to Plaintiff's claims and the contents of those documents are not in dispute. *See Fin. Sec. Assur., Inc. v. Stephens,*

*Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). Thus, in deciding HCIC's Motions, the Court will consider the Policy, the Shelter Order, and the Bankruptcy Court orders that were attached to or referenced in the First Amended Complaint.

## III.   DISCUSSION

In Georgia, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Hays v. Ga. Farm Bureau Mut. Ins. Co*., 314 Ga. App. 110, 111 (2012). "Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." *Reed v. Auto-Owners Ins. Co*., 284 Ga. 286, 287 (2008). In this case, the plain and unambiguous terms of the Policy preclude Plaintiff's claims for coverage, and the First Amended Complaint must therefore be dismissed.

### A. Business Income

In Claims I through III, Plaintiff seeks to recover business income and extra expenses that it incurred under the Business Income, Extra Expense, and Extended Business Income coverage provisions of the Policy. [Doc. 50, ¶¶ 76-110]. Similarly, in part of Claim VI, Plaintiff seeks a declaration that its business-income losses and extra expense due to COVID-19 and the Shelter Order are covered losses under these provisions of the Policy. [Doc. 50, ¶¶ 132–142]. To recover, Plaintiff must show that

the losses were due to a suspension of operations at its law office caused by direct physical loss or physical damage to that space. [Doc. 50, ¶¶ 20–22].

Plaintiff argues that the Shelter Order and the "likely presence of COVID-19 on or within the property" were the direct physical losses that caused it to suspend its business operations. [Doc. 50, ¶ 47]. Yet the Policy is clear that a direct physical loss must cause the suspension of operations, and according to Georgia law, these are not direct physical losses. A "direct physical loss or damage" to property occurs only when there is "an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *AFLAC, Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 308 (2003). In other words, the change to property must be a "physical change." *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 1:20-CV-2939-TWT, 2020 WL 5938755, at *4 (N.D. Ga. Oct. 6, 2020).

Here, the "likely" presence of COVID-19 cannot be regarded as a physical change, as it does not and has not physically altered the insured property. Although the virus is transmitted through the air and may adhere to surfaces briefly, there is no indication that it causes any sort of physical change to the property it touches. *See, e.g., Sandy Point Dental, PC v. Cincinnati Ins. Co*., No. 20 CV 2160, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020) ("The coronavirus does not physically alter

9

the appearance, shape, color, structure, or other material dimension of the property"). The mere fact that it may rest unseen on surfaces before it can be cleaned up with a disinfectant is not the kind of direct physical change contemplated by Georgia law. *See Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) (noting that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'").

Yet, even if it did, Plaintiff has not indicated that COVID-19 was ever found on the premises. Instead, Plaintiff assumes that the virus was "likely" physically present, without providing any proof that employees or other people on the property were infected at the time. [Doc. 50, ¶ 47]. Thus, without more, these are mere blanket allegations and are too generalized to support the conclusion that COVID-19 caused physical damage to Plaintiff's property. *See, e.g., Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, No: 20-cv-03750-WHO, 2020 WL 6562332, at *4 (N.D. Cal. Nov. 9, 2020) ("There are no facts plausibly alleging an actual [COVID-19] exposure at one or more Sand People stores, much less that an actual physical exposure caused them to close a particular store or set of stores.").

Plaintiff also attempts to argue that not being able to access its law office because of COVID-19 is a direct physical loss of or physical damage to property; however, this argument is also unsuccessful. [Doc. 50, ¶ 47]. "Under Georgia law, losses from inability to use property do not amount to 'direct physical loss of or

10

damage to' the property within the ordinary and popular meaning of the phrase." *K D UNLIMITED INC. v. OWNERS INSURANCE COMPANY*, No. 1:20-CV-2163-TWT, 2021 WL 81660, at *4 (N.D. Ga. Jan. 5, 2021). "[T]he words 'loss of' … and the words 'damage to' make it clear that coverage is predicated upon a change in the insured property resulting from an external event rendering the insured property, initially in a satisfactory condition, unsatisfactory." *AFLAC, Inc.*, 260 Ga. App. at 308; *see also Ne. Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-cv-00245-WCO, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014). And, "[a]lthough the Court construes insurance contracts in favor of the insured, the Court cannot rewrite the contract" to provide coverage for loss of use when there has been no physical change to the property. *K D UNLIMITED INC.*, at *4. Thus, since no physical change to Plaintiff's law firm occurred here, Plaintiff's mere loss of use theory cannot be maintained.[1]

---

[1] Several other courts have also considered and rejected Plaintiff's position, particularly in the COVID-19 context. *See, e.g.*, *Uncork and Create LLC v. Cincinnati Insurance Co.*, No. 2:20-cv-0041, 2020 WL 6436948 (S.D. W. Va. Nov. 2, 2020); *Raymond H Nahmad DDS PA v. Hartford Casualty Insurance Co.*, No. 1:20-cv-22833, 2020 WL 6392841, (S.D. Fla. Nov. 1, 2020); *Seifert v. IMT Insurance Co.*, No. 20-1102, 2020 WL 6120002, (D. Minn. Oct. 16, 2020); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's…*, No. 8:20-cv-1605, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020); *Sandy Point Dental, PC v. Cincinnati Insurance Co.*, No. 20-CV-2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020); *Pappy's Barber Shops, Inc. v Farmers Group, Inc.*, No. 20-cv-907, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020); *10E, LLC v. Travelers Indemnity Co.*, No. 2:20-cv-04418, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020*); Malaube, LLC v. Greenwich Insurance Co.*, No.

Further, the Shelter Order itself did not cause an actual, physical change to Plaintiff's law office. In *Henry's Louisiana Grill*, Chief Judge Thrash assessed whether a COVID-19 Order issued by Governor Kemp caused an actual, physical change to a restaurant and concluded that it did not, particularly because "[e]very physical element of the [restaurant]…underwent no physical change as a result of the Order." 2020 WL 5938755, at *4-5. Similarly, Plaintiff's law office here was not physically altered because of the Shelter Order. Rather, the Order only limited Plaintiff in how it could use its law office for the duration of the Order. [Doc. 39-2 at 4–5]. These claims for coverage must therefore be dismissed.

## B. Business Income from Dependent Properties

Similarly, in Claim IV and part of Claim VI, Plaintiff seeks coverage under the Business Income from Dependent Properties coverage provision of the Policy for business income losses that it alleges it incurred due to changes in operations of the Bankruptcy Court. [Doc. 50, ¶¶ 111-21, 132-37, 141]. Recovery under these provisions also requires that the business income loss be "due to direct physical loss or physical damage" at a "Dependent Property." [Doc. 1-1 at 36]. But, because Plaintiff cannot establish these requirements according to the plain language of the Policy, Plaintiff cannot succeed on its claims.

---

20-22615, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-cv-461, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020).

First, although Plaintiff states that the Bankruptcy Court is a Dependent Property [Doc. 50, ¶ 49], it does not allege the specific facts establishing the Bankruptcy Court as a Dependent Property under the Policy. The Policy defines a Dependent Property as property owned, leased, or operated by others that Plaintiff depends on to (a) deliver materials to it or others for its account, (b) accept its products or services, (c) manufacture its products, or (d) attract customers to its business premises. [Doc. 1-1 at 37]. But, nowhere in the First Amended Complaint does Plaintiff address or demonstrate why the Bankruptcy Court qualifies as a Dependent Property.

Even if it did, Plaintiff has not alleged that it lost business income due to "direct physical loss or physical damage" at the Bankruptcy Court. Instead, the First Amended Complaint alleges that Plaintiff lost business income because the Bankruptcy Court "has issued numerous orders altering its court operations because of the state of emergency surrounding COVID-19 and the Shelter Order." [Doc. 50, ¶ 38]. Put differently, Plaintiff alleges that it lost business income because the Bankruptcy Court altered its court operations to limit face-to-face interactions to minimize the spread of COVID-19, not because the Bankruptcy Court experienced an actual, physical change. These allegations are thus insufficient to support a claim for coverage under this provision of the Policy.

### C. Civil Authority

Moreover, in Claim V and the rest of Claim VI, Plaintiff seeks coverage under the Civil Authority provision in the Policy. [Doc. 50, ¶¶ 27, 122-131, 142]. The claimed coverage is for an "actual loss of Business Income" sustained by Plaintiff during a 30-day period "when access to [its law office] is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [its law office]." [Doc. 1-1 at 36]. Yet, by the Policy's and the Shelter Orders' own terms, the civil authority coverage does not apply.

First, the Shelter Order that Plaintiff says triggers coverage under the Civil Authority provision did not specifically "prohibit" Plaintiff from continuing in-person operations at its law office. Rather, the Order provided that businesses engaged in "critical infrastructure," including "entities that provide legal services," were exempt from the Order's prohibition. [Doc. 39-2 at 3-4, 6]. Thus, Plaintiff—a law firm providing legal services—was permitted to continue in-person operations, the only requirement being that Plaintiff had to "implement measures which mitigate the exposure and spread of COVID-19 among its workforce." [Doc. 39-2 at 5]. The Order therefore did not prohibit access to Plaintiff's law office, thereby precluding Plaintiff from recovering under this Policy provision.

Further, even if the Order had prohibited Plaintiff from accessing its office, the Order was not issued as a "direct result" of physical loss. Courts routinely reject these claims where, as here, orders of civil authority are aimed at fear of future harm, not existing property loss or damage. This Court concluded in *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, "that an order . . . that is designed to prevent, protect against, or avoid future damage is not a 'direct result' of already existing property loss or damage." No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7. And, in *United Air Lines v. Ins. Co. of the State of Pa.*, the court likewise held that any prohibition of access to premises at Ronald Reagan National Airport after the September 11 attacks was not covered by civil-authority insurance because the government's "decision to halt operations at the Airport indefinitely was based on fears of future attacks," not because of property damage at the nearby Pentagon. 439 F.3d 128, 134 (2nd Cir. 2006). Thus, since no direct property loss or damage prompted the issuance of the Shelter Order in this case, these claims must also be dismissed.

**D. Class Claims**

Because the claims of the named Plaintiff fail, the putative class claims must also fail, and the First Amended Complaint is therefore dismissed in its entirety.

15

## IV.    CONCLUSION

For the reasons above, the Motions to Dismiss are hereby **GRANTED**. [Docs. 53, 54]. Accordingly, Plaintiff's First Amended Complaint is dismissed with prejudice [Doc. 50], and the Class Claims are dismissed without prejudice.

**IT IS SO ORDERED** this 26th day of January, 2021.

WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE

# Exhibit H

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.** CV 20-7616-MWF (JPRx)          **Date:** February 1, 2021
Title:      Thomas Phan v. Nationwide General Insurance Company et al

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |

|  |  |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS AND DISMISSING ACTION [11]

Before the Court is Defendants Nationwide General Insurance Company ("Nationwide") and AMCO Insurance Company's ("AMCO") Motion to Dismiss (the "Motion"), filed on August 28, 2020. (Docket No. 11). Plaintiff Thomas Phan filed an opposition on September 28, 2020. (Docket No. 20). Defendants filed a reply on October 5, 2020. (Docket No. 22).

The Motion was noticed to be heard on October 13, 2020. The Court read and considered the papers on the Motion and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. The hearing was therefore VACATED and removed from the Court's calendar. Vacating the hearing was also consistent with General Order 20-09, arising from the COVID-19 pandemic.

On January 20, 2021, the Court on its own motion set a telephonic hearing for January 25, 2021, pursuant to General Order 20-09 arising from the COVID-19 pandemic.

For the reasons set forth below, the Motion is **GRANTED**. Plaintiff fails to state a claim upon which relief can be granted because, under Plaintiff's insurance policy, any economic losses resulting from the coronavirus pandemic are excluded from coverage.

CIVIL MINUTES—GENERAL                                        1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-7616-MWF (JPRx)              Date:  February 1, 2021
Title:      Thomas Phan v. Nationwide General Insurance Company et al

## I.    **BACKGROUND**

Plaintiff commenced this action on July 15, 2020, with the filing of the Complaint in Los Angeles County Superior Court.  (*See generally* Complaint (Docket No. 1-1)).  Defendants removed this action on August 21, 2020.  (*See generally* Notice of Removal (Docket No. 1)).

The Complaint contains the following allegations:

Plaintiff owns and operates a nail salon called "MB Nails."  (Complaint ¶ 1). Although COVID-19 was present in California by late January 2020, all businesses, including MB Nails, were allowed to remain open throughout February and the first half of March.  (*Id.* ¶ 11).  On January 30, 2020, the World Health Organization (the "WHO") declared a public health emergency of international concern.  *Id.*  Six weeks later, on March 11, 2020, the WHO made the assessment that COVID-19 could be characterized as a pandemic.  *Id.*  MB Nails continued to remain open during this time. *Id.*

Mayor Garcetti's March 15, 2020 and July 14, 2020 Public Orders (the "Public Orders") caused MB Nails to close in its entirety, resulting in a loss of functional use of its premises and an interruption of its business.  (*Id.* ¶¶ 12, 19).  As of the date of the Public Orders, MB Nails was not aware of the presence of COVID-19 on its premises, and no employees or customer had reported a COVID-19 infection.  (*Id.* at ¶ 12). Plaintiff's nail salon closed when the March 15, 2020 Public Order took effect, opened after the Public Order was lifted, and closed again once the July 14, 2020 Public Order took effect.  (*Id.* ¶¶ 11, 12, 13, 19).  The Public Orders were the predominant cause of the suspension of MB Nails' operation.  (*Id.*).

Plaintiff submitted two claims for loss of business income to Defendants.  (*Id.* ¶ 13).  Plaintiff assumed the loss would be covered by the insurance policy with AMCO (the "Policy") but Defendants rejected both claims.  (*Id.* ¶ 13, 19; Ex. 1, Policy).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-7616-MWF (JPRx)            Date:  February 1, 2021
Title:       Thomas Phan v. Nationwide General Insurance Company et al

Plaintiff contends that Defendant rejected the insurance claims in bad faith without investigation.  (*Id.*).

Plaintiff now brings claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  (*See generally id.*).  Plaintiff seeks general, consequential, and punitive damages, prejudgment interest, attorneys' fees, and costs. (*Id.*, Prayer for Relief, ¶¶ 1-8).

## II.    REQUEST FOR JUDICIAL NOTICE

In support of the Motion, Defendants request that the Court take judicial notice of orders and hearing transcripts in twenty-two cases outside this District.  (*See generally* Requests for Judicial Notice ("RJNs") (Docket Nos. 12, 28)).  Plaintiff does not oppose the RJNs.

The Court may take judicial notice of court filings and other matters of public record.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  The Court determines that the exhibits are matters of public record. Accordingly, the unopposed RJNs are **GRANTED**.

## III.   LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  While factual allegations in the complaint "are taken as true" at the Rule 12 stage, "conclusory allegations of law and unwarranted inferences are insufficient."  *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 20-7616-MWF (JPRx)          Date:  February 1, 2021
Title:      Thomas Phan v. Nationwide General Insurance Company et al

       In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court generally limits its review to the contents of the complaint and assumes all allegations of material fact are true.  *Allarcom Pay Television v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995).  The court need not accept as true, however, allegations contradicted by an exhibit to the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.   <u>DISCUSSION</u>

       Defendants argue that Plaintiff has failed to allege a basis for coverage under the Policy because the Policy has a clear and unambiguous Virus Exclusion that precludes coverage for losses — directly or indirectly — resulting from a virus.  (Motion at 10).

       To prevail on a breach of contract claim, Plaintiff must establish "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."  *Tribeca Companies, LLC v. First American Title Ins. Co.*, 239 Cal. App. 4th 1088, 1109, 192 Cal. Rptr. 3d 354 (2015) (citing *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 921, 163 Cal. Rptr. 3d 539 (2013)).  "[A]bsent an actual withholding of benefits due, there is no breach of contract."  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 n.10, 271 Cal. Rptr. 246 (1990) (quotation omitted).

       Under California law, the terms of an insurance policy must be given their "ordinary and popular sense," and if the policy language is "clear and explicit," it governs.  *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115-17, 90 Cal. Rptr. 2d 647 (1999) (quotation marks omitted); Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.").

       Here, the Policy contains a clear and unequivocal Virus Exclusion clause, excluding coverage for "loss or damage caused directly or indirectly" from "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-7616-MWF (JPRx)          Date:  February 1, 2021
Title:      Thomas Phan v. Nationwide General Insurance Company et al

distress, illness or disease."  (Policy at 21, 23).  Specifically, the "Exclusions" clause of
the Policy provides that Defendant:

> [W]ill not pay for loss or damage caused directly or indirectly by any of the
> following.  Such loss or damage is excluded regardless of any other cause
> or event that contributes concurrently or in any sequence of the loss.  These
> exclusions apply whether or not the loss events results in widespread
> damage or affects a substantial area.
>
> . . .
>
> (1) *Any virus, bacterium or other microorganism that induces or is
> capable of inducing physical distress, illness or disease* . . . .

(*Id.* at 21, 23) (emphasis added).

Plaintiff argues that the Virus Exclusion does not apply because COVID-19 was
never physically present on the premises of MB Nails.  (Opposition at 5).  At the
hearing, Plaintiff emphasized that this case is analogous to *Certain Underwriters at
Lloyd's London v. Creagh*, 2013 WL 3213345 (E.D. Penn. June 26, 2013), where the
owner of an apartment building discovered the two-week old dead body of a tenant
who had collapsed over a toilet and whose bodily fluids had seeped into the bathroom
floor.  *Id.* at *2.  The issue in *Creagh* was whether the damage to the apartment was
caused by bacteria and other microorganisms.  *Id.* at *3.  The court reasoned that for
the Microorganism Exclusion to apply, the insurer "must produce evidence that
bacteria or other microorganisms were present in [the deceased's] bodily fluids, and
that they caused the damages at issue."  *Id.*

In addition to not being binding authority, *Creagh* is easily distinguishable from
this action because the ***existence*** of a virus is not at issue here.  The *Creagh* court
required the insurer to produce evidence that bacteria was present in the deceased's
bodily fluids because the existence of any bacteria determined whether the

_____

CIVIL MINUTES—GENERAL                                        5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-7616-MWF (JPRx)                Date:  February 1, 2021
Title:     Thomas Phan v. Nationwide General Insurance Company et al

Microorganism Exclusion would apply.  *Id.*  There is simply no question that a virus exists here and caused MB Nails to close, albeit arguably indirectly.  *Creagh*'s narrow holding has no persuasive value in a case involving a global pandemic.

Any putative loss resulting from a virus — even indirectly — is not covered by the Policy.  (Policy at 23).  Because Plaintiff's loss arises from the coronavirus pandemic and resulting Public Orders, the Virus Exclusion applies on its face.  (Complaint ¶¶ 11-13, 18-19).

At least five other district courts in the Ninth Circuit have upheld functionally identical virus exclusion clauses in the context of coronavirus losses.  *See, e.g.*, *Healthnow Medical Center, Inc. v. State Farm General Ins. Co.*, No. 4:20-cv-04340 (N.D. Cal. Dec. 10, 2020) ("Plaintiff thus urges that the Virus Exclusion does not apply.  In so doing, Plaintiff urges the Court to reject the analysis adopted by courts throughout the Ninth Circuit, and indeed across the country."); *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, No. 20-CV-04466-VC, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020) ("[T]he ordinances sought to prevent COVID-19 from spreading, and thus the loss claimed by Founder was 'caused directly or indirectly by . . . the . . . presence, growth, proliferation, spread or any activity of . . . virus.'") (collecting cases); *Boxed Foods Co., LLC v. California Capital Ins. Co.*, No. 20-CV-04571-CRB, 2020 WL 6271021, at *3-7 (N.D. Cal. Oct. 26, 2020), *as amended* (Oct. 27, 2020) (virus exclusion barred coverage for business income losses); *Franklin EWC, Inc. v. Hartford Financial Services Group, Inc*., 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) ("Sentinel has met its burden of proving that the Virus Exclusion applies to Plaintiffs' allegations of coverage."); *Mortar and Pestle Corp. v. Atain Specialty Ins. Co.*, No. 20-cv-03461, at 10 (N.D. Cal. Dec. 21, 2020) ("[T]he Court finds the [Virus] Exclusion applies").

Numerous courts outside of the Ninth Circuit have also upheld functionally identical virus exclusion clauses in the context of coronavirus losses.  *See, e.g.*, *Diesel Barbershop, LLC, et al. v. State Farm Lloyds*, 5:20-cv-00461-DAE, Order granting Defendant's Motion to Dismiss at 15 (W.D. Tex., Aug. 13, 2020) (Docket No. 12-1)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-7616-MWF (JPRx)                Date:  February 1, 2021
Title:      Thomas Phan v. Nationwide General Insurance Company et al

("[T]he Court finds that the Virus Exclusion bars Plaintiffs' claims."); *Gavrilides Mgmt. Co. v. Michigan Ins.* Co., No. 20-258-CB, transcript of July 1, 2020 hearing, at 18-23 (Ingham Cty., MI Circuit Ct., Jul. 1, 2020) (Docket No. 12-2) (granting summary disposition without leave to amend against Plaintiff seeking recovery for COVID-19 damages, noting that "there is a virus exclusion that would also apply"); *Newchops Restaurants Comcast LLC d/b/a Chops v. Admiral Indem. Co.*, Case No. 2:20-cv-01869 (E.D. Penn. Dec. 18, 2020) ("[T]he virus exclusion bars coverage.").

Because the Virus Exclusion bars Plaintiff's breach of contract and bad faith claims, Plaintiff has failed to state a claim for which relief can be granted.  *Love*, 221 Cal. App. 3d at 1151 n.10 ("[A]bsent an actual withholding of benefits due, there is no breach of contract."); *id.* at 1153 ("a bad faith claim cannot be maintained unless policy benefits are due").  The Court therefore declines to address Defendants' other arguments for dismissal.

Accordingly, the Motion is **GRANTED**.

V.    **CONCLUSION**

The Motion is **GRANTED** *without leave to amend*.  Given the Policy's Virus Exclusion clause, future amendment to Plaintiff's Complaint would be futile, and the Court cannot imagine any plausible amendment that would avoid the preclusive effect of the exclusion as construed.  This issue will ultimately be decided by the Ninth Circuit or the California Supreme Court.  Accordingly, the action is **DISMISSED**.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this order, and its entry on the docket, as an entry of judgment.

IT IS SO ORDERED.

# Exhibit I

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PROTÉGÉ RESTAURANT PARTNERS LLC, on Behalf of Itself and All Others Similarly Situated, | Case No. 20-cv-03674-BLF |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | [Re: ECF 42] |
| SENTINEL INSURANCE COMPANY, LIMITED, d/b/a THE HARTFORD | |
| Defendant. | |

This case arises from a dispute over the application of a "business interruption" insurance policy to measures taken in response to recent public health orders that required businesses to operate at a limited capacity. Plaintiff Protégé Restaurant Partners, LLC ("Plaintiff" or "Protégé"), individually and on behalf of all other similarly situated entities (collectively, the "Class"), brings this class action against defendant Sentinel Insurance Co., Ltd. d/b/a The Hartford ("Defendant" or "Sentinel") for Defendant's refusal to pay COVID-19 related claims based on the insurance policy it sold to Plaintiff and the Class. Plaintiff asserts claims for a declaratory judgment and for breach of contract based on Business Income coverage (Counts I, II), Civil Authority coverage (Counts III, IV), Extra Expense coverage (Counts V, VI), Sue and Labor coverage (Counts VII, VIII), Virus Endorsement coverage (Counts IX, X), and Breach of Implied Covenant of Good Faith and Fair Dealing (Counts XI, XII). *See* First Am. Compl. ("FAC"), ECF 26. Defendant brings this Motion to Dismiss for failure to state a claim, lack of subject matter jurisdiction, and lack of

1  personal jurisdiction. *See* Mot. to Dismiss First Am. Compl. ("Mot."), ECF 42. The Court

2  determines that the motion is appropriate for disposition without oral argument and, thus, is

3  deemed submitted. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for February 28, 2021 is

4  VACATED. Having considered the parties' briefing, the Court GRANTS this Motion WITH

5  LEAVE TO AMEND.

6  **I.    BACKGROUND**

7  **A. Factual Allegations**

8  　　Plaintiff Protégé owns and operates a New American Cuisine restaurant in Palo Alto,

9  California. *See* FAC ¶ 3. Plaintiff purchased a "business interruption" insurance policy ("the

10 Policy") from Defendant "to protect itself against unexpected risks." *See id.* ¶ 50. The Policy was

11 in effect from January 2020 through January 2021. *See id.* The Policy covers interruption of

12 business caused by an order from a civil authority ("Civil Authority" coverage), business income

13 losses sustained due to the necessary suspension of operations ("Business Income" coverage), and

14 expenses incurred to minimize the suspension of business ("Extra Expense" coverage), subject to

15 limitations, including a "Virus Exclusion." *See id.* ¶ ¶ 5, 16. Under certain conditions, the Policy

16 provides that the policyholder can be reimbursed for expenses incurred while "[taking] all

17 reasonable steps to protect the Covered property from further damage" ("Sue and Labor"

18 coverage). *Id.* ¶ 17.

19 　　In March 2020, the World Health Organization declared COVID-19 a global health

20 pandemic, and the CDC issued guidance restricting gatherings of individuals in an attempt to stop

21 the spread of the virus through surface transmission and through the air. *See id.* ¶¶ 42, 44.

22 　　On March 17, 2020, Santa Clara County issued a county-wide stay-at-home order to

23 mitigate the spread of COVID-19, on the basis of a confirmed outbreak in the area. *See id.* ¶ 45.

24 On March 19, 2020, Governor Gavin Newsom issued an Executive Order and Public Health Order

25 that directed Californians to stay at home, and close businesses not deemed "essential." *See id.* ¶

United States District Court
Northern District of California

2

46. Collectively, these orders are referred to as the "Closure Orders." Although Plaintiff, whose restaurant was categorized as an "essential business," was only required to stop in-person dining and could continue to operate its kitchen to prepare take-out orders, Plaintiff chose to completely shut down its operations. *See id.* ¶ 49.

On or about March 30, 2020, Plaintiff made a claim under the Policy, seeking coverage caused by COVID-19 and the Closure Orders. *See id.* ¶ 18. In response, Defendant requested additional information from Plaintiff, and subsequently denied coverage. *See id.*

### B. Procedural History

Plaintiff commenced this action on June 2, 2020. *See* Complaint ("Compl."), ECF 1. Plaintiff filed an amended complaint on September 8, 2020. *See* First Am. Compl. ("FAC"), ECF 27. On September 22, 2020, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim. *See* Mot. to Dismiss for Failure to State a Claim, ECF 33. Defendant concurrently filed a Motion to Dismiss for Lack of Jurisdiction. *See* Mot. to Dismiss for Lack of Jurisdiction, ECF 35. Defendant filed a combined Motion to Dismiss in conformity with Local Rules on October 5, 2020. *See* Mot. to Dismiss ("Mot."), ECF 42. Plaintiff filed its Opposition on October 19, 2020. *See* Opp'n. to Mot. to Dismiss ("Opp'n."), ECF 47. Defendant filed its Reply on November 2, 2020. *See* Reply to Opp'n. ("Reply"), ECF 54.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6): Failure to State A Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

United States District Court
Northern District of California

nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). While a complaint typically need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B. Federal Rule of Civil Procedure 15(a): Leave to Amend**

Under Federal Rule of Civil Procedure 15(a), the Court should freely grant leave to amend "when justice so requires," keeping in mind Rule 15's underlying purpose "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). A court has discretion, however, to deny leave to amend where amendment is futile. *Leadsinger, Inc. v.* 3 *BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III. DISCUSSION[1]**

---

[1]Both Plaintiff and Defendant request judicial notice of several public documents, including recent

Citing to recent cases in this Circuit that have interpreted nearly identical provisions, Defendant argues that the Virus Exclusion and the plain language of the Policy do not trigger coverage under any of the alleged provisions. *See* Mot. 13. Accordingly, because all of Plaintiff's claims are premised on the Policy covering its losses, Defendant contends that all of the claims must fail. *See id*. Plaintiff replies in opposition that the Virus Exclusion does not apply, and that the Policy's plain language provides coverage for all of Plaintiff's claims. *See* Opp'n. 9-11.

In California, the interpretation of an insurance policy is a question of law for the court to decide. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "Insurance policies are contracts, and the ordinary rules of contract interpretation apply." *McMillin Homes Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 35 Cal. App. 5th 1042, 1050 (Cal. Ct. App. 2019). In interpreting an insurance policy, the Court first examines the contract language to determine its plain or ordinary meaning. *Waller*, 11 Cal. 4th at 18 (citation omitted). A policy is ambiguous if it is "capable of two or more constructions, both of which are reasonable." *Id.* Where a policy is ambiguous, it must be interpreted "to protect the objectively reasonable expectations of the insured." *Minkler v. Safeco Ins.*, 49 Cal. 4th 315, 321 (2010). Courts should not, however, "strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19. If the insured shows that a claim falls within the policy terms, the burden shifts to the insurer to demonstrate that an exclusion applies. *Id.* at 16.

### A. Business Income and Extra Expense Provisions

Plaintiff alleges in its First and Second Claims that it is entitled under the Policy's

---

district court rulings addressing similar insurance claims and policies, as well as transcripts of hearings. *See* Request for Notice re Mot., ECF 43; Request for Notice re Opp'n., ECF 55. Courts may take judicial notice of matters either that are "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Specifically, "[the Court] may take judicial notice of undisputed matters of public record, . . . including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Here, the documents for which Plaintiff and Defendant request judicial notice are matters of public record, which are on file in the state and federal courts. *See* Exhibits 1-3, ECF 43; Exhibits 4-8, ECF 55. And their factual contents are not disputed. *See generally* Mot.; Opp'n. Thus, the Court grants both Plaintiff's and Defendant's request.

United States District Court
Northern District of California

"Business Income" coverage to income lost through the suspension of Plaintiff's business operations due to the Closure Orders. *See* Compl. ¶ 63. Plaintiff further alleges in its Fifth and Sixth Claims that it is entitled under "Extra Expense" coverage to expenses Plaintiff incurred to break-down and clean its property. *See id.* ¶ 64. Defendant moves to dismiss these claims on the ground that the Virus Exclusion bars coverage for COVID-19 business income losses, and in the alternative that Plaintiff failed to allege any "direct physical loss of or physical damage to" its property. *See* Mot. 12.

The Court agrees with Defendant that Plaintiff has failed to allege physical loss of or damage to its property and accordingly does not need to address the scope of the Virus Exclusion here. The Policy provides in relevant part:

> o. Business Income
>
> (1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.
>
> . . .
>
> q. Extra Expense
>
> (1) We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

ECF 1-1 at 40. In short, the "Business Income" and "Extra Expense" provisions apply only when (1) there is "*direct physical loss of or physical damage to* property at the 'scheduled premises' . . . caused by or resulting from a Covered Cause of Loss" and (2) *but for the physical loss or damage*, suspension in operation or additional expense would not have occurred. *See id.* (emphasis added).

The Policy's "direct physical loss of or physical damage to" language is unambiguous. California courts have interpreted "direct physical loss" to require a "distinct, demonstrable, physical alteration of the property" or a "physical change in the condition of the property." *See MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 771, 779-80, 115 Cal.Rptr.3d 27 (2010) (internal quotations and citations omitted). Accordingly, "a detrimental economic impact," such as limited use of property, "unaccompanied by a distinct, demonstrable, physical alteration of the property," is insufficient to claim a "direct physical loss." *See MRI*, 187 Cal. App. 4th at 779, 115 Cal.Rptr.3d 27. Where a policy additionally requires "direct physical loss of or physical damage to property," there must either be a physical change in the condition or a permanent dispossession of the property. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) (finding that a more expansive interpretation of 'direct physical loss of property' to include dispossession of property would require a 'permanent dispossession.'").

Every California court that has addressed COVID-19 business interruption claims to date has concluded that government orders that prevent full use of a commercial property or that make the business less profitable do not themselves cause or constitute "direct physical loss of or physical damage to" the insured property. *See*, *e.g., 10E, LLC v. Travelers Indem. Co. of Connecticut*, 2020 WL 5359653, at *4-5 (C.D. Cal. Sept. 2, 2020) ("An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *4-5 (S.D. Cal. Sept. 11, 2020) ("*Pappy's I*") ("Most courts have rejected these claims, finding that the government orders did not constitute direct physical loss or damage to property."); *Mudpie, Inc*, 2020 WL 5525171, at *4 ("Moreover, while a 'direct physical loss of' property does not require damage or physical alteration to the property, the surrounding provisions within Travelers's insurance policy suggest that Mudpie's inability to

7

occupy its storefront does not fall within the Business Income and Extra Expense coverage of this policy."). A court in this district interpreting identical provisions found that "direct physical loss of property does not include the temporary loss of use due to the governmental Stay-at-Home orders," noting that plaintiff "did not allege that it lost access to the properties, but merely that it was not allowed to operate its business out of the properties." *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-04783-SK, 2021 WL 141180, at *4 (N.D. Cal. Jan. 13, 2021). In light of this abundance of caselaw, the Court finds as a matter of law that the Policy is unambiguous. *See Waller*, 11 Cal. 4th at 18.

Plaintiff does not adequately plead that it suffered a loss under the unambiguous "direct physical loss of or damage to" language of the Policy. *See generally,* FAC. Plaintiff's claim that the Closure Orders prohibited customers' access to its property is not sufficient to show permanent disposition. *See id.* ¶¶ 12, 13. Plaintiff was never disposed of its property, as it was the customers, and not Plaintiff, who were prohibited from access. *See id.* ¶ 13. Additionally, Plaintiff never claimed that the Closure Orders were permanent. *See generally, id.; see also Mudpie, Inc.*, 2020 WL 5525171, at *4 (finding that a more expansive interpretation of 'direct physical loss of property' to include dispossession of property would require a 'permanent dispossession.'"). Further, Plaintiff's claim that there was a high risk that COVID-19 particles were present on its property does not constitute physical damage. *See id.* ¶ 12. Even if Plaintiff had known of a specific instance of COVID-19 particles inside of its business, evidence of such would still not qualify as a "physical change" to the property. *See Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-00401, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020) ("no coverage because "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant."). Under these pleadings, there is no Policy coverage.

Plaintiff submitted two recent out-of-circuit decisions which held that "physical loss of"

property does not unambiguously require that dispossession be permanent. *See* ECF 64-1, 2.[2] Neither of these cases is persuasive to this Court as both rely on their respective state laws and non-binding district court decisions to find ambiguity. *See Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-CV-265, 2020 WL 7249624, at *8 (E.D. Va. Dec. 9, 2020) ("The Court finds that the phrase 'direct physical loss' has been subject to a spectrum of interpretations in Virginia"); *Henderson Rd. Rest. Sys., Inc. v. Zurich Am. INS. Co.*, No. 1:20 CV 1239, 2021 WL 168422, at *12 (N.D. Ohio Jan. 19, 2021) ("Zurich has not cited any Ohio law constraining this Court to its interpretation of the Policy. And because there is more than one interpretation, the Policy must be construed liberally in Plaintiffs' favor."). Courts in California and in this district have specifically interpreted "physical loss of," when used in the phrase "physical loss of or damage to," to unambiguously require permanent dispossession. *See Mudpie.*, 2020 WL 5525171, at *4.

Plaintiff also relies on *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385, at *6 (W.D. Mo. Aug. 12, 2020) to support the proposition that the presence of COVID-19 particles can constitute direct physical loss. *See* Opp'n. 27. In *Studio 417*, the court held that plaintiffs adequately alleged a direct physical loss when they stated that "COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable." *Id.* Plaintiff claims that it similarly alleges that it closed due to physical damage caused by COVID-19 to its property. *See* Opp'n. 27. However, Plaintiff does not actually claim any confirmed cases of COVID-19 were present on its property. *See* FAC ¶19. Rather, Plaintiff notes the growing number of cases in Santa Clara County and extrapolates that its property was likely infected, but not that it actually was. *See id; see also Mudpie*, 2020 WL 5525171, at *6 (distinguishing *Studio 417* because plaintiff did not

---

[2] Defendant has submitted dozens of recent decisions, which the Court does not address except to note that those cases are in accord with all of the authorities cited in Defendant's briefs.

allege "the presence of the COVID-19 virus in its store created a physical loss."); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00087-KS-MTP, 2020 WL 6503405, at *7 n. 12 (S.D. Miss. Nov. 4, 2020) (distinguishing *Studio 417* because plaintiff did not allege that the virus was present on the restaurant premises, but instead that it was forced to close its premises as a direct result of the governmental orders).

Even if Plaintiff could prove that the virus was present on and physically damaging its property, Plaintiff has not claimed that this physical damage is what caused it to suspend operations or incur extra expense, as is required under the plain language of the Policy. *See generally,* FAC. Under the facts pled by Plaintiff, there is no coverage. Plaintiff admits that it suspended operations due to the Closure Orders, noting that it shut down "when the Closure Orders and government officials announced that COVID-19 posed a risk of causing further physical property damage and loss." *See* FAC ¶¶ 49, 58. Plaintiff does not allege that it shut down its operations or incurred expenses due to any "physical damage," or the potential presence of COVID-19 on its property, as Plaintiff took these actions fully unaware of whether the virus had spread into its restaurant. *See generally,* FAC. Accordingly, Plaintiff's argument that it could uncover "relevant extrinsic evidence that COVID-19 causes physical damage to property" would not save Plaintiff's claims as Plaintiff's allegations indicate that it would have taken the same actions due to the Closure Orders regardless of whether COVID-19 particles were present on its property. *See Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) ("*Pappy's II*") (holding that even assuming presence of virus at plaintiffs' business premises, business income losses were caused by precautionary measures taken by the state to prevent the spread of COVID-19 rather than by direct physical loss of or damage to property); *Uncork & Create LLC*, 2020 WL 6436948, at *5 (no coverage because "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant.").

10

**B. Civil Authority Provision**

Plaintiff alleges that it is entitled to business income losses in its Third and Fourth Claims under "Civil Authority" coverage because the "Closure Orders directly resulted from the risk of direct physical loss caused by COVID-19 and have caused Plaintiff to lose use of its premises for their intended purpose." FAC ¶ 62. Defendant argues that Plaintiff's claim is deficient because "'access' to its insured premises was not 'specifically prohibited.'" Mot. 26. The Court finds that the language of the Civil Authority provision is unambiguous as a matter of law and requires that Plaintiff show both that 1) Plaintiff's access to its premises was prohibited and 2) that the Closure Orders were issued in response to a risk of direct physical loss. *See Waller*, 11 Cal. 4th at 18. Plaintiff's allegations fail to adequately show either. The Policy provides:

> q. Civil Authority
>
> (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises."

ECF 1-1 at 41. The Policy's Civil Authority provision covers "actual loss of Business Income" for up to 30 days "when access to [the insured's] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [its] 'scheduled premises.'" *Id.* The Policy defines Covered Causes of Loss as risks of direct physical loss which are not excluded or limited. *See id.* at 32.

Plaintiff has failed to adequately allege that access to its restaurant was "prohibited." *See generally,* FAC. Plaintiff relies on two orders for its Civil Authority claims – the Santa Clara County Order and Governor Newsom's Executive Order. *See* FAC ¶¶ 45, 46. Both Closure Orders allowed "essential businesses," which restaurants are considered, to remain open. *See* Mar. 16, 2020 Order of the Health Officer of Santa Clara County at 5 (¶ 10.f.xiii), available at https://www.sccgov.org/sites/covid19/Documents/03-16-20-Health-Officer-Order-to-Shelter-in-

Place.pdf ("Santa Clara County Order") (cited at FAC ¶ 45 & n.14); Exec. Order N-33-20 (Mar. 19, 2020), available at https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf (cited at FAC ¶ 46 & n.15). The Santa Clara County Order even encouraged essential businesses to stay open. *See* Santa Clara County Order, 2 (¶ 3). Plaintiff therefore was never "prohibited" by the Closure Orders from accessing its property.

Plaintiff's argument that access to its restaurant was prohibited because its customers were unable to enter its business is contrary to case law in this Circuit. In *Pappy's I*, the court evaluated a nearly identical civil authority provision's application to California closure orders, and found that access was not "prohibited" where plaintiff was still able to enter the premises, even though the order prevented customers from entering. *See Pappy's I*, 2020 WL 5500221, at *6. Here, although Plaintiff chose to completely suspend its operations, it was likewise Plaintiff's customers, and not Plaintiff itself, who were prohibited from entering the premises by the Closure Orders. *See* FAC ¶ 10.

Plaintiff has additionally failed to sufficiently allege that the Closure Orders were issued as a "direct result of a risk of physical loss to the property," as required under the plain language of the Policy. *See generally,* FAC. Plaintiff claims that the "Closure Orders directly resulted from the risk of direct physical loss caused by COVID-19," but fails to cite to any language in the Closure Orders that indicate this to be the case. *See* FAC ¶¶ 45, 62. Rather, Plaintiff only notes that the Santa Clara County Order was created in an "effort to mitigate and slow the spread of COVID-19 in the community." *See id.* To the extent that the Closure Orders even mention physical property, they only recognize that surfaces may become contaminated and need to be cleaned, which this Court has established does not constitute physical damage. *See id.* ¶ 45; *see also Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at *6 (finding that plaintiff could not allege that California "government Stay-at-Home Orders were issued as a direct result of such loss to *property.* Instead, the Stay-at-Home Orders were issued to prevent the spread of COVID-19 to *people*.") (emphasis

12

in original).

### C. Sue and Labor Provision

In its Seventh and Eighth Claims, Plaintiff alleges that it is entitled under the "Sue and Labor" provision to expenditures made to protect and repair its property in response to Closure Orders and COVID-19. *See* FAC ¶ 65. Defendant responds that Plaintiff is not entitled to such expenses as there was no "loss of or damage to" its property. *See* Mot. 25. The Court agrees with Defendant. The relevant provisions are:

> 3. Duties In The Event Of Loss Or Damage
>
> You must see that the following are done in the event of loss of or damage to Covered Property:
>
> d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside in the best possible order for examination. Also, keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim.
>
> . . .
>
> 5. Loss Payment
>
> In the event of physical loss or physical damage covered by this policy:
>
> a. At our option we will either:
> (1) Pay the value of physically lost or physically damaged property, as described in paragraph d. below;
> (2) Pay the cost of repairing or replacing the physically lost or physically damaged property, plus any reduction in value of repaired items;
> (3) Take all or any part of the property at an agreed or appraised value; or
> (4) Repair, rebuild or replace the property with other property of like kind and quality.

ECF 1-1 at 50. The "Sue and Labor" provision to which Plaintiff refers is located in the section "Duties in the Event of Loss or Damage," which imparts on Plaintiff in relevant part the duties to: (1) "[t]ake all reasonable steps to protect the Covered Property from further damage by a Covered

Cause of Loss,"; and (2) "keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim." *Id*. In the event of physical loss of or physical damage to the covered property, Defendant may be obligated to reimburse Plaintiff for its expenditures. *See id*.

The Court finds as a matter of law that the plain language of the Sue and Labor provision unambiguously requires that Plaintiff suffer direct physical loss of or damage to its property. *See Waller*, 11 Cal. 4th at 18. Because, as discussed above, the Court finds that Plaintiff has not alleged direct physical loss of or damage to its property, the "Sue and Labor" provision is not applicable. *See Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at *7 (finding Sentinel's "Sue and Labor" provision inapplicable where plaintiff "has not, and cannot, allege direct physical loss of its property or direct physical loss to property in the immediate area.").

**D. Virus Endorsement Provision**

Plaintiff, in its Ninth and Tenth Claims, alleges that it has suffered a loss under the "Virus Endorsement" coverage due to the COVID-19 virus. *See* FAC ¶¶ 136-155. Defendant argues, and the Court agrees, that Plaintiff has not alleged any facts to trigger coverage under this provision. *See* Mot. 20. The Policy provides:

> i. "Fungi", Wet Rot, Dry Rot, Bacteria And Virus
> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
> (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.
> (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss."
>
> This exclusion does not apply:
> (1) When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or
> (2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot,

Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.

. . .

1. Limited Coverage For "Fungi", Wet Rot, Dry Rot, Bacteria and Virus

a. The coverage described in 1.b. below only applies when the "fungi", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if al reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(1) A "specified cause of loss" other than fire or lightning.

. . .

19. "Specified Cause of Loss" means the following: Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

ECF 1-1 at 55, 128, 129. The Policy includes a "Virus Exclusion," which precludes the insured from recovering for loss or damage that is caused directly or indirectly by the presence, growth, proliferation, or spread of a virus. *See id.* at 128. The "Virus Endorsement" provision on which Plaintiff relies in its Ninth and Tenth Claims provides limited coverage, despite the presence of a virus, when the "virus is the result of one or more of the following causes: (1) A 'specified cause of loss' other than fire or lightning; [or] (2) Equipment Breakdown Accident . . ." *Id.* at 129. "Specified Causes of Loss" are defined elsewhere and include, inter alia, "smoke" and "water damage." *See id.* at 55.

Although this Court does not rely on the Policy's Virus Exclusion to find that Plaintiff's recovery under Claims One through Eight is barred, the Virus Exclusion does unambiguously apply in this case and provides an additional bar to recovery for the aforementioned Claims. Plaintiff argues that the Exclusion is ambiguous as to whether the excluded loss is limited to physical damages, and that there is a factual dispute regarding whether COVID-19, as opposed to

15

United States District Court
Northern District of California

the government shutdowns, was the cause of Plaintiff's loss. *See* Opp'n. 15,17. This Court agrees with another court in this district that found that the language of an identical Virus Exclusion provision unambiguously barred recovery for both physical and economic losses when "the loss was caused directly or indirectly by the virus." *Franklin EWC, Inc.*, 2020 WL 5642483, at *2. The Court finds that the Virus Exclusion is unambiguous as a matter of law and clearly applies to Plaintiff's claims here, which all allege that losses were caused, directly or indirectly, by COVID-19. *See* FAC ¶¶ 62-5.

Plaintiff has not adequately alleged that it nevertheless qualifies for coverage under the plain terms of the Virus Endorsement. Plaintiff has not alleged any facts in its First Amended Complaint that indicate that COVID-19 qualifies as a "specified cause of loss." *See generally,* FAC. Plaintiff further has failed to provide any additional facts or argument to support coverage under this provision in its Opposition to Defendant's Motion. *See generally,* Opp'n. Accordingly, Plaintiff's claims under "Virus Endorsement" coverage fail. *See Franklin EWC*, 2020 WL 5642483, at *3-4 (holding that plaintiffs failed to state a claim for Limited Virus coverage because they did not allege that the "virus was caused by any of the specified causes of loss.").

**E. Implied Covenant of Good Faith and Fair Dealing**

In its final Eleventh and Twelfth Claims, Plaintiff alleges that Defendant breached its implied covenant of good faith and fair dealing due to Defendant's unreasonable denial of coverage without investigation. *See* FAC ¶ 154. Defendant responds that because Plaintiff's claims were not covered, Defendant did not owe Plaintiff any benefits, and accordingly no benefits were wrongly withheld. *See* Mot. 18. The Court agrees with Defendant.

Under California law, there are two elements for a breach of the implied covenant of good faith and fair dealing in the insurance context: "(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love*, 221 Cal. App. 3d at 1151, 271 Cal.Rptr. 246. As Plaintiff has failed to allege

1    that benefits were due to it, Plaintiff is unable to meet both elements for a bad faith claim. *See id.*

2    at 1151-52, 271 Cal.Rptr. 246.

3        **IV. CONCLUSION**

4            Under the unambiguous terms of the Insurance Policy, the Court finds that Plaintiff has

5    failed to plead facts sufficiently demonstrating that any of Plaintiff's alleged losses are covered

6    under the Policy. Accordingly, the Court also dismisses Plaintiff's putative class actions claims.

7    *See Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974) ("[W]here the named plaintiffs have

8    failed to state a claim in themselves for the relief they seek[,] ... there is no occasion for the court

9    to wrestle with the problems presented in considering whether the action may be maintained on

10   behalf of the class."). The Court need not consider whether Plaintiff has standing to bring claims

11   on behalf of the Class.

12           While it does not seem likely that Plaintiff will be able to cure the deficiencies in the First

13   Amended Complaint, the Court recognizes that litigation regarding business interruption coverage

14   in the COVID-19 context is only beginning, and will allow Plaintiff the opportunity to amend in

15   accordance with Rule 11 obligations should it find new support for its claims in the developing

16   law. The amended complaint shall be filed within 21 days of the date of this Order. Thus,

17   Defendant's Motion to Dismiss is GRANTED WITH LEAVE TO AMEND as to Claims One

18   through Twelve.

19           **IT IS SO ORDERED.**

20

21   Dated: February 8, 2021

22

23   _____

24   BETH LABSON FREEMAN
     United States District Judge

25

26

27

28

17

# Exhibit J

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

R.T.G. FURNITURE CORP.,

     Plaintiff,

v.                            Case No: 8:20-cv-2323-T-30AEP

HALLMARK SPECIALITY
INSURANCE COMPANY, et al.,

     Defendants.

_____

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss (Dkt. 36) and Plaintiff's Response in Opposition (Dkt. 43). Upon review of these filings, and upon being otherwise advised in the premises, the Court concludes that Defendants' motion should be granted because Plaintiff has not adequately alleged direct physical loss or damage to the subject property. The Court also concludes that amendment would be futile. Accordingly, the complaint will be dismissed with prejudice.

## BACKGROUND

Plaintiff R.T.G. Furniture Corp. and its affiliates ("RTG") operate over 150 furniture stores in ten states. Over the course of the COVID-19 pandemic, the presence of the coronavirus on RTG's property forced it to close stores. Stay-at-home orders ("SHO") issued by government entities also forced store closures. RTG purchased insurance policies (the "Policies") from Defendants (the "Insurers") that insure "against all risks of direct physical loss of or damage to property." (Dkt. 1-1 § 21). According

to the Complaint, Defendants have denied RTG's insurance claims, although RTG's losses trigger business interruption and other coverages in the Policies. Specifically, the Complaint alleges RTG's losses are covered under the following sections of the Policies: (1) Business Interruption and Extra Expense; (2) Contingent Business Interruption; (3) Civil Authority; (4) Ingress/Egress; and (5) Loss Adjustment Expenses.

According to Defendants, the subject policies require "direct physical loss of or damage to property" for each of the coverages. The Policies state, in relevant part:

> 21. PERILS INSURED AGAINST
> This policy Insures against all risks of **direct physical loss of or damage** to property described herein including general average, salvage, and all other charges on shipments covered hereunder; except as hereafter excluded.

(Dkt. 1-1, p. 24 ¶ 21) (emphasis added).

Defendants move to dismiss the entirety of the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' main argument is that the Policies do not cover RTG's claims because RTG has not alleged direct physical loss or damage to the Property. The Court agrees.

## STANDARD OF REVIEW

Rule 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual allegations

2

contained in the complaint as true and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Legal conclusions, though, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

## DISCUSSION

Under Florida law, the interpretation of an insurance contract, including resolution of any ambiguities contained therein, is a question of law to be decided by the court. *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993) (citing *Sproles v. Amer. States Ins. Co.*, 578 So. 2d 482, 484 (Fla. 5th DCA 1991)). In construing an insurance contract, a court must strive to give every provision meaning and effect. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000); *Excelsior Ins. Com. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979). A party claiming coverage bears the burden of proof to establish that coverage exists. *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3rd DCA. 1977). The Florida Supreme Court

3

has noted that an "all-risk" policy—like the Policies at issue in this case—is not an "all loss policy, and thus does not extend coverage for every conceivable loss." *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 696-97 (Fla. 2016) (citation omitted).

In *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *5 (M.D. Fla. Sept. 28, 2020), this Court (in agreeing with the majority of courts—both in Florida and across the country—) concluded that COVID-19 and governmental orders closing businesses as a result of COVID-19 did not cause physical loss of or damage to property. The damages were purely economic in nature—they were not tangible or actual. The Court dismissed the insured's complaint with prejudice because the subject insurance policy required physical loss of or damage to the insured's property. *Id.*

Since the Court's Order in *Infinity Exhibits*, numerous courts have followed suit and dismissed similar complaints with prejudice for failure to adequately allege a physical loss. *See, e.g.*, *Uncork and Create LLC v. The Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 WL 6436948, at *4 (S.D. W.Va. Nov. 2, 2020) (collecting cases). For the sake of brevity, the Court incorporates the analysis it applied in *Infinity Exhibits* in this Order. *See* 2020 WL 5791583.

RTG argues in a persuasively written Response[1] that the instant case differs from the "vast majority" of the cases to consider this issue, including *Infinity Exhibits*, because RTG's Complaint expressly alleges that the coronavirus was *present* on its property and therefore caused physical damage to its property. RTG is correct that this is an important distinction and this distinction was not present in *Infinity Exhibits*. To understand RTG's argument, the Court delineates the relevant allegations from RTG's Complaint:

> 30. Coronavirus is detectable on various types of surfaces for varying amounts of time.
>
> 31. The CDC has reported that a person can become infected with COVID-19 by touching a surface or object that has the virus on it, and then touching their own mouth, nose, or eyes.
>
> 32. The presence of coronavirus particles on Rooms To Go's physical property caused a loss of its usefulness and normal function.
>
> 33. The presence of coronavirus particles caused direct physical harm, direct physical damage, and/or direct physical loss to Rooms To Go's property.
>
> 34. The presence of people infected with or carrying COVID-19 on Rooms To Go's physical property caused a loss of its usefulness and normal function.
>
> 35. The presence of people infected with or carrying COVID-19 on Rooms To Go's property caused direct physical harm, direct physical damage, and/or direct physical loss to Rooms To Go's property.

After considering these additional facts and reviewing the relevant case law, the Court concludes that the mere presence of the coronavirus on RTG's property does not

---

[1] The Court commends the parties on the quality of their briefing. The arguments were well-written, persuasive, and the legal research was thorough.

constitute physical damage or loss.  This is because COVID-19's presence on property is temporal.  In other words, COVID-19's temporary physical presence on RTG's property is insufficient to constitute "direct physical loss of or damage to" property.

*Mama Jo's Inc. v. Sparta Insurance Co*, which the Court discussed in more detail in *Infinity Exhibits*, is instructive.  The Eleventh Circuit found no "direct physical loss" where the insured alleged that dust and debris physically intruded into the plaintiff's restaurant requiring temporary closures of the restaurant for daily cleanings.  823 F. App'x 868, 871-72, 879-80 (11th Cir. 2020).  "[A]n item or structure that merely needs to be cleaned," the Eleventh Circuit held, "has not suffered a 'loss' which is both 'direct' and physical.'" *Id.* at 879.  RTG is correct that *Mama Jo's* was decided at the summary judgment stage, not on a motion to dismiss.  But this distinction is not material here because common sense tells us that COVID-19 is incapable of causing a tangible injury to property.  COVID-19 is a virus that harms people, not structures.  Discovery in this case would not alter this basic point.

Courts have reached a similar conclusion in COVID-19 business interruption cases that involve allegations that COVID-19 was present on the insured's property.  For example, in *DAB Dental PLLC v. Main Street America Protection Ins. Co*., the court held that "the mere presence of COVID-19 does not constitute a direct physical loss or damage to property," and entered a dismissal with prejudice because "[a]mendment would be futile under the circumstances."  (Dkt. 36 at Ex. 14; No. 20-CA-005504 H, at 5–6, 8 & n.8 (Fla. Cir. Ct. Nov. 10, 2020) (distinguishing and declining to follow *Studio 417, Inc. v.*

*Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020)).

Out of all the cases the Court has reviewed, the Court finds the following analysis from *Uncork and Create* the most persuasive:

> [E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered "loss" is required to invoke the additional coverage for loss of business income under the Policy.

2020 WL 6436948 at *5. Similarly, in *Sandy Point Dental, PC v. The Cincinnati Insurance Co.*, the court concluded that "[t]he coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property." No. 20-CV-2160, 2020 WL 5630465, at *2 & n.2 (N.D. Ill. Sept. 21, 2020) (declining to follow *Studio 417*, 2020 WL 4692385, at *1). Therefore, the insured "failed to plead a direct physical loss—a prerequisite for coverage." *Id.*

In sum, the Court, as it stated in *Infinity Exhibits*, is sympathetic to RTG's losses. Numerous businesses have suffered significant economic losses as a result of the COVID-19 pandemic. But the Court must apply the law, no matter how inequitable or unfair it may seem to the losing side. The Court concludes that, even assuming coronavirus was physically present on RTG's property, it is not tantamount to a "direct physical loss of or damage to property." COVID-19 impacts human health and human behavior. COVID-19 does not impact physical structures, other than to require additional cleaning and

sanitizing of those structures.   Therefore, all of the claims in the Complaint must be dismissed with prejudice.   Amendment would be futile under these circumstances.

It is therefore ORDERED AND ADJUDGED that:

1.  Defendants' Motion to Dismiss (Dkt. 36) is granted.

2.  Defendants' Motion for Leave to File a Reply (Dkt. 44) is denied as moot.

3.  The Complaint is dismissed with prejudice.

4.  The Clerk of Court is directed to close this case and terminate any pending motions as moot.

   **DONE** and **ORDERED** in Tampa, Florida, this January 22, 2021.


JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

# Exhibit K

1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9                  CENTRAL DISTRICT OF CALIFORNIA
10
11
12   SELANE PRODUCTS, INC., on behalf     Case No. 2:20-cv-07834-MCS-AFM
     of itself and all others similarly situated,
13                                        **ORDER GRANTING DEFENDANT'S**
14                 Plaintiff,             **MOTION TO DISMISS [39]**
15
16            v.
17
18   CONTINENTAL CASUALTY
     COMPANY,
19                 Defendant.
20
21        After the Court dismissed Plaintiff Selane Products, Inc.'s Complaint with leave
22   to amend, Selane filed a First Amended Complaint alleging the same claims. *See* FAC,
23   ECF No. 36; *see also* Order Granting Mot. to Dismiss ("MTD Order"), ECF No. 35.
24   Now before the Court is defendant Continental Casualty Company's ("CCC") Motion
25   to Dismiss. *See* Mot., ECF No. 39. Selane filed an Opposition and CCC filed a Reply.
26   *See* Opp., ECF No. 40; *see also* Reply, ECF No. 42. The Court held oral arguments and
27   took the matter under submission. The Motion is **GRANTED**.
28

## I. SELANE'S ALLEGATIONS

Selane manufacturers dental appliances and CCC is its "long-time commercial property and business interruption insurer." FAC ¶¶ 1-2. After local and state orders stemming from the COVID-19 pandemic required Selane to suspend business operations, CCC denied a lost business income claim under Selane's insurance policy. *Id.* ¶¶ 16, 65-66; *see also* Policy, FAC Ex. A. These orders include:

- **March 12** Executive Order N-25-20, mandating that: "All residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19." FAC ¶ 37; Request for Judicial Notice ("RJN," ECF No. 39-1) Ex. B.

- **March 19** Executive Order N-33-20, incorporating California Government Code 8665, which permits fines and criminal charges for non-compliance. FAC ¶ 41; RJN Ex. C. This order's purpose is to "preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability." *Id.*

- **March 16** County of Los Angeles Department of Public Health Order "prohibiting gatherings of more than 50 people." FAC ¶ 39; RJN Ex. D.

- **March 19** County of Los Angeles Department of Public Health Order, revised to mandate closure of non-essential businesses. FAC ¶ 40; RJN Ex. E.

- **March 21** County of Los Angeles Department of Public Health Order, revised to specifically require all non-essential "businesses to cease in-person operations, and close to the public." FAC ¶ 43; RJN Ex. F.

- **April 10** County of Los Angeles Department of Public Health Order extending closures through May 15. FAC ¶ 45; RJN Ex. G.

- **March 19** City of Los Angeles Public Order requiring Los Angeles citizens "to remain in their homes" and non-essential businesses "to cease operations that require in-person attendance by workers at a workplace." FAC ¶ 42; RJN Ex. I.

- **April 1** City of Los Angeles Public Order, continuing closure of non-essential businesses. FAC ¶ 44; RJN Ex. J.
- **April 10** City of Los Angeles Public Order, extending "mandated closures through May 15." FAC ¶ 46; RJN Ex. K
- **April 27** City of Los Angeles Public Order, continuing closure of non-essential businesses. FAC ¶ 47; RJN Ex. L
- **May 8** City of Los Angeles Public Order, continuing closure of non-essential businesses. FAC ¶ 47; RJN Ex. M.

Selane's business was "completely or partially suspended" due to these orders, which also "substantially impaired the functionality of insured locations and property" by "preventing and/or impairing the ability of Selane and other Class Members from being able to utilize the property for its intended purpose." FAC ¶¶ 49, 63. Selane's Policy includes two endorsements concerning Selane's loss of business income: the Business Income and Extra Expense Endorsement and the Civil Authority Endorsement. *Id.* ¶¶ 18-21. The Business Income and Extra Expense Endorsement states in part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Policy 43.

"Suspension" means "the partial or complete cessation of your business activities." *Id.* 40. "Operations" means "the type of your business activities occurring at the described premises and tenantability of the described premises." *Id.* 38. "Covered Causes of Loss" means "RISKS OF DIRECT PHYSICAL LOSS unless the loss is" excluded by the Policy. *Id.* 22-23. "Period of restoration" means the period beginning "with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described

premises" and ending "on the earlier of: **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or **(2)** The date when business is resumed at a new permanent location." *Id.* 38.

Under "**Extra Expense**," the Policy states:

a. Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

b. We will pay Extra Expense (other than the expense to repair or replace property) to:

    **(1)** Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at a replacement premises or temporary locations,…; or

    **(2)** Minimize the "suspension" of business if you cannot continue "operations."

*Id.* 44.

Under "**Civil Authority**" the Policy states:

When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

*Id.* 69. The Policy includes a "Microbe Exclusion" barring coverage for damage caused by the presence of a "microorganism [or] organism that causes infection or disease." *Id.* 111-12.

Based on CCC's denial of benefits under the Policy, Selane brings the following claims against CCC on behalf of itself and a putative class of CCC policyholders: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unfair business practices, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"); and (4) Declaratory Relief. FAC ¶¶ 92-144.

4

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

## III.   EXTRANEOUS MATERIALS

CCC seeks judicial notice of the health-related orders discussed above, and orders and transcripts from other court proceedings. *See* RJN. Selane seeks judicial notice of orders and a hearing transcript from related court proceedings. *See* Selane's RJN, ECF No. 40-1. The parties also request "judicial notice" of state court decisions solely for their interpretation of analogous insurance provisions. *See* Not. of Supp. Authority, ECF No. 41; *see also* Obj. to Not. of Supp. Authority, ECF No. 43.

Under Federal Rule of Evidence 201, a court may take judicial notice of court filings and matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings). The Court therefore considers the proffered court orders, transcripts, and government orders, but cannot take judicial notice of reasonably disputed facts in them. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). The Court may consider the parties' proffered cases as persuasive authority, but it need not take judicial notice of them.

## IV.   DISCUSSION

CCC argues that COVID-19-related business interruption cases interpreting identical or analogous provisions confirm that Selane's losses fall outside the Policy. *See, e.g., O'Brien Sales & Mktg., Inc. v. Transportation Ins. Co.*, 2021 WL 105772 (N.D. Cal. Jan. 12, 2021) (dismissing claims without leave to amend because lost business income stemming from COVID-19 closures fell outside policy's Business Income and Extra Expense coverage and Civil Authority coverage); *Jonathan Oheb MD, Inc. v. Travelers Cas. Ins. Co. of Am.,* 2020 WL 7769880 (C.D. Cal. Dec. 30, 2020) (same); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 2020 WL 7495180 (N.D. Cal. Dec. 21, 2020) (same); *Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*, 2020 WL 7247207 (N.D. Cal. Dec. 9, 2020) (same); *10E, LLC v. Travelers Indem. Co. of Connecticut et al.*, 2020 WL 6749361 (C.D. Cal. Nov. 13, 2020) (same); *Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, 2020 WL 6865774 (C.D. Cal. Nov. 12, 2020) (same); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020) (same); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 2020 WL 6156584 (C.D. Cal. Oct. 19, 2020) (same); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) (same); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*,  2020 WL 5742713 (C.D. Cal. Sept. 16, 2020) (same)*; Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020) (same, but granting "limited leave to amend"); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) (same, but allowing motion for leave to amend, which was later denied).

Selane stresses that this authority does not bind the Court, arguing that the Policy covers Selane's losses pursuant to the Civil Authority Endorsement *and* the Business Income and Extra Expense Endorsement under "controlling" California law. Opp. 11, 15, 25 (citing *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 842 (1990); *Armstrong World Indus., Inc. v. Aetna Cas & Sur. Co.,* 45 Cal. App. 4th 1, 103 (1996); *Hughes v.*

6

*Potomac Ins. Co.*, 1999 Cal. App. 2d 239, 248-49 (1962)). The Court construes each endorsement in turn, guided by the following well-established interpretive principals.

"[I]nterpretation of an insurance policy is a question of law." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115, 988 (1999). "When interpreting a policy provision, we must give terms their ordinary and popular usage, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Id.* (citation and quotation marks omitted). "The terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Entm't Am. Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641); *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language.").

## A. <u>Civil Authority Coverage</u>

The Civil Authority Endorsement conditions coverage "on direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss." Policy 69. A "Covered Cause of Loss" is a cause not limited by the Policy. *Id.* 22-23.

Selane's FAC points to the physical attributes of COVID-19, which "attaches to surfaces and lingers in the air and airspace of buildings," and alleges they cause "direct physical loss of or damage to property." FAC ¶¶ 51, 54, 62. The Court determined that similar averments in Selane's Complaint did not adequately allege "direct physical loss of or damage to property" as those terms appear in the Policy. MTD Order 8-10 (citing *W. Coast Hotel Mgmt.*, 2020 WL 6440037, at *3–4 (rejecting conclusory allegations of physical loss to property stemming from COVID-19 as unfounded attempt to establish civil authority coverage); *10E*, 2020 WL 539653, at *3-5 ("Under California law, losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase."); *Water Sports Kauai,* 2020 WL 6562332, at *1 ("I agree with the vast majority of cases that have

addressed materially similar policy provisions and facts. [Plaintiff] has failed to plausibly plead Business Income or Civil Authority coverage."). To cure these deficiencies, Selane added allegations concerning COVID-19's physical properties, transmissibility, and spread throughout California. FAC ¶¶ 21, 51-59. Selane's Opposition cites its allegation that COVID-19 causes "a distinct, demonstrable, physical alteration to property" and relies on authority the Court already distinguished. Opp. 15 (citing *AIU,* 51 Cal. 3d at 842; *Armstrong,* 45 Cal. App. 4th at 103). Again, unlike Selane's Policy, the commercial general liability policies in *AIU* and *Armstrong* expressly included the "loss of use" of tangible property. 51 Cal. 3d at 815 n. 3; 45 Cal. App. 4th at 88; Policy 26 ("We will not pay for loss or damage caused by… loss of use or loss of market."). Selane adding allegations about COVID-19's properties does not make the Policy ambiguous, alter the economic nature of Selane's loss, or justify departure from the MTD Order and voluminous authority from California district courts finding that COVID-19 and its impacts do not constitute "direct physical loss of or damage to property." Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible…").

Selane citing the Policy's Microbe Exclusion to support its interpretation is similarly unavailing. Opp. 18 ("Thus, in choosing to exclude coverage for loss or damage caused by the 'presence' of harmful 'organisms' and 'micro-organisms,' [CCC] confirmed its view that such loss or damage would have been covered in the absence of an exclusion."). That the Policy excludes damages triggered by disease-causing "organisms or microorganisms" does not mean that inanimate viruses are automatically covered by the Policy. *WAWGD, Inc. v. Sentinel Ins. Co.,* 2017 WL 4340437, at *7 (S.D. Cal. Sep. 29, 2017) ("Ordinarily, an exception to a policy exclusion does not create coverage not otherwise available under the coverage clause.") (citing *Hurley Constr. Co. v. State Farm Fire & Cas. Co.,* 10 Cal. App. 4th 533, 535 (1992)). In fact, without "direct physical loss of or damage to" property, the Court needn't even reach the Policy's exclusions. *Sony Computer Entm't Am. Inc. v. Am. Home Assur. Co.,* 532

F.3d 1007, 1017 (9th Cir. 2008) ("If coverage exists, then the court considers whether any exclusions apply. If coverage does not exist, the inquiry ends. The exclusions are no longer part of the analysis because 'they cannot expand the basic coverage granted in the insuring agreement.' The rule is no different for exceptions to exclusions.") (citation omitted).

Finally, Selane alleges that the restrictive orders *themselves* caused a "direct physical loss of or damage to property" by "preventing and/or impairing the ability of Selane and other Class Members from being able to utilize their property for its intended purpose." FAC ¶ 63. This unfounded argument has been soundly rejected because the Civil Authority Endorsement requires that "the civil authority action must be due to direct physical loss or damage to property"—it does not infer that the civil authority action can itself constitute "direct physical loss of or damage to property" triggering coverage. Policy 69; *Tralom, Inc. v. Beazley USA Servs., Inc.,* 2020 WL 8269539 (C.D. Cal. Dec. 29, 2020) (rejecting that civil authority orders can be both the cause of the physical loss and the result of the physical loss when construing identical provision and granting motion to dismiss without leave to amend); *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, 2021 WL 289547, at *6 (E.D. Pa. Jan. 28, 2021) ("Under this proposed interpretation, an insured could seek and obtain coverage *any* time there is a loss of use under the Business Income provision."); *Hajer v. Ohio Sec. Ins. Co.*, 2020 WL 7211636, at *4 (E.D. Tex. Dec. 7 2020) ("But this theory reverses the cause-effect relationship between the act of civil authority and the damage to neighboring property. The provision requires the physical damage to prompt the act of civil authority, not the other way around.").

In sum, Selane's negligible additions to the Complaint do not change this Court's determination that Selane's conclusory allegations of "direct physical loss of or damage to property" do not, under California law, support recovery under the Policy's Civil Authority coverage. MTD Order 9-10 (citing *Pappy's Barber Shops*, 2020 WL 5500221, at *6 ("Accordingly, because the complaint does not plausibly allege (1) any

civil authority orders that prohibited access to Plaintiffs' places of business (as opposed to simply prohibiting Plaintiffs from operating their businesses), or (2) any direct physical loss of or damage to property, other than at Plaintiffs' premises, the complaint does not state a claim for coverage under the civil authority provision of the Policy.").

### B. Business Income and Extra Expense Coverage

Like the Civil Authority Endorsement, the Business Income and Extra Expense Endorsement conditions coverage on "direct physical loss of or damage to property…" Policy 43. As this Court has determined that Selane offers no well-pled allegations to infer that it suffered "direct physical loss of or damage to property" due to COVID-19, Selane has also failed to show that COVID-19 and its impacts as alleged in the FAC triggered coverage under the Business Income and Extra Expense Endorsement. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) ("The burden is on the insured to establish that the claim is within the basic scope of coverage...") (citation omitted). Because the Policy does not cover Selane's losses, Selane cannot state a claim for breach of contract, *1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1020-21 (2006) ("The failure of [a policy's] conditions precedent is a complete defense to [an insured's] breach of contract claim."), breach of implied covenants, *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990) ("Where benefits are withheld for proper cause, there is no breach of the implied covenant."), or declaratory relief. *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994) ("The district court,… may grant declaratory relief only when there is an actual case or controversy; a declaratory judgment may not be used to secure judicial determination of moot questions."), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019).

CCC's Motion to Dismiss Selane's claims for breach of contract, breach of implied covenant, and declaratory relief is **GRANTED**.

### C. UCL and Punitive Damages

California's UCL provides that "unfair competition ... include[s] any unlawful,

10

1   unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading
2   advertising." Cal. Bus. & Prof Code § 17200. The UCL "borrow[s] violations of other
3   laws and treats" them as unlawful business practices "independently actionable
4   under section 17200." *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992)
5   (quotation omitted). To state a UCL claim, a plaintiff must plead a violation of another
6   statute or common law. *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001)
7   (UCL claims "stand or fall depending on the fate of the antecedent substantive causes
8   of action"). Because Selane has not adequately alleged a predicate violation of law as
9   explained above, its UCL claims fail. *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192,
10  1203 (9th Cir. 2001). Because Selane has not stated a claim, its punitive damages claim
11  likewise fails. *Ismail v. Cty. of Orange*, 917 F. Supp. 2d 1060, 1073 (C.D. Cal.
12  2012), *aff'd*, 676 F. App'x 690 (9th Cir. 2017) (dismissal of underlying claims "obviates
13  the need to consider plaintiff's requests for punitive damages" because such requests are
14  "not independent causes of action.") (citing *London v. Sears, Roebuck & Co.,* 458 Fed.
15  Appx. 649, 651 (9th Cir. 2011) ("Because we affirm the district court's summary
16  judgment dismissal, we need not consider London's claims for punitive damages.").
17  CCC's Motion to Dismiss Selane's UCL and punitive damages claims is **GRANTED**.
18      **V. CONCLUSION**
19      For the foregoing reasons, the Motion is **GRANTED**. Because Selane has had
20  ample opportunity to amend and confirmed at the hearing that pleading more facts
21  would be futile, Selane's Complaint is **DISMISSED with prejudice**. The parties shall
22  jointly submit a proposed judgment within two days.
23
24  **IT IS SO ORDERED.**
25
26  Dated: February 8, 2021                    _____
27                                             MARK C. SCARSI
28                                             UNITED STATES DISTRICT JUDGE

11

# Exhibit L

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2020 DEC 30 PM 4: 22

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

| | | |
|---|---|---|
| STEINER STEAKHOUSE, LLC DBA | § | |
| STEINER RANCH STEAKHOUSE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. 1:20-CV-858-LY |
| | § | |
| AMCO INSURANCE COMPANY, | § | |
| | § | |
| DEFENDANT. | § | |

## <u>ORDER ON DEFENDANT'S MOTION TO DISMISS</u>

Plaintiff Steiner Steakhouse, LLC dba Steiner Ranch Steakhouse ("Steiner Steakhouse"),

a local steak restaurant, sues Defendant Amco Insurance Company ("Amco"), a national insurance

company, for losses sustained during the COVID-19 pandemic. Steiner Steakhouse brings causes

of action for breach of contract, breach of the duty of good faith and fair dealingDecember 30, 2020,

and noncompliance with the Texas Insurance Code (Tex. Ins. Code §§ 541.060–.061,

542.055–542.060 (regarding unfair settlement practices and prompt payment of claims)), urging

insurance coverage for "actual loss of business income" caused by "direct physical loss of or damage

to the property" and "action of civil authority that prohibits access to" the property. Amco moves

to dismiss for failure to state a claim under Rule 12(b)(6), arguing that Steiner Steakhouse's alleged

losses are not covered by either provision, and in any event, are barred by exclusion clauses for

"virus or bacteria," "acts or decisions," and "loss of use." Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

When ruling on a motion to dismiss a complaint, the court accepts as true all of the factual allegations contained in the complaint.[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 589 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). An attachment to a complaint is a part of the complaint for all purposes. Fed. R. Civ. P. 10(c). The court has reviewed the complaint and the attachments to the complaint, which include government suspension orders related to the COVID-19 pandemic, the insurance policy Steiner Steakhouse bought from Amco that was effective between November 21, 2019 and November 21, 2020, and the insurance claim Steiner Steakhouse made to Amco on March 18, 2020.

Steiner Steakhouse, a restaurant located in the City of Austin, Travis County, Texas, has been subject to several government suspension orders limiting its operations since March 2020. On March 11, 2020, the World Health Organization identified COVID-19 as a pandemic. According to the Centers for Disease Control and Prevention, a pandemic is a global outbreak of disease. Subsequently, Texas Governor Greg Abbott issued a Declaration of State Disaster as a result of COVID-19. He prohibited gatherings of 10 or more people, and ordered all "non-essential" businesses to close between April 2 and April 30. But he encouraged the use of drive-thru, pickup, or delivery. Likewise, the Mayor of the City of Austin, Steve Adler, ordered food establishments to close common dining areas open to the public until May 1, but encouraged them to provide take-away or delivery food service designed to limit exposure between individuals. Mayor Adler also prohibited gatherings of 10 or more people.

---

[1]The live complaint in this case is Plaintiff's First Amended Original Complaint (Doc. 6). For simplicity, the court will refer to it as the "complaint."

2

Steiner Steakhouse states that government suspension orders, including these, caused it to lose business income. It submitted a claim to Amco Insurance, who it says denied the claim without an investigation. Steiner Steakhouse originally brought this suit in state court. Shortly before moving to dismiss, Amco removed the case to this court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1446.

## STANDARD

When evaluating whether to dismiss a complaint for failure to state a claim, a well-known "tenet [is] that a court must accept as true all of the factual allegations contained in a complaint." *Twombly*, 550 U.S. at 589; Fed. R. Civ. P. 12(b)(6), 8(a). But this tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Texas law governs this dispute. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding federal courts must apply the forum state's substantive law in a diversity action); *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). Under Texas law, a court interprets an insurance policy using the same well-established standards that govern the construction of any written contract. *Id.*; *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). These contract-interpretation standards are familiar. *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 1995). A court's analysis is confined to the four corners of the policy itself. *Page*, 315 S.W.3d at 527. The court considers the express language of the policy, giving effect to each word, clause, and sentence to avoid making any provision within the policy inoperative. *Id.*

3

The "paramount rule" of contract-interpretation, however, is that courts enforce unambiguous policies as written, reviewing policies as drafted, not revising them as desired. *Pan Am Equities, Inc.*, 959 F.3d at 674. Determining whether a policy is ambiguous is a pure legal question. *Id.* A term is not ambiguous "merely because different parties—or different judges—offer conflicting interpretations." *Id.* And an ambiguity is more than lack of clarity. *Id.* A policy is only ambiguous if, giving effect to all provisions, its language is susceptible to more than one reasonable interpretation. *Id.* If, doing so, a provision is susceptible to more than one reasonable interpretation, "Texas law has consistently held that . . . the court must interpret that provision in favor of the insured, so long as that interpretation is reasonable." *In re Deepwater Horizon v. Transocean Offshore Deepwater Drilling, Inc.*, 728 F.3d 491, 499 (5th Cir. 2013). "The court must do so even if the insurer's interpretation is *more* reasonable than the insured's—in particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured." *Id.* (emphasis in original) (internal quotation marks omitted). "This rule favoring the insured derives, in part, from the 'special relationship between insurers and insured arising from the parties' unequal bargaining power." *Id.* It "hearkens to the doctrine of *contra proferentem*, which construes any ambiguities against the drafter, and the 'sophisticated insured exception,' which may apply when the policy is in some way negotiable . . . ." *Id.*

## ANALYSIS

Steiner Steakhouse seeks indemnity for losses sustained during the COVID-19 pandemic under a breach-of-contract theory. It also sues Amco for breach of the common-law duty of good faith and fair dealing, and for noncompliance with the Texas Insurance Code. Tex. Ins. Code §§ 541.060–.061 (unfair settlement practices), 542.055–542.060 (prompt payment of claims).

4

## I.  BREACH-OF-CONTRACT CLAIM

Steiner Steakhouse argues that two separate provisions entitle it to insurance coverage, provisions regarding "physical loss of or damage to" the property and "action of civil authority that prohibits access to" the property.  Amco argues that neither provision applies and, in any event, that all losses are barred by exclusion clauses regarding "virus or bacteria," "acts or decisions," and "loss of use."

### A.  Coverage for Physical Loss of Property

The policy insures property loss or damage, providing:

> We will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration."  The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

The parties dispute the meaning of the phrase "direct physical loss of or damage to property," with Steiner Steakhouse insisting the phrase is ambiguous.  The policy defines "property damage" as (a) "physical injury to tangible property" and (b) "loss of use of tangible property that is not physically injured."  But the policy does not define "direct physical loss," so both parties rely on its plain meaning.    Specifically, Amco argues that a "direct physical loss" requires a "distinct, demonstrable, physical alteration of the property" under state law.  According to Steiner Steakhouse, however, property *loss* cannot be synonymous with property *damage*, the latter of which is defined as "physical injury" and "loss of use."  Although "physical injury" and "loss of use" may be ways of demonstrating "direct physical loss," Steiner Steakhouse argues, a "direct physical loss" is not predicated on either circumstance because the word "or" indicates an alternative. Instead, the restaurant claims that its inability to provide indoor dining fits within the plain meaning of "loss."

5

However, the court holds that the phrase "direct physical loss of or damage to property" is not ambiguous. Amco's interpretation is the only reasonable interpretation under Texas law. *In re Deepwater Horizon*, 728 F.3d at 499. Although the insurance policy does not define "physical loss or damage," the term has a legally established meaning—a "distinct, demonstrable, physical alteration of the property." STEVEN PLITT ET AL., COUCH ON INS. § 148:46 (3d ed. 2005) (cited in *Hartford Ins. Co. of Midwest v. Miss. Valley Gas Co.*, No. 05-60299, 181 Fed. App'x 465, 470 (5th Cir. May 25, 2006) (unpublished)); *see also Trinity Indus. Inc. v. Ins. Co. of North Am.*, 916 F.2d 267, 270–271 (5th Cir. 1990); *Sultan Hajer v. Ohio Sec. Ins. Co.*, 2020 WL 7211636, at *2 (E.D. Tex. Dec. 7, 2020). "The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state." *See Hartford Ins.*, 2006 WL 1489249, at *5 (holding policy did not cover monetary losses under Texas law absent some physical manifestation of loss or damage) (citing *Trinity Indus.*, 916 F.2d at 270–271 (holding arbitration award did not qualify as physical loss or damage)).

Although the Fifth Circuit has yet to interpret the phrase "physical loss or damage" in the context of the COVID-19 pandemic, at least one district court applying Texas law denied coverage for "direct physical loss of or damage to property" because there was no "distinct, demonstrable, physical alteration of the property." *Sultan Hajer*, 2020 WL 7211636, at *3. The court explained: a "regulation prohibiting people from patronizing a business is not a tangible alteration to property." *Id.* (citing *Diesel Barbershop v. State Farm Lloyds*, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) (interpreting narrower phrase "direct physical loss"); *Hartford Ins.*, 2006 WL 1489249; *Trinity Indus.*, 916 F.2d at 270–271); *but cf. Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 2020 WL 6578417, at *6 n.7 (W.D. Tex. Oct. 26, 2020) (declining to interpret phrase "direct physical loss of

6

or damage to property" where, as here, insurance policy defined "property damage" as "physical injury" and "loss of use.").

Likewise here, there is no coverage for "direct physical loss of or damage to property" because there is no "distinct, demonstrable, physical alteration of the property." Although Steiner Steakhouse may have suffered monetary losses, consumers may have avoided Steiner Steakhouse out of fear, and levers of government may have suspended Steiner Steakhouse's indoor dining business, none of these theories of recovery articulate a physical loss that is cognizable in Texas. Steiner Steakhouse does not argue that the presence of the coronavirus that causes COVID-19 physically altered its surfaces or airspace. *But cf. Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (holding odor constituted "physical injury" to property, within coverage for "property damage"). In fact, Steiner Steakhouse denies this ("Plaintiff alleges loss during the COVID-19 outbreak and because of the state and federal stay-home Orders, not because a virus has infected or enveloped its property."). Steiner Steakhouse instead argues that it suffered monetary losses; but "a loss of money" is not a physical loss of covered property under *Hartford Insurance*, 2006 WL 1489249, at *5 (reversing summary judgment that favored insured). Steiner Steakhouse further argues that fear kept patrons away, but fear is an intangible emotion—not a "distinct, demonstrable, physical alteration" to covered property, as required by *Trinity Industries*, 916 F.2d at 270–271. And even if indoor dining was suspended, Steiner Steakhouse was still encouraged to use the property to provide take-away or delivery food service. *See Diesel Barbershop*, 2020 WL 4724305, at *5 (holding lost use of property due to COVID-19 pandemic or related government orders did not constitute direct physical loss such that it may be the basis for an insurance claim for loss of business income). Steiner Steakhouse's claim that consumers stayed away

7

of their own volition, or in obedience to government orders, causing it to lose business income, does not qualify as "physical loss or damage" in Texas. Thus, there is no coverage under this provision.

## B.    Coverage for Action of Civil Authority

Amco also insured Steiner Steakhouse against civil action, providing:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Put differently, this provision applies  if damage to a neighboring property within one mile of the insured property prompts a civil action, such as a civil action prohibiting access to the insured property and granting unimpeded access to the neighboring property. *Sultan Hajer*, 2020 WL 7211636, at *3 (interpreting identical provision under Texas law).

Steiner Steakhouse argues that the government suspension orders—including Governor Abbott's executive order declaring COVID-19 to be a "disaster"—coupled with the general threat of viral transmission constitute "damage to [neighboring] property" under the civil-authority provision.  Amco argues that civil-authority coverage does not apply because no order "prohibit[ed]" access to Steiner Steakhouse, considering the use of drive-thru, pickup, and delivery was allowed and encouraged.

8

Here, too, the provision is not ambiguous. Steiner Steakhouse is not entitled to civil-authority coverage for two simple reasons. First, the insurance policy plainly requires there be a "damaged property" that is within one mile of the insured property. *See id.* The damaged property must be "[an]other" property, one that is distinct from the insured property. But Steiner Steakhouse does not identify a particular site of damage; it does not suggest that a nearby property was contaminated with the coronavirus that causes COVID-19. Instead, Steiner Steakhouse argues that "damage to property" includes the *general threat* of viral transmission at any location (including its own restaurant) where people congregate, in light of the actual existence of COVID-19 in Travis County and the desire to mitigate further spread. However, in *South Texas Medical Clinics,* the court denied civil-authority coverage because the government's evacuation orders were a response to the "anticipated threat" of a hurricane, rather than a response to property damage that had already occurred nearby. *South Tex. Med. Clinics, P.A., v. CAN Financial Corp.,* 2008 WL 450012, at *10 (S.D. Tex. Feb. 16, 2008) (not reported).

Second and relatedly, the damage to property must precede the action of civil authority, which is "taken in response to" the damage. There must be some nexus—some "causal link"—between the neighboring property and the civil action. *Dickie Brennan & Co. v. Lexington Ins.,* 636 F.3d 683, 686–687 (5th Cir. 2011); *see also Sultan Hajer,* 2020 WL 7211636, at *3; *S. Tex. Med. Clinics,* 2008 WL 450012, at *10. There can be no causal link between the neighboring property and the civil action here, because no neighboring property was identified at all, let alone neighboring property where the anticipated threat of COVID-19 was realized *before* the civil action was taken. The provision "requires the physical damage to prompt the act of civil authority, not the other way around." *Sultan Hajer,* 2020 WL 7211636, at *4. Steiner Steakhouse

9

has identified no civil action that succeeded damage to a readily identifiable, neighboring property. Therefore, civil-authority coverage does not apply.

## II.    EXTRA-CONTRACTUAL BAD-FAITH AND STATUTORY CLAIMS

Steiner Steakhouse's extra-contractual claims for breach of the duty of good faith and fair dealing and violation of the Texas Insurance Code are each premised on Amco's alleged failure to pay benefits in accordance with the insurance policy. However, there is generally no bad-faith cause of action when an insurance claim was *not* covered by the policy. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). For an insured to recover on a bad-faith insurance claim when the insurer has promptly denied coverage for the claim, the insured must demonstrate that the insurer has committed an injury independent of the policy claim. *Id.*; *Vizza Wash*, 2020 WL 6578417, at *8. Similarly, an insured cannot recover damages based on the insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an independent injury caused by the insurer's conduct. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018); *Vizza Wash*, 2020 WL 6578417, at *8.

Amco's policy does not cover Steiner Steakhouse's alleged losses. Thus, Amco's denial of Steiner Steakhouse's claim cannot serve as the basis of Steiner Steakhouses's extra-contractual causes of action, unless Steiner Steakhouse has alleged an independent injury against Amco. In this case, Steiner Steakhouse has failed to plausibly allege any injury that is independent of Amco's alleged failure to pay benefits under the insurance policy. Nor does Steiner Steakhouse's response attempt to specifically explain how its extra-contractual claims are independent of its contract claim ("Because the Plaintiff has pled valid and plausible claims for coverage and breach of contract, the claims for violations of the Texas Insurance Code and breach of the duty of good faith and fair

dealing are likewise valid and plausible."). Thus, Steiner Steakhouse's extra-contractual claims will be dismissed.

## III.   REQUEST TO AMEND

Steiner Steakhouse requests an opportunity to file an amended complaint to cure any pleading deficiencies. Because the court has determined that there is no coverage for Steiner Steakhouse's alleged losses as a matter of Texas law, any attempt to amend the complaint would be futile. *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (holding district court may properly deny leave to amend where proposed amendment would be futile because it could not survive a motion to dismiss). Accordingly, Steiner Steakhouse's request to amend the complaint will be denied.

## CONCLUSION

**IT IS ORDERED** that Amco's Motion to Dismiss the complaint (Doc. 10) is **GRANTED**. Steiner Steakhouse's First Amended Complaint (Doc. 6) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Steiner Steakhouse's motion to amend the complaint is **DENIED**.

SIGNED this 30th day of December, 2020.

_____

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

11

# Exhibit M

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
C.A. NO. 2084CV01378

VERVEINE CORP, D/B/A COPPA,     )
704 WASHINGTON LLC D/B/A       )
TORO, JKFOODGROUP LLC          )
D/B/A LITTLE DONKEY,           )
                    Plaintiffs, )
                               )
v.                             )
                               )
STRATHMORE INSURANCE           )
COMPANY AND COMMERCIAL         )
INSURANCE AGENCY, INC.,        )
                    Defendants. )

## COMMERCIAL INSURANCE AGENCY, INC.'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Commercial Insurance Agency, Inc. ("CIA") moves for judgment on the pleadings in accordance with Mass.R.Civ.P. 12(c), on the grounds that plaintiff JKFOODGROUP LLC d/b/a Little Donkey ("Little Donkey") fails to state a claim against CIA because it cannot establish that CIA caused its alleged damages. Specifically, Little Donkey alleges that its insurer, Strathmore Insurance Company ("Strathmore"), improperly denied coverage for business losses it sustained as a result of the Covid-19 pandemic. CIA was Little Donkey's insurance agent, and Little Donkey alleges that CIA was negligent by procuring a policy containing virus exclusion.

However, because Strathmore denied coverage for reasons unrelated to the virus exclusion, there is no causal connection between Little Donkey's alleged damages and CIA's alleged negligence, and Little Donkey's claim against CIA should be dismissed.

1

NOTIFY 12/2✓ **15**

THE COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPT.
OF THE TRIAL COURT

2020 NOV -2 A 8: 49

VERVEINE CORP. D/B/A COPPA, 1740 )
WASHINGTON LLC D/B/A TORO, )
JKFOODGROUP LLC D/B/A LITTLE )
DONKEY, )
)
Plaintiffs, )
)
v. )
)
STRATHMORE INSURANCE )
COMPANY AND COMMERCIAL )
INSURANCE AGENCY, INC., )
)
Defendants. )
)

Case No. 2084CV01378-BLS2

*[handwritten notations]*
notice sent                    DM
12.24.20              GPV      BR2
JS                             S+3 pc
R+cup              ARF
Jmc                EAD
R+cup         CBUp  MS

*[left margin handwritten: Allowed (see Memorandum of Decision) Judichaw 12/21/20]*

## DEFENDANT STRATHMORE INSURANCE COMPANY'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO MASS. R. CIV. P. 12(b)(6)

Defendant Strathmore Insurance Company ("Strathmore") respectfully moves, pursuant to Mass. R. Civ. P. 12(b)(6), to dismiss the claims asserted against it in the Complaint filed by Plaintiffs Verveine Corp. d/b/a Coppa, 1704 Washington LLC d/b/a Toro, and JKFOODGROUP LLC d/b/a Little Donkey (collectively, "Plaintiffs"). Plaintiffs fail to allege facts capable of establishing an entitlement to insurance coverage for their alleged business income losses arising out of the COVID-19 pandemic. Plaintiffs' claims against Strathmore should, therefore, be dismissed under Mass. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The specific grounds for dismissal are set forth in Strathmore's supporting Memorandum. In accordance with Superior Court Rule 9A(a)(1), Strathmore respectfully requests a hearing on this Motion, and notes that, by prior Order of the Court, this Motion is currently scheduled for a hearing on Wednesday, November 4, 2020.

12/21 ✓



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                   SUPERIOR COURT
                                              SUCV2020-1378-BLS2

VERVEINE CORP. d/b/a COPPA, 1704 WASHINGTON LLC d/b/a TORO,
and JKFOODGROUP LLC d/b/a LITTLE DONKEY
Plaintiffs

vs.

STRATHMORE INSURANCE COMPANY and
COMMERCIAL INSURANCE AGENCY, INC.
Defendants

MEMORANDUM OF DECISION AND ORDER
ON THE DEFENDANT STRATHMORE INSURANCE COMPANY'S
MOTION TO DISMISS AND ON
DEFENDANT COMMERCIAL INSURANCE AGENCY, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS

The plaintiffs are entities that own and operate two Boston restaurants, Coppa and Toro,

and one Cambridge restaurant, Little Donkey. They have jointly filed this insurance coverage

action against the defendants, Strathmore Insurance Company, Inc. (Strathmore), and

Commercial Insurance Agency, Inc. (Commercial).  Plaintiffs' claims arise from their loss of

business income due to the COVID-19 pandemic.  Defendant Strathmore has moved to dismiss

the Complaint pursuant to Rule 12(b)(6), contending that, based on the unambiguous language of

the insurance policies that it issued, the plaintiffs' losses are not covered.  Commercial,

plaintiffs' nsurance agent, has moved for judgment on the pleadings pursuant to Rule 12(c) on

the grounds that, if Strathmore's denial of coverage was proper, it follows that the claim asserted

against Commercial also fails as a matter of law.  This Court concludes that there is no coverage

for plaintiffs' business losses under the Strathmore policies such that both Motions must be

**ALLOWED**.

notie
sent
12.24.20
GPV
TS
Rtcyp
JMC
Rtc
cyp
DM
BRe
Stpc
ARF
EAD
CBLyp
MD

1

**BACKGROUND**

The Complaint, relevant insurance policies, and certain government orders set forth the following facts.[1]  The plaintiff corporations, Vervaine Corp., 1704 Washington LLC, and JKFOODGROUP LLC, share common ownership and operate the restaurants Coppa, Toro, and Little Donkey, respectively.  For many years, plaintiffs have purchased their insurance through Commercial and have been insured under Strathmore policies.  As is relevant here, Coppa and Toro were insured under a single "all risk" commercial property policy issued by Strathmore covering the period between September 5, 2019 and September 5, 2020 (the Coppa/Toro Policy). Little Donkey was separately insured under a commercial property policy issued by Strathmore for the period June 17, 2019, to June 17, 2020 (the Little Donkey Policy).   The only difference between the Coppa/Toro Policy and the Little Donkey Policy that is relevant to the instant motions is that the Little Donkey Policy contained a "virus exclusion" provision whereas the Coppa/ Toro Policy did not.

On March 15, 2020, in connection with the COVID-19 pandemic, the Governor of Massachusetts issued an order "prohibiting gatherings of more than 25 people and on-premises consumption of food or drink."  In particular, it provided:

> "Any restaurant, bar, or establishment that offers food or drink shall not permit on-premises consumption of food or drink; provided that such establishments may continue to offer food for take-out and by delivery provided that they follow the social distancing protocols set for the Department of Public Health guidance."

About a week later, the Governor issued another stricter stay-at-home order, but continued to allow restaurants and bars to offer food for take-out and delivery.  Beginning in June 2020, further orders allowed for a phased-in reopening of certain business, subject to certain

---

[1] The court may take judicial notice of the government orders as a matter of public record.  Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).

2

"workplace safety rules and standards designed to protect against the risk of the COVID-19 virus."  On June 6, 2020, the Governor issued an order allowing outdoor table service at restaurants to open on June 8, 2020.  On June 19, 2020, the Governor issued an order allowing indoor table service to resume at restaurants on June 22, 2020 (collectively, the Governor's Orders).

As a consequence of the Governor's Orders, plaintiffs could not use their properties as fully operational restaurants:  although they could still use the premises to prepare food for take-out and delivery, plaintiffs suffered a major loss of business income because of the restrictions relating to on-premises dining.[2]  Plaintiffs filed a claim for those losses with Strathmore, which determined that neither the Coppa/Toro Policy nor the Little Donkey Policy provided coverage.  This lawsuit ensued.

The Complaint seeks declaratory relief and damages for breach of contract and for a violation of G. L. c. 93A and 176D against Strathmore.  Counts I through III relate to the Coppa/Toro Policy and Counts IV through VI relate to the Little Donkey Policy.  Plaintiff JKFOODGROUP, LLC has asserted an additional claim (Count VII) against Commercial, the insurance agent on the Little Donkey Policy, alleging that, if the virus exclusion provision in that policy applies, then Commercial was negligent in procuring that policy for the plaintiff.

## DISCUSSION

In seeking coverage for their business losses, plaintiffs rely on two sets of provisions which appear in both the Coppa/Toro Policy and in the Little Donkey Policy.  The first set of

---

[2] Coppa and Toro did provide takeout and delivery service to customers.  According to the Complaint, Little Donkey chose not to do so, electing to provide meals only to front-line healthcare workers and first responders dealing with the COVID-19 crisis.

3

provisions appear in the "Business Income (and Extra Expense) Coverage" section.  The

Business Income Provision states:

> We will pay for the actual loss of Business Income you sustain due to the necessary
> "suspension" of your "operations" during the "period of restoration".  The "suspension"
> must be **caused by direct physical loss of or damage to property** at premises which are
> described in the Declarations and for which a Business Income Limit of Insurance is
> shown in the Declarations.  The loss or damage must be caused by or result from a
> Covered Cause of Loss . . . .

(Emphasis added).  The Extra Expense Provision covers the "necessary expenses you incur

during the 'period of restoration' that you would not have incurred if there had been no **direct**

**physical loss or damage** to property caused by a Covered Cause of Loss."  (Emphasis added).

The second major provision relevant to coverage is each Policy's Civil Authority Provision.

That provision states:

> When a Covered Cause of Loss causes **damage to property** other than property at the
> described premises, we will pay for the actual loss of Business Income you sustain and
> necessary Extra Expense caused by action of civil authority that **prohibits access to the
> described premises, if both of the following apply**:
>
> 1) Access to the area immediately surrounding the damaged property is prohibited by
> civil authority as a result of the damage, and the described premises are within that area
> but are not more than one mile from the damaged property; and
>
> 2) The action of civil authority is taken in response to dangerous physical conditions
> resulting from the damage or continuation of the Covered Cause of Loss that caused the
> damage, or the action is taken to enable a civil authority to have unimpeded access to the
> damaged property.

The coverage dispute between the parties centers on the phrases in boldface above —

namely, the meaning of the phrase "direct physical loss of or damage to property" as used in the

Business Income and Extra Expense provisions, and similarly, the meaning of "damage" that

prohibits access to the premises as used in Civil Authority provision.  Defendants take the

position these words unambiguously require that the physical state of the property in question

must be altered in order for there to be coverage.  Plaintiffs, on the other hand, contend that

4

limitations on access to and use of the property are enough, and that the quoted language is at least ambiguous.  In line with the majority of recent cases across the country that have tackled this exact issue arising from the COVID-19 pandemic, this Court agrees with defendants.

**A.  Business Income and Extra Expense**

The Business Income and Extra Expense Provisions of the Strathmore Policies condition coverage on proof of "direct physical loss of or damage to property."  Here, there is no allegation that the properties where the restaurants are located were physically damaged.  Rather, plaintiffs allege that limitations imposed on the use of their properties because of the Governor's Orders constitute a "physical loss" within the meaning of these provisions.  In support of their position that they suffered a "physical loss," plaintiffs contend that the parties clearly contemplated and understood that the properties would be used and accessed as dine-in restaurants; because plaintiffs could no longer use the premises for their intended purpose, they necessarily suffered (it is argued) a "direct physical loss."  The weight of authority does not support this interpretation of the Policy language.

As an initial matter, the word "physical" must be given  its plain meaning.   A "physical loss" thus does not include intangible losses that flow from a defect in title, for example.  See Eveden Inc. v. Northern Assurance Co. of America, 2014 WL 952543 *5 (D. Mass. 2014), and cases cited therein.  Nor does it include a diminution in value of the property.  See, e.g., Crestview Country Club Inc., 321 F. Supp. 2d at 264 (decrease in value of golf course was not a "direct physical loss").  The phrase "direct physical loss of or damage to property" in a property insurance policy like this one cannot therefore be construed to cover physical loss in the absence of some physical damage to the insured's property.  HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co., 26 Mass. App. Ct. 374, 377 (1998).  Accord Pirie v. Federal Ins. Co., 45 Mass. App. Ct.

907, 908 (1998).   These decisions are in line with a leading insurance treatise, which states that

the term "physical loss" has been "widely held to exclude losses that are intangible or

incorporeal," thereby precluding claims "resulting from a detrimental economic impact

unaccompanied by distinct, demonstrable physical alteration of the property."  Couch on

Insurance §148.46 (3d ed. 2019).

　　　In line with these principles, a majority of courts across the country called upon to decide

insurance coverage claims involving losses occasioned by COVID-19 have concluded that

restrictions on the use of the an insured's property due to government orders  are not "physical

losses or damage" within the meaning of provisions similar to the one before this Court.  See,

e.g., Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 2020 WL 5525171 (N.D. Cal. 2020);

Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., 2020 WL 5500221 (S.D. Cal. 2020); Malaube,

LLC v. Greenwich Ins. Co., 2020 WL 5051581 (S.D. Fla. 2020); Henry's Louisiana Grill, Inc. v.

Allied Ins. Co. of Am., 2020 WL 5938755 (N.D. Ga.  2020); Seifert v. IMT Ins. Co., 2020 WL

6120002 (D. Minn. 2020); Brian Handel D.M.D., P.C. v. Allstate Ins. Co., 2020 WL 6545893

(E.D. Pa. 2020).  As the court explained in one case, the use of "direct" and "physical" to

describe the loss which is covered necessarily requires "actual, demonstrable harm of some form

to the premises itself, rather than forced closure of the premises for reasons extraneous to the

premises themselves, or adverse business consequences that flow from such closure." Sandy

Point Dental PC v. Cincinnati Ins. Co., 2020 WL 5630465, at *2 (N.D. Ill. 2020).  Similarly,

courts have concluded that restrictions on the use of the property — for example, a prohibition

against in-person dining at restaurants — does not as a matter of law amount to "direct physical

loss or damage" to the premises.  See, e.g., 10E, LLC v. Travelers Indem. Co. of Conn., 2020

WL 5359653, at *5 (C.D. Cal. 2020) (in-person dining restrictions that impair use or value of

6

property does not result in "direct physical loss" within the meaning of the policy); Rose's 1 LLC v. Erie Ins. Exchange, 2020 WL 4589206, at *2 (D.C. Super. Ct. 2020) (because government restriction on on-premises dining did not have any effect on the "material or tangible structure of the insured's properties," there was no coverage). Significantly, all of these cases were decided on motions to dismiss, with courts concluding that the policy language was unambiguous. The coverage issues in this case are, of course, decided under Massachusetts law, but there is no indication in Massachusetts case law that would suggest a different conclusion.

Plaintiffs argue that the phrase "direct physical loss" is at the very least ambiguous and could be reasonably interpreted to include loss of access to and use of property occasioned by an imminent threat of physical harm to its occupants. They compare their situation to the loss suffered by an insured whose property is rendered too dangerous to occupy because of the presence of dangerous contaminants. Although the contaminants do not actually damage the physical structure, some courts have held that this may constitute a "physical loss" within the meaning of the insurance policy. See, e.g., Matzner v. Seaco Ins. Co., 1998 WL 566658 (Mass. Super. 1998) (poisonous carbon monoxide buildup in plaintiff's home); see also Sentinel Mgt. Co. v. New Hampshire Ins. Co., 563 N.W.2d 296 (Minn. App. Ct. 1997) (presence of asbestos in building constituted a physical loss); see also Arbeiter v. Cambridge Mut. Fire Ins. Co., 1996 WL 1250616, at *2 (Mass. Super. 1996) (noxious fumes from oil spill). The problem with this argument is that the Complaint here does not allege that the COVID-19 virus was actually present in plaintiffs' restaurants, resulting in physical contamination of the premises. Rather, it alleges that the loss of income for which they seek coverage was the result of the Governor's Orders that prevented plaintiffs from using the premises as intended. Plaintiffs' actual property

remains the same as it was pre-pandemic, and patrons and employees were not prohibited from entering the premises as long as the Governor's Orders were followed.

Equally unavailing is plaintiffs' argument that the COVID-19 virus constitutes an "imminent threat" to their premises and thus could amount to a physical loss within the meaning of the policies. As the defendants point out, this argument conflates the concept of "damage" and "risk." To obtain coverage under the Business Income and Extra Expense provisions, plaintiffs must allege not only that there was actual "physical loss of or damage to" the insured's property but that this was caused by a <u>risk</u> that is not excluded (i.e. a "Covered cause of Loss.") Stated another way, in order to give effect to all the language in this provision, a risk that a dangerous condition might result cannot itself constitute a "direct physical loss."

Finally, the Court must construe the disputed language as part of an entire contract and interpret its provisions where possible to be consistent with other language in the policy. "Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." <u>Allamerica Fin. Corp.</u> v. <u>Certain Underwriters at Lloyd's London</u>, 449 Mass. 621, 628 (2007) (internal quotations and citations omitted); see also <u>Verrill Farms, LLC</u> v. <u>Farm Family Cas. Ins. Co.</u>, 86 Mass. App. Ct. 577, 579 (2014). Here, the construction favored by the defendants finds considerable support in the language of the Policies themselves. The Policies, for example, refer to a "period of restoration" and the costs to "repair or replace property," both of which contemplate that such property was, in some way, lost or damaged. The Policies further provide that Strathmore "will not pay for loss or damage caused by or resulting from . . . b. Delay, loss of use or loss of market." It would be unreasonable for any insured to read a policy containing that exclusion as nonetheless

8

providing coverage for loss of use based on a separate provision clearly related to losses that are physical in nature.

**B.    Civil Authority**

Plaintiffs also claim coverage pursuant to the Civil Authority Provision. As noted, this provides coverage only where there is "damage to property other than property at the described premises" <u>and</u> some action is taken by a civil authority that "prohibits access" to the insured property. The provision contains two additional conditions: 1) the insured property must be "not more than one mile from the damaged property" and 2) the action by the civil authority must be "taken in response to dangerous physical conditions" or "to enable a civil authority to have unimpeded access to the damaged property." In order to state a claim for coverage under this provision, the Complaint must therefore allege, at a minimum, that the government: 1) prohibited plaintiffs from accessing their restaurants; and 2) this action was taken as a result of damage to property within a one-mile radius of these locations. The allegations in the Complaint do not satisfy either requirement.

First, plaintiffs, their employees, and their customers have not been prohibited from accessing the insureds' restaurants, a fact the Complaint plainly concedes. Rather, the scope of permitted use of those physical spaces was altered by the Governor's Orders. Plaintiffs still had access to the premises to prepare food and for takeout and delivery. Second, as the Court already has discussed, plaintiffs have failed to allege damage to property, either at their restaurants or at any other building within a mile thereof. The majority of courts across the country that have interpreted similar Civil Authority provisions concluded that they did not provide coverage for the kind of losses that plaintiffs here assert. See, e.g., <u>Mudpie, Inc</u>., 2020 WL 5525171, at *7 (no civil authority coverage on similar COVID-19-related facts); <u>Pappy's Barber Shops, Inc</u>., 2020

9

WL 5500221, at *6 (same); Brian Handel D.M.D., P.C., 2020 WL 6545893, at *4 (same). This
Court sees no reason to reach a different result.

**C. The Negligence Claim against Commercial**

As noted above, Counts I through VI, asserted against Strathmore, turn on whether
Strathmore properly denied coverage to plaintiffs. In light of this Court's conclusion that it did,
these Counts must be dismissed. Count VII is asserted against Commercial only, and alleges that
Commercial, as the insurance agent for Little Donkey, was negligent in selling policies with a
virus exclusion. Because this Court concludes that the denial of coverage was proper without
reliance on this exclusion, it necessarily follows that this Count too fails to state a claim.

## <u>ORDER</u>

For the foregoing reasons and for other reasons set forth in the defendants' Memoranda,
Strathmore's Motion to Dismiss and Commercial's Motion for Judgment on the Pleadings are
**<u>ALLOWED</u>**. The Complaint is hereby **<u>DISMISSED</u>**.

Janet L. Sanders
Justice of the Superior Court

Dated: December 21, 2020

10

WL 5500221, at *6 (same); Brian Handel D.M.D., P.C., 2020 WL 6545893, at *4 (same). This Court sees no reason to reach a different result.

**C.  The Negligence Claim against Commercial**

As noted above, Counts I through VI, asserted against Strathmore, turn on whether Strathmore properly denied coverage to plaintiffs.  In light of this Court's conclusion that it did, these Counts must be dismissed.  Count VII is asserted against Commercial only, and alleges that Commercial, as the insurance agent for Little Donkey, was negligent in selling policies with a virus exclusion.  Because this Court concludes that the denial of coverage was proper without reliance on this exclusion, it necessarily follows that this Count too fails to state a claim.

**<u>ORDER</u>**

For the foregoing reasons and for other reasons set forth in the defendants' Memoranda, Strathmore's Motion to Dismiss and Commercial's Motion for Judgment on the Pleadings are **<u>ALLOWED</u>**.  The Complaint is hereby **<u>DISMISSED</u>**.

Janet L. Sanders
Justice of the Superior Court

Dated: December 21, 2020

10

# Exhibit N

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
Ruling on Matter Submitted

12/23/2020
8:30 AM
Department 7

**RIC2003415**
**VSTYLES INC vs CONTINENTAL CASUALTY COMPANY**

Honorable Randall Stamen, Judge
Courtroom Assistant: None
 Court Reporter: None

**APPEARANCES:**

No Appearances

Court subsequently rules on:12/21/2020 for Hearing re: Demurrer to Complaint of VSTYLES INC by CONTINENTAL CASUALTY COMPANY.
The Demurrer of defendant Continental Casualty Company ("Continental") to the Complaint of plaintiff VStyles, Inc., ("Plaintiff") is SUSTAINED WITH 20 DAYS LEAVE TO AMEND.
Requests for Judicial Notice
Continental's moving request for judicial notice is granted as to Exhibits A-D and denied as to all other requests.
Plaintiff's request for judicial notice is granted as to Exhibit A and denied as to all other requests. (Evid. Code § 452(c); and, Aquila, Inc. v. Superior Court (2007) 148 Cal.App.5th 556, 569.)
Continental's reply to request for judicial notice is denied. (Id.)
Discussion
The elements of a claim for breach of contract are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." (Abdelhamid v. Fire Ins. Exchange (2010) 182 Cal.App.4th 990, 999.) Plaintiff alleges Continental breached the subject Policy when it denied Plaintiff's claim for business income loss after Plaintiff was forced to close its salons in accordance with various state and local orders issued in response to the COVID-19 pandemic.
When determining whether an insurance policy provides a potential for coverage, the court is guided by the principal that interpretation of an insurance policy is a question of law to which ordinary rules of contractual interpretation apply. (Powerine Oil Co., Inc. v. Superior Court (2005) 37 Cal.4th 377, 390.) "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties," which "is to be inferred, if possible, solely from the written provisions of the contract." (Ibid [internal quotation marks and citations omitted]. "If contractual language is clear and explicit, it governs." (Ibid [internal quotation marks omitted]).

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
Historic Court House
Ruling on Matter Submitted

12/23/2020
8:30 AM
Department 7

**RIC2003415**
**VSTYLES INC vs CONTINENTAL CASUALTY COMPANY**

Honorable Randall Stamen, Judge
Courtroom Assistant: None
 Court Reporter: None

Plaintiff alleges that its loss of business income arising out the COVID-19 pandemic is potentially covered under three provisions of the Policy:
(1) The Policy provides that Continental will pay for the actual loss of business income during the "period of restoration" due to the suspension of Plaintiff's business if the suspension is "caused by direct physical loss of or damage to property at the [insured] premises." (Complaint, ¶ 28; Policy, Business Income and Extra Expense endorsement, ¶ 1(b) [p. 62].) The "period of restoration" means the period of time that "begins with the date of direct physical loss or damage" and ends with "[t]date when the property … should be repaired, rebuilt or replaced" or "when business is resumed at a new permanent location." (Policy, Special Property Coverage Form, ¶ 20 [p. 57].)
(2) The Policy provides coverage for loss of business income when the suspension of business is "caused by direct physical loss of or damage at the premises of a Dependent Property," which is defined to include property operated by a third party on whom the insured relies to deliver material or services or who accepts the insured's products and services. (Complaint, ¶¶ 34-35; Policy, Business Loss and Extra Income – Dependent Property endorsement, ¶¶ 1-2 [p. 176].)
(3) The Policy provides for coverage for business income loss "caused by action of civil authority that prohibits access to the [insured]premises … [if] "[t]he civil authority …[is] due to direct physical loss of or damage to property at locations, other than [the insured] premises." (Complaint, ¶ 33; Policy, Civil Authority endorsement, ¶ 1 [p. 88].)
There must be a "direct physical loss of or damage to" property. Plaintiff focuses on the first alternative, "direct physical loss" and argues that it does not require tangible damage or alteration to property and that loss of the ability to continue operating its business as a result of the government orders qualifies. Plaintiff alternatively argues that the presence of the COVID-19 virus does cause tangible damage or alteration to property because the virus can remain on surfaces up to 28 days. The arguments are without merit. While no California state court has addressed these issues, federal district courts applying California law have overwhelmingly rejected similar claims. (See, e.g., Pappy's Barber Shops, Inc. v. Farmers Group, Inc. (S.D. Cal. 2020) _ F.3d _, 2020 WL 5847570; Mudpie, Inc. v. Travelers Casualty Insurance Company of America (N.D. Cal. 2020) _ F.3d _, 2020 WL 5525171; 10E, LLC v. Travelers Indemnity Co. of Connecticut (C.D. Cal. 2020) _ F.3d _ , 2020 WL 5359653; Mark's Engine Company No. 28 Restaurant, LLC v. Travelers Indemnity Company of Connecticut (C.D. Cal. 2020) _ F.3d _ , 2020 WL 5938689; Travelers Casualty Insurance Company of America v. Geragos and Geragos (C.D. Cal., Oct. 19, 2020) No. CV 20-3619 PSG (EX), 2020 WL 6156584; Robert W. Fountain, Inc. v. Citizens Insurance Company of America. (N.D. Cal., Dec. 9, 2020) No.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
Historic Court House
Ruling on Matter Submitted

12/23/2020
8:30 AM
Department 7

**RIC2003415**
**VSTYLES INC vs CONTINENTAL CASUALTY COMPANY**

Honorable Randall Stamen, Judge
Courtroom Assistant: None
Court Reporter: None

20-CV-05441-CRB, 2020 WL 7247207; Selane Products, Inc. v. Continental Casualty Co. (C.D. Cal., Nov. 24, 2020) No. 2:20-CV-07834-MCS-AFM, 2020 WL 7253378; West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Insurance Companies (C.D. Cal., Oct. 27, 2020) No. 2:20-CV-05663-VAP-DFMX, 2020 WL 6440037; Plan Check Downtown III, LLC v. AmGuard Insurance Company (C.D. Cal., Sept. 10, 2020) No. CV 20-6954-GW-SKX, 2020 WL 5742712; Long Affair Carpet and Rug, Inc. v. Liberty Mutual Insurance Company (C.D. Cal., Nov. 12, 2020) No. SA-CV-2001713-CJC-JDEX, 2020 WL 6865774.)
Under California law, losses from inability to use property do not amount to "direct physical loss of or damage to property" within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration." (MRI Healthcare Center of Glendale, Inc. v. State Farm Gen. Ins. Co., 187 Cal. App. 4th 766, 779 [citation and internal quotation marks omitted].) "Detrimental economic impact" does not suffice. (Ibid. [citation and internal quotation marks omitted].) An insured cannot recover by artfully pleading temporary impairment to economically valuable use of property as physical loss or damage. (Id. at 780.)
Plaintiff cites no persuasive authority to support its argument that the provisions do not require actual tangible injury to the property. Its reliance on Hughes v. Potomac Ins. Co. of District of Columbia (1962) 199 Cal.App.2d 239 and Strickland v. Federal Ins. Co. (1988) 200 Cal.App.3d 792 is misplaced. Hughes and Strickland simply determined that a policy covering a dwelling also covers the loss which occurs when the soil beneath it slides away. (Hughes, 199 Cal.App.2d at 248-49; Strickland, 200 Cal.App.3d at 800.) Moreover, the Policy's definition of "period of restoration" further supports the position that a loss contemplated by the Policy be physical in nature. (See, Mudpie, Inc., supra, 2020 WL 5525171, at *4 [the words "rebuild," "repair" and "replace" "strongly suggest that the damage contemplated by the Policy is physical in nature"].) Plaintiff need not repair, rebuild or replace anything (or even disinfect) in order to reoccupy the insured properties, as it is clear from the Complaint's allegations that Plaintiff's properties were closed under state and local closure orders. Plaintiff further argues that coverage does not require structural alteration, as evidenced by the Policy's exclusions for fungi and microbes. (Opposition, p. 8:19-9:15.) However, Plaintiff's businesses and any alleged Dependent Property were not closed because of an infestation of the COVID-19 virus. Rather, they were closed as part of a state-wide effort to slow the spread of the virus by imposing social-distancing. Plaintiff argues the presence of the virus causes physical damage/alteration because it may potentially remain on surfaces for up to 28 days. (Complaint, ¶ 37.) However, Plaintiff notably cites no authority to support is interpretation. Again, Plaintiff's business was

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
Ruling on Matter Submitted

12/23/2020
8:30 AM
Department 7

**RIC2003415**
**VSTYLES INC vs CONTINENTAL CASUALTY COMPANY**

Honorable Randall Stamen, Judge
Courtroom Assistant: None
 Court Reporter: None

not suspended because of the presence of the virus at the insured locations (or at any Dependent Property).

Plaintiff further argues that because the various state and local closure orders prevented its access to the insured locations, its business income loss is covered under the Civil Authority endorsement. However, under the Policy, "[t]he civil authority must be due to direct physical loss of or damage to property at locations, other than [the insured] premises." In this case, the civil authority arose not out of any physical loss or damage of property but out of a state-wide effort to slow the spread of the COVID-19 virus. Moreover, the civil authority was directed to and affected all non-essential businesses, including Plaintiff's salons.

Demurrer by CONTINENTAL CASUALTY COMPANY on Complaint of VSTYLES INC (from RIC2003415) sustained.

Leave to amend Complaint of VSTYLES INC granted, with 20 days to leave to amend.

Notice to be given by Clerk to THE AMMONS LAW FIRM LLP , GLASER WEIL , JOHNSTON & HUTCHINSON , SQUIRE PATTON BOGGS (US) , Amanda Leigh Groves .